Lawrence D. Levit, Esq.
**ABRAHAM, FRUCHTER
    & TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY 10123
(212) 279-5050

*Proposed Lead Counsel*

[Additional Counsel on Signature Block]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN BRAZINSKY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>AT&T INC., RANDALL L. STEPHENSON, JOHN STANKEY, PASCAL DESROCHES, and JOHN STEPHENS,<br><br>        Defendants. | CASE NO.: 2:23-cv-04064-KM-JBC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br><br>**MOTION DATE: November 6, 2023** |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...................................................................1

II.  SUMMARY OF RELEVANT FACTS............................................................3

III.  ARGUMENT.........................................................................................6

    A.  Detroit Should Be Appointed as Lead Plaintiff ...................................6

        1.  Detroit Timely Moved for Appointment as Lead Plaintiff.........7

        2.  Detroit Has the Largest Financial Interest in the Relief
           Sought ...................................................................................7

        3.  Detroit Satisfies the Requirements of Rule 23 ..........................8

    B.  Detroit's Selection of Counsel Should Be Approved ..........................11

IV.  CONCLUSION....................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Godinez v. Alere Inc.*, et al.,
No. 1:16-cv-10766 (PBS) (D.  Mass. Dec.  22,  2017) ...................................9

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428, 434 (S.D. Tex. 2010)....................................................2

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .................................................................. 5, 6, 7

*In re Elan Corp. Sec. Litig.,*
2009 WL 1321167 (S.D.N.Y. May 11, 2009)..................................................2

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005).......................................................................8

*In re Millennial Media, Inc. Sec. Litig.*,
87 F. Supp. 3d 563 (S.D.N.Y. 2015) ..............................................................8

*In re SunEdison, Inc. Sec. Litig.*, No. 16-md-02742-PKC (S.D.N.Y. Dec.
22, 2016) .........................................................................................................9

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009)....................................................................2

*Sgalambo v. McKenzie,*
268 F.R.D. 170 (S.D.N.Y. 2010).....................................................................7

*Silverstrand Investments v. AMAG Pharmaceuticals et al.*, No. 1:10-cv-
10470 (NMG) (D. Mass Jul. 27, 2010) ...........................................................9

*Utesch v. Lannett Company Inc., et al.,*
No. 2:16-cv-05932 (WB) (E.D. Pa. Mar. 20, 2017).......................................9

## Statutes

15 U.S.C. § 78u-4(a)(3)(A)(i) ..................................................................................5

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii) .............................................................................5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).......................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ......................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).....................................................................5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).............................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ......................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................8

## Other Authorities

1995 U.S.C.C.A.N. 730 (1995)...................................................................................7

## Rules

Fed. R. Civ. P. 23 ............................................................................... 2, 5, 6, 7

The General Retirement System of the City of Detroit ("Detroit") respectfully submits this memorandum of law in support of its motion for: (i) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) approval of its selection of the law firm of Abraham, Fruchter & Twersky, LLP ("AF&T") to serve as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

On August 18, 2023, Detroit filed an action related to the above-entitled action (the "*Brazinsky* Action") in the Southern District of New York.  *See Gen. Ret. Sys. of the City of Detroit v. AT&T Inc., et al.*, No. 1:23-cv-07351-JLR (S.D. N.Y.) (Aug. 18, 2023) (the "*Detroit* Action").[1]   The *Detroit* Action is brought on behalf of persons or entities who purchased or otherwise acquired publicly traded AT&T, Inc. securities between November 2, 2018 and July 26, 2023, inclusive (the "Class Period").  The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a).

The primary difference between the two actions is that the *Detroit* Action's Class Period begins on November 2, 2018, while the *Brazinsky* Action's class period

---

[1] A copy of the complaint filed in the *Detroit* Action is attached to the Declaration of Lawrence D. Levit (the "Levit Decl.") as Exhibit ("Ex.") 1. Detroit is filing a concurrent motion for appointment as lead plaintiff in the *Detroit* Action.

begins sixteen months later on March 1, 2020. Based on the independent investigation of Detroit, the extended Class Period of November 2, 2018 through July 26, 2023, would best protect the interests of the putative Class members and would likely lead to the greatest potential recovery for the Class.

