Robert A. Hoffman
Andrew J. Heo
**BARRACK, RODOS & BACINE**
One Gateway Center
Suite 2600
Newark, NJ 07102
Telephone: (973) 297-1484
Facsimile: (973) 297-1485
rhoffman@barrack.com
aheo@barrack.com

*Liaison Counsel*

[Additional counsel appears on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BRAZINSKY, Individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>AT&T INC., RANDALL L. STEPHENSON, JOHN T. STANKEY, PASCAL DESROCHES, and JOHN STEPHENS,<br><br>               Defendants. | No. 2:2023-cv-04064-KM-JBC<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL<br><br>MOTION DAY: November 6, 2023<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  ARGUMENT......................................................................................................5

    A.  The NYC Funds Cannot Be Appointed Lead Plaintiff Because They Are a Net Seller and a Net Gainer, Which Subjects Them to Unique Defenses ...............................................................................6

    B.  The NYC Funds' Alleged Loss on AT&T Bonds Cannot Cure This Unique Defense ...............................................................................9

        1.  Bond Losses Simply Do Not Erase the Unique Defense............9

        2.  Pursuant to the PSLRA, the NYC Funds' Bond Losses Cannot Be Considered ...............................................................10

        3.  Bond Losses Cannot be Considered Because the NYC Funds Have Not Connected Such Losses to the Fraud.............14

        4.  The NYC Funds Cannot Be Appointed Lead Plaintiff Because Their Trading Renders Them Atypical.......................17

    C.  NMSIC Satisfies the Requirements of the PSLRA and Should Be Appointed as Lead Plaintiff...........................................................22

III.  CONCLUSION................................................................................................24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Sec. Litig.*,
  139 F.R.D. 150 (N.D. Cal. 1991)..........................................................................21

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
  No. 20-200,
  2020 WL 815136 (E.D. Pa. Feb. 19, 2020) ..........................................................23

*Andrada v. Atherogenics, Inc.*,
  No. 05 Civ. 00061(RJH),
  2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ......................................................5, 18

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D. 169 (W.D.N.Y. 2007) .................................................................... 6-7

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) .................................................................................10

*Biondolillo v. Roche Holding AG*,
  No. 17-04056,
  2017 WL 4220332 (D.N.J. Sept. 22, 2017)..........................................................23

*Born v. Quad/Graphics, Inc.*,
  No. 19-CV-10376 (VEC),
  2020 WL 994427 (S.D.N.Y. Mar. 2, 2020)............................................................6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...................................................................................5

*City of Omaha Police and Firefighters Ret. Sys. v. Cognyte Software
  Ltd.*,
  No. 23 Civ. 1769 (LGS),
  2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023).................................................... 7-8

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
  No. 20-cv-9132 (AJN),
  2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ..........................................................12

*In re Comdisco Sec. Litig.*,
   150 F. Supp. 2d 943 (N.D. Ill. 2001)...................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER),
   2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)........................................................13

*Cook v. Allergn PLC*,
   No. 18 Civ. 12089 (CM),
   2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)....................................................18

*Doshi v. Gen. Cable*,
   No. 2:17-025 (WOB-CJS),
   2017 WL 5178673 (E.D. Ky. Nov. 7, 2017) .......................................................7

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................7

*In re Forcefield Energy Inc. Sec. Litig.*,
   No. 15 Civ. 3020(NRB),
   2015 WL 4476345 (S.D.N.Y. July 22, 2015)....................................................21

*Galmi v. Teva Pharms. Indus. Ltd.*,
   302 F. Supp. 3d 485 (D. Conn. 2017)...........................................................13, 14

*Grodko v. Cent. Eur. Distrib. Corp.*,
   No. 12–5530 (JBS–KMW),
   2012 WL 6595931 (D.N.J. Dec. 17, 2012).......................................................5, 9

*Gutman v. Sillerman*,
   No. 15 Civ. 7192 (CM)
   2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ............................................... 13-14

*In re HealthSouth Corp. Sec. Litig.*,
   261 F.R.D. 616 (N.D. Ala. 2009) ..................................................................15, 20

*Hedick v. Kraft Heinz Co.*,
   No. 19-cv-1339,
   2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .................................................12, 13

*Hodges v. Immersion Corp.*,
   No. C–09–4073 MMC,
   2009 WL 5125917 (N.D. Cal. Dec. 21, 2009)....................................................8

iii

*Jaramillo v. Dish Network Corp.*,
　　No. 23-cv-00734-GPG-SKC,
　　2023 WL 5312062 (D. Colo. Aug. 16, 2023)...............................................20-21

*Jurkowski v. Molycorp, Inc.*,
　　No. 13 Civ. 5697 (PAC),
　　2014 WL 12792750 (S.D.N.Y. Apr. 2, 2014) ....................................................18

*Loritz v. Exide Techs.*,
　　No. 2:13–cv–02607–SVW–E,
　　2015 WL 6790247 (C.D. Cal. July 21, 2015).....................................................15

*McDermid v. Inovio Pharms., Inc.*,
　　467 F. Supp. 3d 270 (E.D. Pa. 2020)................................................................5, 8

*Micholle v. Ophthotech Corp.*,
　　No. 17-CV-210 (VSB),
　　2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018).....................................................21

*Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*,
　　No. 4:17-CV-00449,
　　2017 WL 3780164 (E.D. Tex. Aug. 31, 2017).....................................................14

*Patel v. Reata Pharms., Inc.*,
　　549 F. Supp. 3d 559 (E.D. Tex. 2021)................................................................18

*Perlmutter v. Intuitive Surgical, Inc.*,
　　No. 10–CV–03451–LHK,
　　2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .......................................................7

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
　　566 F. Supp. 3d 712 (S.D. Tex. 2021).................................................................7

*Scheller v. Nutanix, Inc.*,
　　No. 19-cv-01651-WHO,
　　2021 WL 2410832 (N.D. Cal. June 10, 2021).....................................................7

*Sokolow v. LJM Funds Mgmt., Ltd.*,
　　No. 18-cv-01039,
　　2018 WL 3141814 (N.D. Ill. June 26, 2018).......................................................13

iv

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
  No. 11–6247 (JBS/KMW),
  2012 WL 3638629 (D.N.J. Aug. 22, 2012) .......................................................8

*Teroganesian v. Sw. Airlines Co.*,
  No. 4:23-CV-00115,
  2023 WL 4565464 (S.D. Tex. July 15, 2023) ...................................................20

*Topping v. Deloitte Touche Tohmatsu CPA*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015) ...............................................................14

*In re Vivendi Universal, S.A. Sec. Litig.*,
  284 F.R.D. 144 (S.D.N.Y. 2012) ......................................................................8

*Williams v. Block.One*,
  No. 20-cv-2809 (LAK),
  2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020)...............................................14, 17

## Statutes & Rules

15 U.S.C. § 78u–4(a)(2)(A)(iv) ...............................................................10, 12

15 U.S.C. § 78u–4(a)(3)(A)(i) .......................................................................13

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ...................................................................5

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb-cc)......................................................5, 18

17 C.F.R. § 230.144A ...............................................................................4, 16

Fed. R. Civ. P. 23 .................................................................................18, 23

Private Securities Ligation Reform Act of 1995 ("PSLRA").........................*passim*

## Other Authorities

*Investing Has Been Ugly. Stick With It Anyway*, N.Y. Times (Oct. 6,
  2023), www.nytimes.com/2023/10/06/business/investing-stocks-
  bonds-losses.html...............................................................................15

*Letter from Securities Industry and Financial Markets Association to
  Financial Industry Regulatory Authority* (Apr. 29, 2011),
  www.finra.org/sites/default/files/NoticeComment/p123571.pdf .......................16

NMSIC[1] respectfully submits this memorandum in support of its Lead Plaintiff Motion and in opposition to all competing Lead Plaintiff motions.

## I. **<u>INTRODUCTION</u>**

Although the NYC Funds'[2] Lead Plaintiff Motion (ECF No. 14) alleges that they suffered the greatest loss of any movant, they are disqualified from serving as Lead Plaintiff due to their status as a "net gainer."  NMSIC should be appointed, as it is the adequate and typical movant with the greatest financial interest in the case.

**<u>The NYC Funds Are Disqualified</u>**.  According to the NYC Funds' filings, they (1) received more proceeds from selling AT&T stock at inflated prices than they spent buying AT&T stock at inflated prices; and (2) sold more shares at inflated prices than they bought at inflated prices.  The NYC Funds are therefore "net gainers," and courts routinely hold that net gainers **<u>benefited</u>** from the fraud, are subject to unique defenses, and are **<u>disqualified</u>** from serving as Lead Plaintiff.

Unique defenses are disqualifying because they burden the class with a lead plaintiff that is distracted by issues unique to them, who will drag the class into litigating such issues for the benefit of the lead plaintiff.  For example, the issue of whether net gains (due to the fraud) offset traditional LIFO losses will become a uniquely important issue to the NYC Funds as net gainers.

---

[1] Unless otherwise noted, all defined terms remain unchanged from those in New Mexico State Investment Council ("NMSIC")'s opening motion.  *See* ECF No. 11.

[2] "NYC Funds" refers to the Lead Plaintiff movants referenced in ECF No. 14.

**Disqualification Is Unavoidable.**  NMSIC anticipates that the NYC Funds will attempt to distinguish the overwhelming authority holding that a net gainer is subject to disqualifying unique defenses by arguing that, if the NYC Funds' net gain on stock trading is combined with their loss on bond trading, the NYC Funds are an aggregate net loser.  However, the NYC Funds' bond trading cannot remedy the fact that they are disqualified as net gainers for **four** independent reasons.

**First**, the unique defenses posed by the NYC Funds' net gainer status cannot be erased by bond losses, no matter how large they are.  The NYC Funds would have to litigate the unique defenses posed by their net gain in common stock, regardless of their trading in bonds.  Indeed, the NYC Funds' bond losses exacerbate the issue of unique defenses because the NYC Funds will have to litigate the additional issue—uniquely relevant to them—of whether their gains due to the fraud on their stock trading offset some or all of their losses on bonds.

