# EXHIBIT A

POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for the New York City Public
Pension Funds and Proposed Lead
Counsel for the Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BRAZINSKY, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T INC., RANDALL L. STEPHENSON, JOHN T. STANKEY, PASCAL DESROCHES, and JOHN STEPHENS,<br><br>    Defendants. | Case No. 2:23-cv-04064-KM-JBC<br><br>[PROPOSED] RESPONSE MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF THE NEW YORK CITY PUBLIC PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL<br><br>Motion Date: November 6, 2023 |

1

Lead Plaintiff Movants the NYC Funds[1] respectfully submit this Memorandum of Law in further support of their motion for appointment as Lead Plaintiff and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 14) and in response to NMSIC's sur-reply (ECF No. 38-1, the "Sur-Reply").

## ARGUMENT

### I.    NMSIC's Assertion That the NYC Funds Should Be Disqualified Has No Basis in Fact or Law

In NMSIC's Opposition (ECF No. 30), it falsely asserted that the NYC Funds were "net sellers" requiring disqualification.[2] After NYC debunked this misrepresentation in its Reply (ECF No. 37), NMSIC now asserts that the law requires disqualification of even net purchasers such as the NYC Funds if they are "net gainers." NMSIC has egregiously misrepresented the law, which only disqualifies net gainers after first determining that the movant was a net seller. NMSIC also incorrectly characterizes the NYC Funds as net gainers by looking only at gross proceeds from Class Period sales instead of matching those sales to prior purchases to determine whether the NYC Funds profited from those sales.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in the NYC Funds' moving, opposition, or reply briefs.  *See* Dkt. Nos. 14-2, 29, 37.

[2] NMSIC asserts that its argument has always been that it's the NYC Funds' purported "net gainer" status that disqualifies them as Lead Plaintiff. Sur-Reply at 1. This newly-minted argument is belied by the first heading of NMSIC's "Argument" section of its Opposition: "The NYC Funds Cannot Be Appointed Lead Plaintiff Because They Are a ***Net Seller and a Net Gainer***…" ECF No. 30 at 6 (emphasis added).

### A. Net Gainers Are Disqualified Only Where They Are Also Net Sellers

NMSIC concedes that the NYC Funds were net purchasers, not net sellers as previously alleged. As the cases NMSIC cites explain, net purchasers are ideal lead plaintiffs:

> **[N]et purchasers have a greater interest in a securities lawsuit** because a net purchaser was induced by the fraud to purchase shares and has been left "holding the bag" when the fraud is eventually revealed.

*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *8 (N.D. Cal. Feb. 15, 2011) (emphasis added). This is common sense. When a movant is a net purchaser there is no concern that they benefited more from the Class Period inflation when selling shares than they lost by purchasing inflated shares because, by definition, they purchased more inflated shares than they sold, suffering a net loss from the fraud.  As net purchasers, the NYC Funds are an adequate Lead Plaintiff. The analysis ends there.

A movant's status as a "net gainer" only comes into play if the proposed Lead Plaintiff is first determined to be a net seller. Again, as the cases NMSIC cites explain:

> [A] net seller arguably profits more from the fraud than suffers from it. Courts have found that this presumption applies **only when a net seller <u>is also a net gainer</u>**.

*Id*. (emphasis added). Tellingly, NMSIC does not cite a single case in which a court disqualified a "net purchaser" because it was a "net gainer," and the NYC Funds are not aware of any such case. Rather, every case cited by NMSIC involves a net seller and states that disqualification is limited to when a movant is **both** a net seller **and** a

net gainer. *See Id*; *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) ("Anklis is a 'net seller' **and** 'net gainer' …. That status effectively disqualifies Anklis from representing a class") (emphasis added); *Adcock v. Netbank, Inc.*, No. 1:07-CV-2298-BBM, 2008 WL 11322962, at *6 (N.D. Ga. Apr. 21, 2008) ("A net seller who nonetheless suffered a loss can still prove damages, and therefore is still qualified to serve as lead plaintiff"); *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-01558-GMN, 2010 WL 4316754, at *4 (D. Nev. Oct. 25, 2010) ("courts will allow net sellers who are also net losers to be appointed lead plaintiff, as they normally have no problem proving damages"); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 132 (S.D.N.Y. 2011) ("It is true that courts have sensibly refused to appoint as lead plaintiff net sellers who are also net gainers").