Notwithstanding this assessment, the law is clear that for the purposes of appointing the Lead Plaintiff under the PSLRA, the longest, most inclusive class period governs. *See In re Elan Corp. Sec. Litig.,* 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010). Accordingly, the Class Period alleged in the *Detroit* Action (November 2, 2018 through July 26, 2023) is relied upon for this Motion.

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest in the relief sought by the class" who also makes a *prima facie* showing of being a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, Detroit makes this Motion seeking appointment as Lead Plaintiff based upon its belief that Detroit has the largest financial interest in the relief sought by

the Class and it is otherwise a typical and adequate representative of the Class. Further, Detroit, a sophisticated institutional investor, is the exact type of plaintiff that Congress sought to have serve as Lead Plaintiff when it enacted the PSLRA. Detroit has a real financial interest in the litigation, experience serving as Lead Plaintiff in other securities class actions, and the ability to supervise and monitor counsel.  Moreover, Detroit fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake those responsibilities to ensure the vigorous and efficient prosecution of this action.

Detroit has also demonstrated its adequacy through its selection and retention of AF&T, a law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel for the Class.  Therefore, as discussed in greater detail below, Detroit respectfully requests that this Court appoint Detroit as Lead Plaintiff and approve its selection of counsel.

## II.    SUMMARY OF RELEVANT FACTS

AT&T ("AT&T" or the "Company") is a telecommunications company.  ¶ 7.[2] On November 2, 2018, the Company filed a quarterly financial report with the Securities and Exchange Commission ("SEC").  ¶ 15. Among other things, that quarterly report discussed the "abandonment of certain copper network assets." ¶ 16.

---

[2] All "¶ __" mean and refer to the *Detroit* Action Complaint filed on August 18, 2023. *See* Dkt. No. 1.

The statements made regarding these copper assets were materially false and misleading because, at the time they were made, many of the legacy copper cables abandoned by the Company were covered in lead, a known neurotoxin, and were harming and posed further risk of harm to the environment, Company employees and the public. ¶ 17.

Approximately three months later, the Company filed its 2018 Annual Report with the SEC. ¶ 18. The 2018 Annual Report provided a specific statement regarding the Company's retirement of its copper cable network and transition to an updated infrastructure. *See* ¶ 19. One year later, the Company filed its 2019 Annual Report. ¶ 21. The 2019 Annual Report made similar statements regarding the Company's transition from its "older copper-based network." ¶ 22. Both Annual Reports failed to disclose the harmful nature of the abandoned copper cables. ¶¶ 20, 23.

In March 2020, AT&T updated its Environmental, Health and Safety Policy. ¶ 24. Among other things, AT&T claimed it was "committed to "[s]upporting employees in meeting their environment, health and safety obligations by providing necessary and appropriate training, job aids and resources," "[p]reventing environment, health and safety incidents at our operations, and responding quickly to protect employees and the public should they occur," and "[e]ngaging and communicating with relevant stakeholders, including our employees, about

opportunities to address environment, health and safety performance." ¶¶ 24-25. These statements were materially false and misleading because, at the time this policy was updated, the Company was responsible for cables covered in toxic lead, causing harm to people, including Company employees, and the environment. ¶ 25.

Throughout the Class Period, Defendants continued to make materially false and misleading statements regarding the provision of health and welfare programs and workplace accommodations for AT&T employees. *See, e.g.*, ¶¶ 26-31, 36, 38. Defendants also made materially false and misleading statements regarding the Company's focus on environmental issues and sustainability concerns, even though AT&T owned cables that were covered in toxic lead all over the country. *See* ¶¶ 32-35, 39.