**Second**, losses on AT&T bonds cannot support the NYC Funds' Motion at all because AT&T bonds (or any other debt security) are not included in the Complaint's Class definition and therefore must be excluded from the Lead Plaintiff analysis.  The Private Securities Litigation Reform Act ("PSLRA") strictly limits analysis in the lead plaintiff appointment process to securities that are the subject of the complaint, and the Complaint defines a Class **that does not include bonds**.  *See* ECF No. 1 ¶8 (defining "'NYSE'" as "the New York Stock

2

Exchange," where "AT&T common stock trades . . . under the ticker symbol 'T'");
*id.* at ¶54 (defining the Class as those who "acquired AT&T securities publicly
traded on NYSE during the Class Period").  Tellingly, the Complaint **never even
mentions** any other AT&T-related security outside of AT&T common stock.

The PSLRA's deadline for lead plaintiff motions is strictly construed and it
is well established that, with that deadline long passed, the NYC Funds are barred
from adding bond trading to the Lead Plaintiff appointment process.  Had the NYC
Funds wanted to include analysis of losses from bond trading in the appointment
process, they needed to file a complaint with a class definition that includes AT&T
bonds.  Their failure to do so means that the bond-free Class definition in the
Complaint is dispositive and bond trading **cannot** be considered.

**Third**, supposed bond losses cannot be considered because the NYC Funds
have failed to articulate that bond purchasers have losses connected to the fraud.

Prices for stock and bonds reflect different news and information.  Neither
the Complaint, nor the NYC Funds' Motion describe how, why, or when bonds
were affected by the fraud.  And the NYC Funds certainly do not explain this as to
the **73** distinct bonds (with varied interest rates and maturities) they traded.
Instead, they merely list their bond trading and state their LIFO loss.  Before a
movant's LIFO losses can be considered, there must be a legitimate explanation in
the record (*i.e.*, the complaint) as to how those LIFO losses relate to the fraud.

3

The connection between the NYC Funds' bond trading and the fraud is even less clear because many of the bonds they traded (1) were issued pursuant to 17 C.F.R. § 230.144A ("Rule 144A") and did not publicly trade; (2) were redeemed or matured before the first corrective disclosure; or (3) have no reported trading on alleged corrective disclosure dates. These facts pose unanswered questions as to whether those respective bonds were purchased at artificially inflated prices due to the fraud and whether purchasers suffered losses upon revelation of the fraud.

**Fourth**, even if the NYC Funds' bond losses were considered, at best, the NYC Funds would be a truly atypical representative of the Class. The market-capitalization decline following the alleged corrective disclosures for AT&T stock was roughly **seventeen** times greater than that for bonds. While bonds might (but might not) be included in a subsequent subclass, the typical class member here is a stock investor. There are significant factual and legal differences and tensions between claims for purchasers of stock and bonds that render a Lead Plaintiff with financial interest entirely, or primarily, in bonds atypical to represent this Class.

**NMSIC Must Be Appointed**. Excluding the NYC Funds, NMSIC indisputably has the greatest financial interest of the Lead Plaintiff movants and is in the best position to represent the Class. NMSIC is not plagued by any of the issues that disqualify the NYC Funds from serving as Lead Plaintiff, is typical and adequate to represent the Class, and should be appointed Lead Plaintiff.

4

## II.   **ARGUMENT**

A movant seeking to serve as a lead plaintiff must assert the "largest financial interest" among movants who "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb-cc). "If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001).  Therefore, a movant cannot be appointed lead plaintiff if it is subject to a unique defense or is atypical.  *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 280 (E.D. Pa. 2020) (Even the "potential" that a movant is subject to a "unique defense" is evidence the movant "is unable to adequately represent the class[.]"); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (rejecting "atypical" movant).

Here, NMSIC is the **only** movant that satisfies the financial interest, adequacy, and typicality requirements of the PSLRA and should be appointed as Lead Plaintiff.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).  Given the unique issues facing the NYC Funds, their appointment would not "protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole."  *Grodko v. Cent. Eur. Distrib. Corp.*, 2012 WL 6595931, at *3 (D.N.J. Dec. 17, 2012) (citation omitted).

A.    **The NYC Funds Cannot Be Appointed Lead Plaintiff Because They Are a Net Seller and a Net Gainer, Which Subjects Them to Unique Defenses**

According to their own submissions, during the Class Period, the NYC Funds sold more AT&T stock than they purchased ("net seller") and received more money from their sales than they spent on their purchases ("net gainer"). ECF No. 14-4 at 2. The following table shows a summary of the NYC Funds' stock trading, based on the NYC Funds' own submission to this Court:

|  | Shares | Proceeds/Expenditures |
|---|---|---|
| Purchases | 11,642,779 | $258,308,039 |
| Sales | 13,476,775 | $316,628,586 |
| **Net sales/Net gains** | **1,833,996** | **$58,320,547** |

The following image, taken from the NYC Funds' Motion papers (ECF No. 14-4 at 2), provides the data for the prior chart:

| Security Type | Purchase or Acquire Date | Shares/PAR | Price | Amount | Sales Date | Shares/PAR | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| Common Stock |  | 11,642,779 |  | ($258,308,039) |  | (13,476,775) |  | $316,628,586 |

Legions of cases confirm that a putative lead plaintiff with net gains and/or net sales is effectively disqualified from serving as lead plaintiff. *E.g.*, *Born v. Quad/Graphics, Inc.*, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) (status as net gainer "effectively **disqualifies** [movant] from representing a class") (emphasis added); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) ("Courts have **consistently rejected** applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have

6

profited, rather than suffered, as a result of the inflated stock prices.") (emphasis added); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 132 (S.D.N.Y. 2011) (courts have "sensibly **refused**" to appoint net gainers) (emphasis added); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (net gainers are "**totally out** of the running for designation as lead plaintiff") (emphasis added); *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719 (S.D. Tex. 2021) (finding that status as a net seller and net gainer disqualifies a lead plaintiff movant).