The cases upon which NMSIC relied in its Opposition but abandoned in its Sur-Reply likewise involve movants that are net sellers **and** net gainers. *See In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (movant was a net seller and net gainer); *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719 (S.D. Tex. 2021) (same); *Doshi v. Gen. Cable*, No. CV217025WOBCJS, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) (same); *Scheller v. Nutanix, Inc.*, No. 19-CV-01651-WHO, 2021 WL 2410832, at *7 (N.D. Cal. June 10, 2021) (same); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 23 CIV. 1769 (LGS), 2023 WL 6458930, at *6 (S.D.N.Y. Oct. 4, 2023) (same); *Hodges v. Immersion Corp.*, 2009 WL 5125917, at *2 (N.D. Cal. Dec. 21, 2009) (same).

The only way NMSIC was able to arrive at its false conclusion is by the egregious use of ellipses and brackets to suggest that the case law focused exclusively

4

on a movant's status as a net gainer when the cases clearly state that one is disqualified as a Lead Plaintiff only if they are **both** a net seller **and** a net gainer. Below is a chart demonstrating how NMSIC and its counsel mischaracterized the cases they cited.

| Case | NMSIC's Representation | Actual Quotation |
|---|---|---|
| *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) | "status as net gainer 'effectively disqualifies [movant] from representing a class'" | "Anklis is a 'net seller' **and** 'net gainer' …. That status effectively disqualifies Anklis from representing a class." (emphasis added) |
| *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *8 (N.D. Cal. Feb. 15, 2011) | "the presumption that an investor 'arguably profits more from the fraud than suffers from it[,]' **only applies to net gainers**." (emphasis added) | "a net seller arguably profits more from the fraud than suffers from it. Id. at 997. Courts have found that this presumption applies **only when a net seller is also a net gainer**." (emphasis added) |
| *Adcock v. Netbank, Inc.*, No. 1:07-CV-2298-BBM, 2008 WL 11322962, at *6 (N.D. Ga. Apr. 21, 2008) | "between net seller and net gainer status, '[t]he more important factor is whether one is a net gainer'" | "However, to the extent that Mr. Brown could be considered a net seller, such status does not preclude lead plaintiff status. The more important factor is whether one is a net gainer or a net loser. A net seller who nonetheless suffered a loss can still prove damages, and therefore is still qualified to serve as lead plaintiff." |
| *Foley v. Transocean Ltd.*, | "'[C]ourts have sensibly refused to appoint [**net** | "courts have sensibly refused to appoint as lead plaintiff **net** |

5

| 272 F.R.D. 126, 132 (S.D.N.Y. 2011) | **gainers**] as lead plaintiff,'" (emphasis added) | **sellers who are also net gainers**." (emphasis added) |
|---|---|---|
| *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-01558-GMN, 2010 WL 4316754, at *4 (D. Nev. Oct. 25, 2010) | "courts 'disapprove of net gainers being lead plaintiffs' because 'a net gainer achieves a net profit from its [c]lass [p]eriod shares'" | "Although courts often disapprove of net gainers being lead plaintiffs, courts will allow net sellers who are also net losers to be appointed lead plaintiff, as they normally have no problem proving damages…The case that DeKalb cites as support for its argument…dealt with a net seller that achieved a net gain, and, as such, is not relevant here." |

Any claim by NMSIC that they merely misunderstood the case law is belied by the fact that it *correctly* stated the law in its Opposition before NMSIC's assertion that the NYC Funds were a net seller was debunked. Indeed, the first heading of NMSIC's "Argument" section of its Response states: "The NYC Funds Cannot Be Appointed Lead Plaintiff Because They Are a *Net Seller and a Net Gainer*…" ECF No. 30 at 6 (emphasis added). Yet again, NMSIC has distorted the record in a vain attempt to disqualify the NYC Funds.

## B. NMSIC's Assertion That the NYC Funds Are "Net Gainers" Is False

NMSIC asserts that the NYC Funds are net gainers because they received more proceeds from Class Period sales than they spent on purchases. Sur-Reply at 2. However, this is not how courts determine whether one is a net gainer. As explained in *In re Vivendi Universal, S.A. Sec. Litig.*, upon which NMSIC relies, when netting

gains with losses the Class Period sales must be matched to prior purchases, just as losses are calculated by matching Class Period purchases with subsequent sales and/or retained shares. 284 F.R.D. 144, 158-160 (S.D.N.Y. 2012). *See also In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (explaining that determination of whether movant is a "net gainer" requires, *inter alia*, matching Class Period sales to prior purchases using LIFO).