Then on July 9, 2023, *The Wall Street Journal* ("WSJ") released an article entitled "America is Wrapped in Miles of Toxic Lead Cables" (the "July 9 Article"). This was the first in a series of articles from a WSJ investigation in which it determined that "[t]elecom companies laid them (toxic lead cables) decades ago and thousands were left behind, posing a hidden health hazard today[.]" ¶ 43; *see also* ¶¶ 44-45. The price of AT&T stock fell by $0.34 per share, or 2.2%, to close at $15.27 on July 10, 2023. ¶ 46.

The WSJ released additional articles regarding the toxic lead cables on July 12, 2023, and July 14, 2023. ¶¶ 47-52. On this further news, the price of AT&T

stock further declined by $0.62 per share, or 4.1%, to close at $14.50 on July 14, 2023. ¶ 53.

On July 17, 2023, the WSJ and other news outlets continued to report on the abandoned lead cables. ¶¶ 54-56. As a result, on July 17, 2023, AT&T stock fell by $0.97 per share, or 6.7%, to close at $13.54 per share, on unusually high trading volume. ¶ 57. Notably, between July 7, 2023 (the last trading day before the WSJ exposé on lead cables was first published) and the close of trading on July 18, 2023, the price of AT&T shares fell 13.8%. ¶ 58.

On July 26, 2023, the last day of the Class Period, the WSJ released an article entitled "Justice Department and EPA Probe Telecom Companies Over Lead Cables" after the market closed. ¶ 59. On this news, the price of AT&T stock fell $0.38 per share, or 2.6%, to close at $14.51 on July 27, 2023. ¶ 60.

## III.   ARGUMENT

### A.   Detroit Should Be Appointed as Lead Plaintiff

The PSLRA provides a method for determining the "most adequate plaintiff" to serve as Lead Plaintiff in a securities fraud class action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). *First*, the plaintiff must file a complaint or make a timely motion to be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). *Second*, the proposed lead plaintiff needs to have "the largest financial interest in the relief being sought by the [C]lass." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). *Third*, the proposed

lead plaintiff needs to "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).

Detroit believes it is the "most adequate plaintiff" because it satisfies all three elements. Accordingly, Detroit should be appointed as Lead Plaintiff.

### 1.     Detroit Timely Moved for Appointment as Lead Plaintiff

Under the PSLRA, any class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). On July 28, 2023, notice of the action brought by plaintiff Brazinsky was published via *Business Wire* and provided September 26, 2023*, i.e.,* the last day that is within 60 days of the publication of notice of the filing of the *Brazinsky* Action, as the deadline to submit lead plaintiff applications. *See* Levit Decl., Ex. 2. On August 29, 2023, Detroit published a notice of the filing of the *Detroit* Action via *Globe Newswire* which also provided September 26, 2023, as the deadline to file lead plaintiff motions. *See* Levit Decl., Ex. 3. Detroit satisfies this requirement through the filing of this Motion.

### 2.     Detroit Has the Largest Financial Interest in the Relief Sought

Detroit should be appointed Lead Plaintiff because it has the largest financial interest in this litigation as a result of having suffered losses from its purchases of

AT&T common stock during the Class Period.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); Levit Decl., Ex. 4; *see also In re Cendant Corp. Litig.*, 264 F.3d at 262.  To the best of Detroit's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation, either individually or as an appropriate group.   Accordingly, Detroit has the largest financial interest among those seeking appointment as Lead Plaintiff and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3.   Detroit Satisfies the Requirements of Rule 23

A lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous the joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (citation omitted).  "[I]n inquiring whether the movant has preliminarily satisfied the typicality

requirement, [courts] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based." *In re Cendant Corp. Litig.*, 264 F.3d at 265 (internal quotation omitted); *see also* Fed. R. Civ. P. 23(a)(3). Here, Detroit satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Detroit's claims are typical of the claims of other purchasers of AT&T securities. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *McKenzie*, 268 F.R.D. at 173-74 (citation omitted). Here, the claims of Detroit are typical because, like all members of the putative class, it purchased AT&T securities during the Class Period at prices artificially inflated by defendants' materially false and misleading statements and omissions and suffered damages when the truth was revealed. Detroit's claims arise from the same course of events as all Class members and require the same legal arguments in order to prove defendants' liability. As such, Detroit satisfies the typicality requirement.