Unlike net purchasers and net losers, such as NMSIC, the NYC Funds reaped profits from the sale of artificially inflated shares during the Class Period—accordingly, courts "regularly hold" that net gainers are "subject to unique defenses because they may have benefitted by selling pre-[c]lass [p]eriod shares at allegedly inflated prices during the [c]lass [p]eriod." *Doshi v. Gen. Cable*, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017); *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *7 (N.D. Cal. June 10, 2021) (finding that a movant "cannot adequately represent the [c]lass because [movant] is a net seller and a net gainer during the [c]lass [p]eriod and, therefore, subject to unique defenses" because it is more likely that a net gainer "benefited from the fraud").[3]

---

[3] *See also Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) ("[T]he fact that [movant] received more money from selling stock at fraudulently inflated prices than he spent purchasing stock at inflated prices makes it more likely that [movant] benefitted from [d]efendants' alleged fraud."); *City of*

A movant's status as net gainer raises a variety of problems for them, including the issue of the extent to which a net gainer's losses must be offset by their gains. *See In re Vivendi Universal, S.A. Sec. Litig.,* 284 F.R.D. 144, 159 (S.D.N.Y. 2012) (offsetting losses with gains; noting the fact intensive nature of issue). As a net gainer, this would become a case-defining issue for the NYC Funds, drastically affecting their incentives around case strategy and settlement, and ultimately creating a sideshow issue that the Class would be drawn into litigating—at substantial expense—uniquely for the benefit of the NYC Funds.

The significance of unique defenses does not turn on the underlying merits of the defenses, but on the need to "protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, 2012 WL 3638629, at *9 (D.N.J. Aug. 22, 2012) (citation omitted); *see McDermid*, 467 F. Supp. 3d at 280 (Even the "potential" that a movant is subject to a "unique defense" is evidence the movant "is unable to adequately represent the class[.]").

---

*Omaha Police and Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 6458930, at *6 (S.D.N.Y. Oct. 4, 2023) (observing that net gainers are consistently disqualified from serving as lead plaintiff because that status subjects them to "unique defenses that prevent [movants] from adequately representing the class[,]" as they will have "trouble proving damages at trial"); *Hodges v. Immersion Corp.*, 2009 WL 5125917, at *2 (N.D. Cal. Dec. 21, 2009) ("A 'net seller's' motion for appointment as lead plaintiff is properly denied where the net seller obtained a 'net gain' from its sales occurring in the putative class period.").

Courts in this district hold that where a lead plaintiff movant is "subject to unique defenses that are likely to become a significant focus at litigation, then the . . . Court **must** identify another lead plaintiff." *Grodko*, 2012 WL 6595931, at *3 (emphasis added). As stated above, it is well-settled law that a movant's status as a net gainer raises disqualifying unique defenses. *See supra* at 6-8. This alone is a sufficient basis to disqualify the NYC Funds.

### B. The NYC Funds' Alleged Loss on AT&T Bonds Cannot Cure This Unique Defense

NMSIC anticipates that the NYC Funds will attempt to distinguish the overwhelming authority that a net gainer is subject to disqualifying unique defenses by arguing that, if the NYC Funds' bond trading is considered, they are an aggregate net loser. However, the NYC Funds' bond trading cannot remedy the fact that they are disqualified as net gainers for **four** independent reasons.

### 1. Bond Losses Simply Do Not Erase the Unique Defense

The disqualifying unique defenses that arise due to the NYC Funds' status as a net gainer in its AT&T stock trading remain **exactly** as palpable, regardless of their bond losses. Bond trading cannot remove the fact that, as to the NYC funds' stock trading, Defendants will argue that the NYC Funds benefited from the fraud. And bond losses cannot erase related litigation issues, such as the extent the NYC Funds gains due to the fraud offset their losses, which would remain a sideshow that the Class would be forced to litigate for the NYC Funds' unique benefit.

9

Furthermore, the presence of bond trading, from which the NYC Funds may have a loss, will raise a further, even more unique issue: whether the principle that losses should be offset by gains (due to the fraud), requires offsetting losses in one class of security (bonds) against gains in another (stock).  The point is **not** merely that offsetting would reduce the NYC Funds' financial interest (within the PSLRA analysis), but that (1) the NYC Funds' unique need to litigate this issue would require absent Class members to essentially fund litigation of issues unique to the NYC Funds, and (2) the NYC Funds' need to litigate this issue would create a distracting sideshow irrelevant to the Class.  *See Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (describing why unique defenses are disqualifying).

### 2.  Pursuant to the PSLRA, the NYC Funds' Bond Losses Cannot Be Considered

Lead plaintiff appointment is assessed upon movants' timely submissions, which shall document transactions in the securities that are "the subject of the complaint during the class period specified in the complaint."  15 U.S.C. § 78u–4(a)(2)(A)(iv).  In this case, the Complaint defines the Class as "all persons . . . who acquired AT&T securities **publicly traded on NYSE**[4] during the Class Period, and who were damaged thereby."  ECF No. 1 ¶54 (emphasis added).