The NYC Funds did not profit from their purchase and sale of AT&T common stock during the Class Period. When their Class Period sales are matched to their purchases (just as their Class Period purchases are matched to subsequent sales) the NYC Funds suffered a ***net loss of $74.59 million***.  Przybylowski Decl. Ex. 1.

| | Purchases Shares/Par | Purchase Amount | Sales Shares/Par | Sale Amount | LIFO Gain (Loss) |
|---|---|---|---|---|---|
| **NYC Funds** | 15,509,219 | ($391,300,777) | (13,476,775) | $316,628,586 | ($74,590,637) |

Therefore, even if courts did examine whether a net purchaser was a net gainer (they do not), the NYC Funds would still be an adequate Lead Plaintiff.

NMSIC reaches the false conclusion that the NYC Funds "profited" from their Class Period sales of common stock by failing to match Class Period sales of the 3,866,440 shares purchased prior to the Class Period to their pre-Class Period purchase prices, instead treating the gross proceeds from the sales as "profit." Yet, common sense dictates that the purchase prices for these shares would need to be included to determine whether the NYC Funds were indeed "gainers" from its relevant AT&T transactions. The NYC Funds' cost basis for these 3,866,440 shares were $132,992,737.95. As demonstrated in the attached exhibit, properly including

the cost basis for these shares yields a $74.59 million loss for NYC Funds, debunking any myth that they are a "net gainer" in this Action. Przybylowski Decl. Ex. 1.

*Mullen v. Wells Fargo & Co. et al.*, No. 3:20-cv-07674-WHA, ECF No. 78 (N.D. Cal. Mar. 15, 2021), is instructive. Przybylowski Decl. Ex. 2. There, a competing Lead Plaintiff movant argued that certain investment accounts were atypical because they were **both** net sellers and net gainers. The Court determined that an assessment of whether or not those accounts were net gainers needed to take into account the cost basis for the pre-Class Period shares that were sold during the Class Period:

> Take all five accounts, including any that . . . started with common stock prior to the class period and keep track of the cost basis and then go through on a LIFO basis within each account . . . and then go through on a LIFO basis within each account . . . to get a bottom line number per account as to whether it was gained and how much the gain was.

Przybylowski Decl. Ex. 3, 51:18-24. *See also, id*. at 49:24-25 (The Court: "All right. Well, I think I agree that the gross doesn't matter"), *id*. at 51:18-52:9 (The Court: "What I want to know is this…keep track of the cost basis and then go through on a LIFO basis within each account…get a bottom-line number per account as to whether it was gained and how much the gain was.…So you need to say, okay, there was 9.3 gross sales during the class period but…the cost basis was 8 million so the gain was 1.3…So that means you're going to have to take into account where there was a -- you start -- your account starts by holding shares that were preclass period shares"). As such, once the cost-basis of the shares sold during the Class Period are properly included in the analysis, the NYC Funds are clearly not "net gainers" in AT&T

8

common stock and suffered significant losses on its transactions in AT&T common stock during the Class Period.

## II.    The NYC Funds' Bond Transactions Are Correctly Included in their Analysis

Even if the NYC Funds were a net seller of common stock (they were not) and also a net gainer (they were not), NMSIC concedes that the NYC Funds were a net purchaser and net loser of AT&T *securities*, which is the stated scope of the Class.

NMSIC's assertion that the NYC Funds never previously identified bonds as being included in the Class definition is simply wrong. The NYC Funds' opening brief identifies the Class definition as including all "securities" (ECF No. 26 at 1) and expressly discussed their purchase of bonds in their loss calculation. *Id*. at 2, 6. NMSIC's assertion that the Class definition is limited to common stock is further belied by the fact that other movants claimed losses in connection with AT&T securities other than common stock. *See* Reply at 10. There is no basis whatsoever for the Court to exclude the NYC Funds' bond purchases from its Lead Plaintiff analysis.

Moreover, NMSIC's attempt to place limitations on the definition of the Class at this earlystage weighs against appointing it as Lead Plaintiff. NMSIC proposes to leave bond investors that were damaged by Defendants' fraud out in the cold simply because it serves its own self-interest of being a Lead Plaintiff.

**CONCLUSION**

NYC Funds respectfully request that the Court grant its motion in full and deny

NMSIC's competing motion.

Dated:  November 8, 2023

> Respectfully submitted,
> POMERANTZ LLP
>
> */s/ Thomas H. Przybylowski*
> Thomas H. Przybylowski
> Jeremy A. Lieberman
> (*pro hac vice* application forthcoming)
> J. Alexander Hood II
> (*pro hac vice* application forthcoming)
> 600 Third Avenue, 20th Floor
> New York, New York 10016
> Telephone: (212) 661-1100
> Facsimile: (917) 463-1044
> tprzybylowski@pomlaw.com
> jalieberman@pomlaw.com
> ahood@pomlaw.com
>
> *Counsel for the New York City Public*
> *Pension Funds and Proposed Lead*
> *Counsel for the Class*

10