Detroit similarly satisfies the adequacy requirement of Rule 23 to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The

adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class ....” *McKenzie*, 268 F.R.D. at 174 (citation omitted).

Detroit satisfies these elements because its substantial financial stake in the outcome of this litigation provides the incentive to vigorously represent the claims of the Class, and it does not have interests that are antagonistic to the Class. Indeed, Detroit is a sophisticated institutional investor, the type of investor Congress specifically sought to encourage to lead securities class actions in enacting the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that “increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions”); *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) (institutional investors are “the type of investor Congress prefers as lead plaintiff”); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) (“The fact that the PSLRA was designed to favor institutional investors should be taken into account when determining what constitutes a reasonable group of ‘members.’”).

Detroit satisfies the requirements of Section 21(a)(3)(B) and is presumptively the most adequate plaintiff. This presumption has not been, and cannot be, rebutted

by proof that Detroit "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Therefore, for the reasons stated above, the Court should appoint Detroit as Lead Plaintiff.

## B.    Detroit's Selection of Counsel Should Be Approved

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb a proposed lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Detroit has selected and retained AF&T to serve as Lead Counsel.  AF&T has the commitment and ability to accomplish the required tasks because it has extensive experience and is highly competent in prosecuting similar actions.  *See, e.g., In re SunEdison, Inc. Sec. Litig.*, No. 16-md-02742-PKC, ECF No. 103 (S.D.N.Y. Dec. 22, 2016) (appointing AF&T lead counsel); *accord, e.g., Godinez v. Alere Inc.*, et al., No. 1:16-cv-10766 (PBS), ECF No.  152 (D.  Mass. Dec.  22,  2017) (appointing AF&T co-lead counsel); *Utesch v. Lannett Company Inc.*, *et al.,* No. 2:16-cv-05932 (WB), ECF No. 53 (E.D. Pa. Mar. 20, 2017) (appointing AF&T lead counsel); *Silverstrand Investments v. AMAG Pharmaceuticals et al.*, No. 1:10-cv-10470 (NMG), ECF No. 24 (D. Mass

- 11 -

Jul. 27, 2010) (same).  The firm resume of AF&T, the proposed Lead Counsel, is submitted for the Court's convenience.  *See* Levit Decl., Ex. 5.

## IV.    CONCLUSION

For the reasons set forth herein, Detroit respectfully requests that the Court: (i) appoint Detroit as Lead Plaintiff; (ii) approve Detroit's selection of the law firm of Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel for the class; and (iii) grant such further relief as the Court may deem just and proper.

DATED:  September 26, 2023                Respectfully Submitted,

*s/ Lawrence D Levit*
LAWRENCE D. LEVIT
**ABRAHAM, FRUCHTER**
   **& TWERSKY, LLP**
Mitchell M.Z. Twersky (*pro hac vice* to be submitted)
Jack G. Fruchter (*pro hac vice* to be submitted)
Atara Twersky (*pro hac vice* to be submitted)
Lawrence D. Levit
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel:  (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com
jfruchter@aftlaw.com
atwersky@aftlaw.com
llevit@aftlaw.com

*Proposed Lead Counsel for the Class*

**VANOVERBEKE, MICHAUD  
   & TIMMONY, P.C.**  
Michael Vanoverbeke  
79 Alfred Street  
Detroit, MI 48201  
Tel:  (313) 578-1200  
Fax: (313) 578-1201  
mvanoverbeke@vmtlaw.com

*Additional Counsel for General Retirement  
System of the City of Detroit*

- 13 -