---

[4] "NYSE" is defined by the Complaint as "the New York Stock Exchange."  ECF No. 1 ¶8 ("AT&T common stock trades on the New York Stock Exchange ('NYSE') under the ticker symbol 'T.'").

None of the bonds listed in the NYC Funds' Motion (*see* ECF No. 14-4) trade on the New York Stock Exchange and therefore they **<u>cannot</u>** be considered at this time.  Exhibit A[5] provides testimony by Gautam S. Gujral, an expert in securities trading platforms, with experience at the U.S. Securities and Exchange Commission ("SEC"), Credit Suisse's Prime Services department, and his own trading infrastructure related businesses.  Mr. Gujral explains that most bond trading takes place through negotiated transactions or broker networks.  Ex. A ¶4(d).  Mr. Gujral also explains that AT&T common and preferred stock trade on the New York Stock Exchange, but **<u>no other AT&T security</u>**—such as the bonds listed in by NYC Funds (ECF No. 14-4)—trade on that exchange.  Ex. A ¶4(c).

Additionally, it is clear that the bonds traded by the NYC Funds were not the securities "at issue" in the Complaint because none of them are even mentioned in the Complaint.  *See generally* ECF No. 1.  Indeed, the Complaint never once mentions either bonds or any other debt security issued by AT&T.  The NYC Funds make no attempt to explain how these bonds are the "subject" of the Complaint in their Motion (*see* ECF No. 14); they merely list certain transactions they made in bonds in their certification and loss chart.  ECF Nos. 14-4, 14-6.

---

[5] All references to "Exhibit(s)" refer to exhibits attached to the Declaration of Robert A. Hoffman, filed along with this memorandum.

If appointed, NMSIC will thoroughly consider the appropriateness of including a subclass of bond traders (or traders in other AT&T securities) in an amended complaint.  But at this stage, the Court is not called to make a ultimate determination on the appropriate Class definition.  Rather, under the PSLRA's Lead Plaintiff provisions, the Court must assess Lead Plaintiff movants based on the allegations in the complaint **currently** before the Court.  And, in this case, it is simply inappropriate to consider bond trading that is outside the Class definition and outside the allegations in the Complaint.[6]

Cases confronted with movants attempting to include trading that was not the subject of the complaint have firmly held that considering such trades is improper.  *See, e.g.*, *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *5 (S.D.N.Y. Feb. 4, 2021) ("The [c]ourt . . . will consider recoverable losses based on the facts alleged in the [c]omplaint alone."); *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *5 (N.D. Ill. Oct. 8, 2019) (refusing to expand the class definition beyond that asserted in the complaint).

---

[6] Because bonds not traded on the New York Stock Exchange cannot be considered under the analysis called for by the PSLRA in this case (*see* 15 U.S.C. § 78u–4(a)(2)(A)(iv)), NMSIC properly did not include its own bond trading in its prior submissions.  NMSIC stands by the fact that this bond trading is irrelevant at this stage and its (along with other movants') financial interest should not include analysis of bonds.  To be sure though, NMSIC had losses in its trading of AT&T bonds during the Class Period and was not a net gainer on these trades.  *See* Ex. B (Grayson declaration, attaching NMSIC bond trading).

If the NYC Funds had sought to add allegations to justify the inclusion of bonds in the PSLRA analysis, the mechanism to do so is to file a complaint including bonds in the class definition within the statutory deadline.  They did not. *See In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at \*6 (E.D.N.Y. Mar. 2, 2007) ("In selecting a plaintiff to lead this litigation at this stage of the proceedings, the court can and must only consider the pleadings before it.") (citation omitted); *Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at \*2 (N.D. Ill. June 26, 2018) (financial interest analysis looks to the "relief sought by the class"); *cf. Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 500 n.6 (D. Conn. 2017) (where losses are not connected to "a plausible basis for seeking recovery," they should not be included in analysis of movants for lead plaintiff).

Any attempt by the NYC Funds to file a new complaint or supplement their Motion to justify the inclusion of bonds would (a) raise questions concerning their adequacy, given that they had every opportunity to do so at the appropriate time;[7] and (b) be barred by the PSLRA's strict deadlines.  *See* 15 U.S.C. § 78u–4(a)(3)(A)(i) (setting deadline); *Gutman v. Sillerman*, 2015 WL 13791788, at \*1

---

[7] Indeed, the NYC Funds are uniquely situated to understand the significance of the Class definition at the Lead Plaintiff stage and the consequences for asserting claims on behalf of securities outside the four corners of the operative complaint, given their experience in the *Hedick v. Kraft Heinz* matter.  *See Heinz,* 2019 WL 4958238, at \*5 (N.D. Ill. Oct. 8, 2019) (refusing request of the NYC Funds to expand the class beyond the definition found in the operative complaint).

(S.D.N.Y. Dec. 8, 2015) (The PSLRA deadline is "unequivocal and allows for no exceptions.") (citation omitted); *Topping v. Deloitte Touche Tohmatsu CPA,* 95 F. Supp. 3d 607, 618-20 (S.D.N.Y. 2015) (the PSLRA's express language precludes consideration of allegations "asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed") (citation omitted); *Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) ("Any supplement or augmentation of the motion must also take place within the sixty-day deadline.") (citation omitted).

Because AT&T bonds are not the "subject" of the Complaint, the NYC Funds' bond exposure **must** be excluded from this Lead Plaintiff analysis.

### 3. Bond Losses Cannot be Considered Because the NYC Funds Have Not Connected Such Losses to the Fraud

Neither the Complaint, nor the NYC Funds' Motion explain how bonds suffered losses **due to the fraud**. Because a lead plaintiff movant carries the burden to establish their own financial interest, the NYC Funds' failure to do so with respect to their bond exposure is disqualifying. *See Williams v. Block.One*, 2020 WL 4505569, at *1 (S.D.N.Y. Aug. 4, 2020) (the court is "unwilling to engage in guesswork or rely on their unsupported claims" to assess losses); *Teva Pharms.*, 302 F. Supp. 3d at 500 n.6 (movant must provide "plausible basis for seeking recovery" for losses to be counted in financial interest analysis).

14

The NYC Funds' failure to connect their bond LIFO losses to the fraud is unacceptable because the presence of LIFO losses does nothing to suggest those losses were caused by the fraud.  LIFO losses are trading losses on a security—and are the traditional basis to compare lead plaintiff movants—but before they can be considered, there must be a basis in the complaint tying those losses to the fraud.

Numerous factors unrelated to the fraud could account for the NYC Funds' bond loss, including the macroeconomic environment during the Class Period, in which interest rates rose and bond prices generally fell.[8]  The overwhelmingly relevant, company-specific factor that influences debt prices is default risk[9]—that is, the prospect that the company will miss debt payments—and nothing in the record alleges that the perception of AT&T's default risk increased upon the alleged corrective disclosures.  Likewise, bond prices typically move based on changes in credit ratings or announcements by ratings agencies,[10] but no such rating actions are alleged by the NYC Funds or the Complaint.

---

[8] *See* Jeff Sommer, *Investing Has Been Ugly. Stick With It Anyway*, N.Y. Times (Oct. 6, 2023), www.nytimes.com/2023/10/06/business/investing-stocks-bonds-losses.html ("A major shift in interest rates caused . . . pain in the bond market . . . . Interest rate increases have caused automatic declines in bond prices.").

[9] *See Loritz v. Exide Techs.*, 2015 WL 6790247, at *15 (C.D. Cal. July 21, 2015) (bond prices are most likely to change when "the issuer is likely to default.").

[10] *See In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 637 (N.D. Ala. 2009) ("rating agencies provide an important source of information relied on by the bond market in assessing . . . the value of the bonds.").

It is all the more important to plausibly articulate how the bonds the NYC

Funds purchased were affected by the fraud because each bond of an issuer has

different characteristics, *e.g.*, maturity and payment priority in an event of default,

and therefore news might cause a price decline in one bond, but not another.[11]

This issue is compounded by additional facts about the specific bonds listed in the

NYC Funds' Motion (ECF No. 14-4), including that many of the bonds they list:

- Were issued pursuant to SEC registration exemptions (Rule 144A)[12] and such bonds do not publicly trade, which makes it especially problematic that the NYC Funds have not connected losses from these bonds with the fraud.

- Were redeemed by AT&T prior to any alleged corrective disclosure,[13] which is problematic because losses in securities cases like this are only realized upon a price decline following a corrective disclosure.

- Had no reported trading on one or more of the alleged corrective disclosure dates,[14] making it even less clear how they suffered loss due to the fraud.

---

[11] *See Letter from Securities Industry and Financial Markets Association to Financial Industry Regulatory Authority*, at 3 (Apr. 29, 2011), www.finra.org/sites/default/files/NoticeComment/p123571.pdf ("[T]he same issuer may have several bond issues that have different interest rates, redemption dates, claims on company assets, indenture provisions, change in control provisions, and/or call provisions. These differences necessarily will affect the way the bond trades and responds to market events, both in the short and long term.").

[12] *E.g.*, CUSIPS 00206RER9, 00206RES7, 00206RFM9, 00206RMC3, 00206RMD1, 00206RME9, 00206RMF6, 00206RMG4.

[13] *E.g.*, CUSIPS 00206RAZ5, 00206RCL4, 00206RCN0, 00206RCT7, 00206RCX8, 00206RCY6, 00206RCZ3, 00206RDB5, 00206RDC3, 00206RDD1, 00206RHR6, 00206RHS4, 0020A3TC4, 0020A3TD2.

[14] *E.g.*, CUSIPS 00206RHV7, 00206RCG5, 00206RCU4, 00206RDF6, 00206RDG4, 00206RFU1, 00206RFW7, 00206RHA3, 00206RHK1, 00206RJH6, 00206RJK9 00206RKB7, 00206RKE1, 00206RKF8.

16

The NYC Funds have not asserted even a *general* connection between their losses on bond trading and the fraud, which (in addition to the fact that bond trading is outside the scope of the Complaint, *see Section* II(B)(2)) excludes their bond trading from consideration.  However, even *assuming* a general connection between bond losses and the fraud, there is substantial reason to doubt such a connection as to many of the bond trades listed by the NYC Funds (*see* prior bullet points), and therefore the Court would have to engage in substantial speculative guesswork to try to reverse engineer any credible loss figure for the NYC Funds' bond trading and courts are "unwilling to engage in guesswork" to assess losses. *Williams,* 2020 WL 4505569, at *1.

### 4.    The NYC Funds Cannot Be Appointed Lead Plaintiff Because Their Trading Renders Them Atypical

To the extent the NYC Funds seek to represent the Class on account of their bond-based losses,[15] they would be barred from appointment as Lead Plaintiff for another reason: an investor entirely, or primarily, financially interested in this case on account of bond-based losses is atypical and, therefore, is unable to represent this Class.

---

[15] As explained in Section II(B)(1) assuming *arguendo* that the NYC Funds have bond-based losses, this would not remedy the fact that they are subject to unique defenses, which is itself independently disqualifying.  As explained in Sections II(B)(2)-(3), the NYC Funds' bond trading cannot be considered at this time.

17

Courts must decline to appoint lead plaintiff movants for failing to satisfy the typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb-cc); *see Cook v. Allergn PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (rejecting movant "whose claims [would not] turn out to be typical of the average common stockholder"); *Andrada*, 2005 WL 912359, at *5 (declining to appoint movant who "[a]s an options holder . . . [was] both atypical and inadequate to support the entire class").

In particular, lead plaintiff movants are frequently rejected for having "trading practices [that] are atypical of the class." *Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 567-69 (E.D. Tex. 2021) (rejecting a lead plaintiff movant whose "losses arose exclusively from [] options[,]" where the class consisted "largely of common stockholders"); *Jurkowski v. Molycorp, Inc.*, 2014 WL 12792750, at *3 (S.D.N.Y. Apr. 2, 2014) (rejecting atypical trader).

Those with losses in common stock are the typical Class members in this case. While a subsequent complaint may or may not ultimately allege one or more subclass consisting of traders in other AT&T securities, the operative Complaint only describes losses resulting from AT&T stock price declines. ECF No. 1 ¶¶ 39, 46, 50, 52. As described in Section II(B)(2), shares of AT&T stock are the only securities that are the subject of the Complaint, and as explained in Section II(B)(3), the Complaint does not connect losses on bond trading to the fraud.

18

A preliminary analysis by a reputable damages expert, Chad Coffman, demonstrates that total AT&T market capitalization losses on a universe of potentially relevant bonds in the period following the alleged corrective disclosures are approximately $461 million, compared to AT&T stock market losses of $7.87 billion. *See* Ex. C ¶7 (declaration explaining methodology). And while this measurement does not precisely depict Class-wide damages—such an analysis is premature at this stage—it strongly suggests that stock-based claims are at the forefront of this case as the typical claim. To the extent bonds-based claims are later included in the case for a subclass of bond investors,[16] they are unlikely to be the focus of the typical Class member, as they would be for the NYC Funds.

Factual issues relevant to a bond investor may be very different from those of a typical common stock trader. *See generally supra* at 15. Bond investors tend to be highly—often exclusively—concerned with default risk and interest rates, whereas stock investors tend to be more focused on a businesses' overall prospects. While both types of investors follow securities analysts, bond investors are particularly attuned to analysts that cover debt securities and the potential for credit rating changes. Stock investors, conversely, may be particularly interested in news relevant to dividend payments, which is less relevant for bond investors.

---

[16] NMSIC has trading in stock and bonds, and unlike the NYC Funds, faces no net gainer issue (*see* Exhibit B), and if it determines that it is appropriate to include a subclass of bond investors in a subsequent amended complaint, will certainly do so.

19

There are also differences in the legal issues that bond investors and stock investors face in securities cases.  For example, while both may rely on the fraud-on-the-market presumption to establish the reliance element of their claim, demonstrating market efficiency for bonds requires different analysis compared to doing so for stocks.  *See HealthSouth*, 261 F.R.D. at 633 ("In applying the factors courts have used to evaluate the efficiency of the market for a security, the court will keep in mind the distinctions between the bond and stock market.").  There is often far lower bond trading volume, differences in the speed at which stock and bond prices react to news, and substantive differences in those reactions.

As another example, loss causation may be different for the two types of securities.  Proving corrective disclosures may require different analyses because of distinctions between what information is most relevant to each type of security.

While more frequently raised (and addressed) in the context of options investors, the case law is clear that differences like those identified in the prior three paragraphs render bond investors atypical such that they should not be appointed to represent a class largely consisting of stock investors.  *See Teroganesian v. Sw. Airlines Co.*, 2023 WL 4565464, at *5 (S.D. Tex. July 15, 2023) (refusing to appoint an options investor and noting that many courts have held that such a trader is atypical to "represent[] a class largely consisting of common stockholders"); *Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at

20

*5 (D. Colo. Aug. 16, 2023) (options investors "are simply differently situated from parties who engage in—and whose losses predominantly derive from—ordinary common-stock transactions"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (rejecting movant who primarily traded options because options investors "introduce factual issues irrelevant to stockholder class members," such as those discussed above) (citation omitted).

In many respects, the distinctions between bond investors and stock investors are more substantial than those between stock investors and options investors. While not identical, options prices ultimately reflect predictions about stock price moves, and thus fundamentally track consideration of the same information as stock prices, whereas, by contrast, bond prices reflect default risk but are often otherwise unconcerned with a company's upside performance. *See generally In re Forcefield Energy Inc. Sec. Litig.*, 2015 WL 4476345, at *5 (S.D.N.Y. July 22, 2015) ("[B]ond prices can be affected in different ways by market news."). And options investors are often able to piggyback on the market efficiency of a related stock[17]—because of the often-close relationship between stock and options prices—whereas bond investors must independently establish the market efficiency of each bond at issue in the case.

---

[17] *See In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal. 1991) (Options investors may utilize the presumption "since the value of options is directly related to the value of common stock[.]").

Appointing the NYC Funds on the basis of their bond trading, in a case where the Class is (and in all likelihood will be) largely comprised of stock purchasers, would do a disservice to the Class, which is entitled to be represented by a Lead Plaintiff with trading typical of the Class.

**C.      NMSIC Satisfies the Requirements of the PSLRA and Should Be Appointed as Lead Plaintiff**

With the NYC Funds removed from consideration, NMSIC is the only movant capable of satisfying the PSLRA's financial interest, adequacy, and typicality requirements.  With substantial losses of $12.42 million in connection with its Class Period purchases of 1,279,888 total shares (and 757,226 net shares) at a net cost of $21.68 million, NMSIC asserts a materially greater financial interest than any of the other remaining movants:[18]

|  | Total Shares Purchased | Net Shares Purchased (Net Shares Sold) | Net Expenditures (Net Gain) | LIFO Loss |
|---|---|---|---|---|
| NMSIC | 1,279,888 | 757,226 | $21,676,709 | $12,420,208 |
| Velliv, Pension & Livsforsikring A/S | 2,067,652 | 1,277,251 | $25,177,089 | $8,019,470 |
| ~~Haresh Joshi~~ | 1,103,130 | 270,995 | $8,663,744 | $4,755,508 |
| ~~Bridget N. Smagala~~ | 73,252 | 73,252 | 1,827,508 | $785,864 |

---

[18] Movants Haresh Joshi, Bridget N. Smagala Revocable Trust U/A DTD 06/02/2005, Suresh Kodali, and the General Retirement System of the City of Detroit are shown in struck-through text because they filed notices indicating they do not oppose the other motions for appointment as Lead Plaintiff and acknowledge they do not have the largest financial interest among the movants.  *See* ECF Nos. 19, 24, 25, and 26.

|  | Total Shares Purchased | Net Shares Purchased (Net Shares Sold) | Net Expenditures (Net Gain) | LIFO Loss |
|---|---|---|---|---|
| Revocable Trust U/A DTD 06/02/2005 |  |  |  |  |
| Suresh Kodali | 100,000 | 100,000 | $1,900,000 | $449,904 |
| General Retirement System of the City of Detroit | 126,707 | (79,003) | ($2,891,796) | $151,011 |

*See* ECF Nos. 5-7, 9-13; *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 815136, at *3 n.1 (E.D. Pa. Feb. 19, 2020) ("[C]ourts have expressed preference for," last-in-first-out ("LIFO") accounting in computing damages.).

In addition to its substantial financial interest in this litigation, NMSIC, a net purchaser and net loser on its Class Period purchases of AT&T stock, meets the applicable requirements under Rule 23 of the Federal Rules of Civil Procedure and, thus, is the "presumptively most adequate plaintiff" under the PSLRA. *See* ECF No. 11-1 at 7-13. Because there is no proof before the Court rebutting NMSIC's typicality and adequacy, NMSIC should be appointed as Lead Plaintiff. *Biondolillo v. Roche Holding AG*, 2017 WL 4220332, at *2-3 (D.N.J. Sept. 22, 2017) (appointing movant that made "an initial showing of adequacy and typicality," and where there was "no information before [the court] to suggest unfair or inadequate representation or unique and contradictory defenses to defeat the presumption of 'most adequate plaintiff'").

23

## III.    <u>CONCLUSION</u>

For the reasons stated herein, NMSIC respectfully requests that the Court appoint NMSIC as Lead Plaintiff, approve NMSIC's selection of Labaton Sucharow LLP as Lead Counsel for the Class and Barrack Rodos & Bacine as Liaison Counsel for the Class, and deny the competing motions.

DATED: October 23, 2023

Respectfully submitted,

*/s/ Robert A. Hoffman*
Robert A. Hoffman
Andrew J. Heo
**BARRACK, RODOS & BACINE**
One Gateway Center
Suite 2600
Newark, NJ 07102
Telephone: (973) 297-1484
Facsimile: (973) 297-1485
rhoffman@barrack.com
aheo@barrack.com

*Additional Counsel for Proposed
Lead Plaintiff New Mexico State
Investment Council and Proposed
Liaison Counsel for the Class*

Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff
New Mexico State Investment Council
and Proposed Lead Counsel for the
Class*

25

Raul Torrez, Attorney General
James Grayson, Chief Deputy
Attorney General
**OFFICE OF THE NEW MEXICO**
**ATTORNEY GENERAL**
Post Office Drawer 1508
Santa Fe, NM 87504-1508
Telephone: (505) 490-4052
jgrayson@nmag.gov

*Additional Counsel for Proposed*
*Lead Plaintiff New Mexico State*
*Investment Council*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of October 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Robert A. Hoffman*
Robert A. Hoffman