**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| IN RE AT&T INC. SECURITIES LITIGATION | Case No. 3:24-cv-01196-N |

## MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND BRIEF IN SUPPORT

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 3

Legal Standard ...................................................................................................................... 6

Argument ............................................................................................................................... 7

    I.     The Amended Complaint must be dismissed for failing to plead the requisite strong inference of scienter. ...................................................... 7

         A.     The Amended Complaint fails to allege scienter individually as to each Defendant. .................................................................................... 8

         B.     The Amended Complaint's motive allegations do not support a strong inference of scienter. ................................................................ 11

         C.     The Amended Complaint does not plead any other facts giving rise to the requisite strong inference of scienter. ........................................ 12

               1.     The Amended Complaint's sparse allegations that some individual Defendants knew certain facts do not support any inference of scienter. .......................................................... 15

               2.     The Amended Complaint's remaining circumstantial allegations do not contribute to any inference of scienter. ........... 17

         D.     Even reviewed holistically, the allegations do not raise any strong or compelling inference of scienter. ................................................. 18

    II.    The Amended Complaint must be dismissed for failure to plead falsity. ............. 19

         A.     The Amended Complaint's core allegation that Defendants omitted *opinions* fails as a matter of law. ................................................. 20

         B.     The Amended Complaint fails to allege with the requisite particularity why any challenged statement was materially misleading for failing to disclose a material *fact*. ..................................... 21

               1.     The Amended Complaint's statements about AT&T's transition from its legacy copper wireline network to fiber fail to allege falsity. ......................................................... 22

               2.     The Amended Complaint's statements about AT&T's environmental practices fail to allege falsity. .............................. 25

               3.     The Amended Complaint's statements about AT&T's commitment to the health and safety of employees fail to allege falsity. ......................................................................... 27

               4.     The Amended Complaint's statements about AT&T's risk disclosures fail to allege falsity. ................................................. 29

    III.    The Amended Complaint's scheme-liability claims must be dismissed for multiple reasons. ...................................................................................... 30

    IV.    Claims based on alleged misstatements made before July 28, 2018 must be dismissed under the five-year statute of repose. ............................................ 31

V.    The Amended Complaint does not attempt to allege loss causation for any
bond investment. ................................................................................................. 32

VI.    The Amended Complaint does not plead any claim for control-person
liability under Section 20(a). ............................................................................... 32

Conclusion ........................................................................................................................... 32

# TABLE OF AUTHORITIES

### CASES

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ...................................................................................11, 12, 18

*Ala. Elec. Pension Fund v. Flotek Indus., Inc.*,
   915 F.3d 975 (5th Cir. 2019) ...............................................................................................18

*Alaska Elec. Pension Fund v. Asar*,
   768 F. App'x 175 (5th Cir. 2019) ...........................................................................................9

*Bondali v. YUM! Brands, Inc.*,
   620 F. App'x 483 (6th Cir. 2015) .........................................................................................28

*Coates v. Heartland Wireless Commc'ns Inc.*,
   100 F. Supp. 2d 417 (N.D. Tex. 2000) .................................................................................19

*Crutchfield v. Match Grp., Inc.*,
   529 F. Supp. 3d 570 (N.D. Tex. 2021) ............................................................................18, 29

*Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
   579 F. Supp. 3d 933 (S.D. Tex. 2022) .................................................................................10

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005)..............................................................................................................32

*Edgar v. Anadarko Petroleum Corp.*,
   2019 WL 1167786 (S.D. Tex. Mar. 13, 2019).......................................................................18

*Goldstein v. MCI WorldCom*,
   340 F.3d 238 (5th Cir. 2003) ...................................................................................13, 14, 26

*Heinze v. Tesco Corp.*,
   971 F.3d 475 (5th Cir. 2020) .....................................................................................1, 7, 21, 23

*In re Alamosa Holdings, Inc.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ...........................................................................11, 22

*In re BP p.l.c Sec. Litig.*,
   341 F. Supp. 3d 698 (S.D. Tex. Sept. 18, 2018)....................................................................31

*In re Eastman Kodak Co. Sec. Litig.*,
   629 F. Supp. 3d 169 (W.D.N.Y. 2022)..................................................................................21

*In re Key Energy Servs., Inc. Sec. Litig.*,
   166 F. Supp. 3d 822 (S.D. Tex. 2016) ..................................................................................15

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
    424 F. Supp. 2d 880 (N.D. Tex. 2005) .................................................................21

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
    245 F. Supp. 3d 870 (S.D. Tex. 2017) .................................................................10

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
    307 F. Supp. 3d 583 (S.D. Tex. 2018) .............................................................27, 28

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ......................................6, 7, 8, 10, 11, 12, 18

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
    237 F. Supp. 3d 492 (S.D. Tex. 2017) .................................................................18

*Jacobowitz v. Range Res. Corp.*,
    596 F. Supp. 3d 659 (N.D. Tex. 2022) ...........................................................11, 26

*Linenweber v. Sw. Airlines Co.*,
    693 F. Supp. 3d 661 (N.D. Tex. 2023) .......................................................25, 26, 30

*Lipow v. Net1 UEPS Techs., Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015).................................................................21

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
    810 F.3d 951 (5th Cir. 2016) ...........................................................................8, 18

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)...........................................................................................1, 20

*Magruder v. Halliburton Co.*,
    359 F. Supp. 3d 452 (N.D. Tex. 2018) ........................................................7, 9, 22, 26

*Markman v. Whole Foods Mkt., Inc.*,
    2016 WL 10567194 (W.D. Tex. Aug. 19, 2016)........................................25, 26, 30

*Merck & Co., Inc. v. Reynolds*,
    559 U.S. 633 (2010)...........................................................................................31

*Neiman v. Bulmahn*,
    854 F.3d 741 (5th Cir. 2017) ...........................................................................12, 18

*Okla. Firefighters Pension and Ret. Sys. v. Six Flags Ent. Corp.*,
    58 F.4th 195 (5th Cir. 2023) .........................................................................23, 24

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*,
    575 U.S. 175 (2015)...........................................................................................20, 23

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ....................................................................9, 10, 13, 14, 16

*Peak v. Zion Oil & Gas, Inc.*,
    2020 WL 1047894 (N.D. Tex. Mar. 3, 2020) ..........................................................30

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
    777 F. App'x 726 (5th Cir. 2019) ........................................................................9, 26

*Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ...................................................................................32

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ...................................................................12, 22, 27

*Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
    935 F.3d 424 (5th Cir. 2019) ..........................................10, 11, 12, 13, 14, 17, 18, 32

*Ret. Sys. v. Whole Foods Mkt., Inc.*,
    905 F.3d 892 (5th Cir. 2018) ...................................................................................26

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) .............................................................................12, 13

*Schott v. Nobilis Health Corp.*,
    211 F. Supp. 3d 936 (S.D. Tex. 2016) ......................................................................9

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) .............................................................................8, 20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...................................................................................................8

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
    325 F. Supp. 3d 728 (N.D. Tex. 2018) ...............................................................13, 14

*Utah Ret. Sys. v. McCollum*,
    2023 WL 8649878 (5th Cir. Dec. 14, 2023) ...........................................................2, 8

*Wolfe v. Bellos*,
    2012 WL 652090 (N.D. Tex. Feb. 28, 2012)...........................................................31

*Yoshikawa v. Exxon Mobil Corp.*,
    2022 WL 4677621 (N.D. Tex. Sept. 29, 2022).............................................8, 23, 24

*Yoshikawa v. Exxon Mobil Corp.*,
    2023 WL 5489054 (N.D. Tex. Aug. 24, 2023).....................................................12, 30

**STATUTES**

15 U.S.C. § 78u-4 ...........................................................................................7, 19

15 U.S.C. § 78u-5 ...............................................................................................23

28 U.S.C. § 1658(b) ............................................................................................31

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5....................................................................1, 6, 20, 21, 30

**INTRODUCTION**

After the *Wall Street Journal* published a series of articles in 2023 alleging supposed public health hazards from lead-clad cables used in the telecom industry for over a century, the price of AT&T's stock—along with several of its competitors'—fell. And as night follows day, this stock-drop suit followed. Because the Amended Complaint fails to meet the standards of Rule 12, Rule 9, and especially, the exacting standards established by the Private Securities Litigation Reform Act ("PSLRA"), it should be dismissed as to AT&T and all individual Defendants.

The Amended Complaint does not—and cannot—allege that AT&T faced any material liability from any lawsuit or investigation about lead-clad cables during the putative Class Period. Instead, the Amended Complaint's core assertion is that litigation or regulatory activity stemming from lead-clad cables will—at some point in the future—impact AT&T, and that AT&T executives misled investors by not speculating publicly about this hypothetical liability years ago. *See, e.g.*, ¶¶ 6, 11, 265, 280. Even taking the well-pleaded allegations as true, this is not even close to securities fraud.

To plead a claim under the Securities Exchange Act, Plaintiffs must allege that Defendants acted with a wrongful state of mind in making either (1) an untrue statement of a material *fact*, or (2) an omission of a material fact that was *necessary* to make statements *not misleading*. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024). The Amended Complaint does not challenge *any* statement of *any* fact about lead-clad cables during the Class Period. Instead, the Amended Complaint faults Defendants under an "omission" theory for not speculating about litigation or regulatory events that might unfold in the future. But that kind of speculation is not a "fact," so its alleged omission is not actionable as a matter of law. *See* 17 C.F.R. § 240.10b-5(b) (referring only to omissions of "fact"); *Heinze v. Tesco Corp.*, 971 F.3d 475, 482 (5th Cir. 2020) (omissions of "speculative predictions" not actionable). The Amended

1

Complaint should thus be dismissed on several independent grounds.

To begin, the Amended Complaint does not contain any allegations that can support the requisite strong inference of scienter. The PSLRA's exacting pleading standard requires Plaintiffs to allege facts that give rise to a strong inference—one that is "at least as compelling as any opposing inference"—that each Defendant intended to deceive the market, either by knowingly misrepresenting material facts or by consciously ignoring an obvious danger of misleading investors. *Utah Ret. Sys. v. McCollum*, 2023 WL 8649878, at *3 (5th Cir. Dec. 14, 2023). There are no such allegations here. Despite many months of investigation, Plaintiffs are unable to allege that any Defendant was told, received a report, or otherwise believed that lead-clad cables posed a reasonably likely risk of material liability during the Class Period. The Amended Complaint stretches so far to try to assert scienter that it alleges the individual Defendants received the same lead-paint acknowledgements that millions of other Americans have also received when purchasing a home. Neither these disclosures, nor anything else that Defendants are alleged to have known, indicated to them that AT&T was allegedly mishandling its lead-clad cables, much less in a way that would have caused any particular Defendant to believe AT&T would be exposed to material liability.

Beyond its failure to plead scienter, the Amended Complaint also fails to plead falsity. Plaintiffs fall far short of pleading particularized facts showing that Defendants' statements were either false or misleading because of the omission of a material fact. Plaintiffs' allegation that Defendants should have speculated about a hypothetical future liability is contrary to this most basic requirement. None of the challenged statements even mentions (or requires any mention of) lead-clad cables, and many are non-actionable opinions, forward-looking statements, or generalized, aspirational statements about corporate goals.

The Amended Complaint requires dismissal for additional reasons. Some of the alleged misrepresentations are barred by the five-year statute of repose. Plaintiffs' scheme-liability claim fails because the Amended Complaint contains only a generic recitation of the elements without any factual support, much less the particularity the PSLRA demands. And the Amended Complaint does not even attempt to plead loss causation as to the putative class of purchasers who bought AT&T bonds during the Class Period. Finally, the control-person allegations under Section 20(a) of the Exchange Act are derivative of Plaintiffs' other claims and fail to state a claim for all the reasons set forth above.

Congress designed the PSLRA's demanding pleading standards to weed out opportunistic suits like this one—a textbook example of a stock-drop suit in search of a claim. If anything, this suit falls even shorter of meeting those demanding standards than others that have been dismissed. Those shortcomings cannot be cured, so the Amended Complaint should be dismissed with prejudice.

**BACKGROUND**

AT&T is one of the world's largest telecommunications companies. ¶ 39. At the start of the Class Period, it had "approximately $160 billion in annual revenue." *Id.* AT&T's Legacy Voice and Data segment, which includes its legacy wireline assets, represented less than 8 percent of its revenues at the start of the Class Period and less than 2 percent of revenues by the end of the Class Period.[1] In mid-2023, AT&T estimated that less than 10 percent of the copper cables in its legacy wireline network were clad in lead. ¶ 262.

After the *Journal* published its articles about lead-clad cables owned by "AT&T, Verizon, and other telecom giants," ¶¶ 3, 241, three things happened. First, the price of the telecom

---

[1]    ¶ 61; Ex. C at App. 14 [2022 Form 10-K].

companies' (including AT&T's and Verizon's) stock dropped.  ¶ 405-07.  Second, shareholders brought stock-drop suits against the telecom companies—including AT&T (this case) and Verizon.  *See Stichting Pensioenfonds Metaal en Techniek v. Verizon Commc'ns, Inc.*, No. 3:32-cv-5128 (D.N.J.).  Third, the telecom industry, including AT&T and Verizon, challenged the scientific basis and validity of the *Journal*'s reporting.  ¶ 244, 272.

The premise of the Amended Complaint is that Defendants should have predicted and disclosed that AT&T "would incur substantial costs in connection with legislative actions, regulatory enforcement, investigative efforts, removal, remediation, litigation and/or related penalties" stemming from the *Journal*'s reporting.  ¶¶ 280, 395-96.  But there is no allegation that any Defendant believed or was told during the Class Period that AT&T faced any risk of liability related to its lead-clad cables, much less a reasonably likely risk of material liability.[2]  Instead, the Amended Complaint acknowledges that AT&T responded to the *Journal*'s reporting by immediately reiterating its view that lead-clad cables pose no public-health issues and challenging the *Journal*'s reporting as contrary to the scientific literature and studies and contradicted by numerous independent third-party analyses.  ¶ 263.

The day after the Class Period closed, AT&T did state that it "may be subject to litigation, government investigations and potentially new regulation or legislation relating to lead-clad cables," "in light of the [*Journal*'s] assertions," and that it "may incur significant expenses defending such suits or government actions."  ¶ 264.  In the year since the Class Period closed,

---

[2]    The Amended Complaint notes isolated public lawsuits against AT&T companies related to lead-clad cables during the Class Period—two in Texas and one in California.  ¶ 198 *et seq*.  Plaintiffs allege that the Texas lawsuits were dismissed before trial, ¶ 207, and that AT&T "agreed to remove the[ ] cables" at issue in the California suit "because they were no longer in use," but "emphasized that [it] dispute[s] any notion that they were a source of pollution."  ¶ 221.  There is no allegation that during the Class Period AT&T faced any material lawsuit or enforcement activity concerning lead-clad cables.  But these suits provided public information indicating that AT&T's lead-clad cables crossed the country and could be the subject of litigation.

AT&T has worked cooperatively with state and federal regulators on these issues, and there has not been a flood of civil suits.

AT&T's stock price quickly rebounded.  Fewer than eleven weeks after the first *Journal* article—and fewer than two months after the close of the Class Period—AT&T's stock price surpassed $15.61, the price at which it closed the trading day before the first *Journal* article.

\* \* \*

The Amended Complaint does not identify a single alleged misrepresentation that specifically mentions lead-clad cables.  Instead, attempting to proceed on an omission theory, Plaintiffs identify four categories of statements they contend were misleading solely because AT&T purportedly omitted warnings about the hypothetical risk of liability tied to its lead-clad cables.

**1.**  Progress on AT&T's transition from its copper wireline network to fiber optics, and the predicted and actual cost savings from that transition.  ¶¶ 279-328.  As AT&T explained, the expected cost savings stemmed from removing "the fixed and variable costs that go along with running and maintaining a very large copper network."  ¶ 304.  The Amended Complaint does not challenge the accuracy of the transition statements themselves or contend that the predicted or actual cost savings Defendants reported were fake or miscalculated.

**2.**  AT&T's environmental practices.  ¶¶ 329-360.  The Amended Complaint relies on generalized statements about AT&T's commitment to environmental responsibility as well as statements (i) identifying a group at AT&T working to establish environmental practices; (ii) reporting the reclamation of some copper in the copper-to-fiber transition that was kept from landfills; (iii) explaining how practices regarding the removal of aerial and underground cables vary by site; and (iv) explaining that AT&T properly disposes of hazardous waste.  These

statements (which do not reference lead-clad cables) are not alleged to be false; the Amended Complaint claims instead that they are misleading because of the alleged failure to warn investors of hypothetical liabilities regarding lead-clad cables.

**3.** AT&T's commitment to the health and safety of employees.  ¶¶ 361-383.  These are also generalized statements of AT&T's corporate goals and commitments to employee health and safety, as well as statements acknowledging that AT&T (i) conducts training on job hazards employees are likely to encounter and (ii) audits and monitors employee health and safety performance.  The Amended Complaint further relies on statements acknowledging the unsurprising fact that a company of AT&T's size is subject to lawsuits and repeating public information about AT&T's employee and environmental litigation and other disputes.  ¶¶ 75-79.  The Amended Complaint contends these statements misled investors for the same reasons stated above.

**4.** Risk disclosures.  ¶¶ 384-395.  These include statements that (i) AT&T's projections about the transformation of its business may not be realized, and (ii) conduct by AT&T employees (or related lawsuits) could damage its reputation.  The Amended Complaint does not challenge the existence of these risks.

LEGAL STANDARD

To state a securities-fraud claim under Section 10(b) and Rule 10b-5(b), plaintiffs must plead (1) a material misrepresentation or omission; (2) a defendant acting with scienter; (3) reliance; (4) damages; and (5) loss causation.  *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 532 (5th Cir. 2008).  To survive dismissal, the complaint must satisfy the heightened pleading standards of both Rule 9(b) and the PSLRA.  Rule 9(b) requires that the complaint state "with particularity the circumstances constituting fraud."  Fed. R. Civ. P.

9(b).  The PSLRA "enhance[s]" that requirement "in two ways."  *Shaw Grp.*, 537 F.3d at 533.

First, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief," then the complaint must "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Second, for "each act or omission alleged" to be false or misleading, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  "If the complaint fails to meet these requirements, 'the court shall, on the motion of any defendant, dismiss the complaint.'"  *Heinze*, 971 F.3d at 479 (quoting § 78u-4(b)(3)(A)).

ARGUMENT

The PSLRA was designed to weed out opportunistic suits just like this one.  At its core, the Amended Complaint asserts a legally deficient claim that Defendants failed to disclose predictions about liability that might unfold in the future.  The Amended Complaint fails to (I) create a "strong inference" that any individual Defendant had the requisite scienter; (II) plead the falsity of the statements Defendants made with the required particularity; (III) plead a scheme-liability claim; (IV) filter out claims that are barred by the statute of repose; (V) allege loss causation for any bond purchaser; and (VI) allege a viable control-person liability claim under Section 20(a).  These deficiencies cannot be cured, so the Amended Complaint should be dismissed with prejudice.

## I.  The Amended Complaint must be dismissed for failing to plead the requisite strong inference of scienter.

The standard for pleading scienter in a securities class action is strict.  Plaintiffs must plead "with particularity facts giving rise to a strong inference that *each* defendant acted with 'intent to deceive, manipulate, or defraud or [with] severe recklessness.'"  *Magruder v. Halliburton Co.*,

7

359 F. Supp. 3d 452, 460 (N.D. Tex. 2018) (quoting *Shaw Grp.*, 537 F.3d at 541) (emphasis added).  A "strong inference" must be "powerful or cogent"—not merely "reasonable or permissible"—and must be "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007); *McCollum*, 2023 WL 8649878, at *3.  The scienter analysis is "inherently comparative"—it requires courts to consider "plausible, nonculpable explanations for the defendant's conduct."  *Tellabs*, 551 U.S. at 324.

The Amended Complaint falls woefully short of these rigorous standards.  It fails to allege scienter as to each individual Defendant and tries to hide that failure by improperly relying on group pleading.  It proffers generalized motives that courts have long recognized do not support a "strong inference" of scienter.  And it fails to plead any other facts giving rise to an even *stronger* inference (as required in the absence of allegations of motive) that Defendants had the requisite intent or severe recklessness.

### A.    The Amended Complaint fails to allege scienter individually as to each Defendant.

Plaintiffs must "distinguish among those they sue and enlighten *each Defendant* as to his or her particular part in the alleged fraud."  *Yoshikawa v. Exxon Mobil Corp.*, 2022 WL 4677621, at *3 (N.D. Tex. Sept. 29, 2022) ("*Exxon I*") (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004)).  Accordingly, the Fifth Circuit "reject[s] the 'group pleading approach to scienter,' and [instead] focuses on the state of mind of the corporate officials who make, issue, or approve the statement rather than the 'collective knowledge of all the corporation's officers and employees.'"  *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016).  The Amended Complaint runs afoul of this requirement in multiple ways.

8

1.      Half of the 72 challenged statements are non-actionable because they are attributed only to "AT&T," with no "allegations that tie a specific individual to the statements."[3]  *See Magruder*, 359 F. Supp. 3d at 462 ("Representations made [in several press releases] are either unattributed or attributed only to 'Halliburton.' . . . Such an unattributed statement . . . [is] not actionable, as impermissible group pleading.").  Specifically, this includes all the challenged statements in the unsigned "Issue Briefs" on AT&T's website.  Plaintiffs have failed to plead scienter as to those statements.  *See Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731-32 (5th Cir. 2019) (plaintiff "failed to sufficiently plead scienter" for unattributed statements published on the company's website); *see also Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 951 (S.D. Tex. 2016) (no scienter unless "individual corporate officer making the statement has the requisite scienter").

2.      Other allegations do not support a strong inference of scienter because they attribute knowledge of various facts to a group.  *See, e.g.*, ¶¶ 140-141, 184, 190, 196-197, 434, 436 (using general terms like "AT&T," Environment, Health, and Safety "leadership," or "AT&T's accounting group").  This constitutes impermissible group pleading, which cannot support a strong inference of scienter.  *See Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 186 (5th Cir. 2019); *Owens v. Jastrow*, 789 F.3d 529, 538 (5th Cir. 2015) (courts must "disregard" group-pleading allegations in assessing whether the complaint adequately pleads scienter).

3.      The Amended Complaint's allegations about people other than the individual Defendants also do not support a strong inference of scienter.  The Amended Complaint alleges that various "Senior AT&T Officials" participated in industry groups and were involved in public

---

[3]      *See* ¶¶ 329-331, 335-337, 341-343, 345-347, 349-351, 357-359, 361-362, 364-366, 368-370, 372-374, 376-378, 380-382 (challenging numerous statements made in "Issue Briefs" published on AT&T's website).

discussions regarding rules and regulations pertaining to lead. *See* ¶¶ 145-165, 174-183. But none of these allegations mentions any of the individual Defendants, much less connects any of them to information shared in industry groups. Plaintiffs "cannot simply allege that some other person at the corporation knew of facts" that supposedly "make a challenged statement misleading and impute that knowledge to the speaker." *Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 579 F. Supp. 3d 933, 953-54 (S.D. Tex. 2022); *see also In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 926 (S.D. Tex. 2017) ("*Plains I*") ("[T]hat some person or persons at Plains knew about one or more of the various problems . . . is not sufficient to allege scienter against the company's officers. . . . [P]laintiffs must allege in detail who provided the officers what information and when.").

    **4.**    The confidential-witness allegations are similarly deficient. *See* ¶¶ 123-124, 127-130, 133-138, 142-144. After months of investigation, Plaintiffs did not identify any confidential witness who could allege that anyone at AT&T told any individual Defendant anything at all, much less anything about lead-clad cables. No allegations "indicate how or when the [individual Defendants] became aware of what the confidential source[s] allegedly knew." *Shaw Grp.*, 537 F.3d at 542. Nor do the allegations "relate any interaction with" the individual Defendants. *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 434 (5th Cir. 2019).

    Although one confidential witness claims to have "worked with" Defendant Stankey "for years," that witness merely guesses at what Stankey would have known and does not claim that Stankey (or any other individual Defendant) possessed any information contradicting the statements alleged to be misleading. *See* ¶ 124; *see also Owens*, 789 F.3d at 545.

    The most that can be drawn from the confidential-witness allegations is an inference that lower-level employees may have had concerns, *see* ¶¶ 133-138, but there is no allegation that these

purported concerns were elevated to the individual Defendants charged with making a misrepresentation, or that anyone reported to the individual Defendants that these employees' concerns would likely have a material impact on AT&T. There is likewise no allegation that any confidential witness told any individual Defendant what Plaintiffs claim should have been disclosed—that is, that the cables were "toxic" or were "leach[ing]" or "releas[ing] lead particles into the air," *see, e.g.*, ¶ 280—much less that any such allegation created a material liability for AT&T.

### B. The Amended Complaint's motive allegations do not support a strong inference of scienter.

Though allegations of motive are not essential, they are often "critical" to securities-fraud complaints because, without them, even *stronger* allegations of conscious misbehavior are required. *Pier 1*, 935 F.3d at 430-31. The Amended Complaint alleges only two generic motives: (1) reducing corporate debt, and (2) increasing incentive compensation. ¶¶ 435-436, 441. But these are "not the types of motive that support a strong inference of scienter." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002). The Fifth Circuit repeatedly has held that motives "universally held among corporations and their executives" do not "contribute significantly" to any inference of scienter. *Shaw Grp.*, 537 F.3d at 544.

*First*, allegations that Defendants desired to manage AT&T's debt or to decrease costs, ¶¶ 435-436, 441, are too generalized as a matter of law. If credited, they would establish scienter for virtually every executive in America, a result incompatible with the PSLRA's heightened requirements. *See Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 690 (N.D. Tex. 2022); *see also In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 859 (N.D. Tex. 2005) (motive "to pay down [company's] debt" was an "insufficient" "universal" corporate motive).

*Second*, " 'compensation structure arguments cannot create an inference of scienter alone,'

as otherwise, 'the executives of virtually every corporation in the United States would be subject to fraud allegations.' " *Yoshikawa v. Exxon Mobil Corp.*, 2023 WL 5489054, at *8 (N.D. Tex. Aug. 24, 2023) ("*Exxon II*") (quoting *Abrams*, 292 F.3d at 434). It is thus "only in an *extraordinary* case" that "[i]ncentive compensation packages may be considered in conjunction with other scienter allegations." *Shaw Grp.*, 537 F.3d at 544 (emphasis added); *see also Pier 1*, 935 F.3d at 431. This is no extraordinary case. Plaintiffs plead no facts indicating that the individual Defendants' compensation was outsized or unusual for executives of a Fortune 10 company or otherwise. ¶ 441.

### C.    The Amended Complaint does not plead any other facts giving rise to the requisite strong inference of scienter.

Where, as here, a complaint does not allege a legally sufficient motive, "the strength of the circumstantial evidence of scienter must be correspondingly greater." *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017) (quoting *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005)). That is on *top* of the already heavy burden to allege that the individual Defendants acted with the *intent* to defraud, *Pier 1*, 935 F.3d at 429-30, or with "severe recklessness," which is "limited to those highly unreasonable omissions or misrepresentations" (1) constituting "an *extreme* departure from the standards of ordinary care" and (2) "present[ing] a danger of misleading buyers or sellers" of securities that was "either known to the [D]efendant or is so obvious that the [D]efendant must have been aware of it." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (emphasis added). The Amended Complaint does not come close.

To start, the Amended Complaint does not even try to allege that any individual Defendant intended to deceive investors. Past formulaically (and insufficiently) gesturing toward intent, Plaintiffs' theory of scienter hangs on severe recklessness. *See* ¶ 410. More specifically, the Amended Complaint alleges that Defendants were severely reckless in failing to disclose

12

speculation that AT&T would be harmed by events that had not happened yet (and that may never happen).[4]  But Plaintiffs do not even try to allege that anyone at AT&T—much less the individual Defendants—predicted during the Class Period any material liability from lead-clad cables, a liability that did not even materialize by the end of the Class Period.  As a matter of law, then, Defendants could not possibly have been severely reckless in failing to disclose a prediction that was hardly "obvious" during the Class Period and has not materialized today.  *See, e.g.*, *Rosenzweig*, 332 F.3d at 866 (a defendant is severely reckless only if the "danger of misleading" investors "is either known to the defendant or is so obvious that the defendant must have been aware of it").

        That is why the Amended Complaint falls even shorter of the requisite pleading standards than other complaints dismissed for failing to plead scienter.  *See, e.g.*, *Owens*, 789 F.3d at 533-34; *Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, at *4 (S.D. Tex. Mar. 13, 2019), *aff'd sub nom. Iron Workers Benefit & Pension Fund - Iron Workers Dist. Council Phila. & Vicinity v. Anadarko Petrol. Corp.*, 788 F. App'x 268 (5th Cir. 2019); *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 735 (N.D. Tex. 2018), *aff'd sub nom. Pier 1*, 935 F.3d 424 (5th Cir. 2019).

        In those cases, unlike in this one, the plaintiffs alleged that by the end of the class period the allegedly omitted risks *had materialized*.  In *Owens*, the bank recorded a $1.62 billion impairment in the wake of the financial and housing crises.  789 F.3d at 533-34.  In *Anadarko*, an explosion and fire killed multiple people allegedly because of a failure to seal well flowlines.  2019

---

[4]    *See* ¶¶ 280, 282, 284, 286, 288, 292, 294, 296, 298, 300, 303, 307, 309, 311, 314, 316, 319, 322, 325, 328, 386, 389, 392, 395 (alleging defendants did not disclose that "AT&T's legacy infrastructure *would* [ ] be phased out in a manner that would create costly scrutiny, liability, and reputational harm"; "it was reasonably *likely* that the Company would incur substantial costs in connection with legislative actions, regulatory enforcement, investigative efforts, removal, remediation, litigation, and/or related penalties"; and "the risk that the Company would not complete the upgrades to its network at an acceptable cost were not merely hypothetical") (emphasis added).

WL 1167786, at *3.  And in *Pier 1*, the retailer announced it would have to sell off excess products for at least the next eighteen months because of inventory inefficiencies.  325 F.3d at 735.

But these allegations were held *not* to have created a strong inference of scienter as a matter of law.  *See Owens*, 789 F.3d at 542-44 (alleged warnings to defendants did not establish an inference of knowledge because they did not "suggest that any issues were so severe that they could lead to" the alleged fraud); *Anadarko*, 788 F. App'x at 269-70 (allegations that "information was presented" to defendants "that could have led them to conclude" the company was not complying with regulations were insufficient); *Pier 1*, 935 F. 3d at 431-34 (knowledge of excessive inventory levels and backlogs was not equivalent to knowledge of a "significant markdown risk").  The allegations in this case do not even measure up to the ones held insufficient in *Owens*, *Anadarko*, and *Pier 1*.  Unlike in those cases, the Amended Complaint here does not allege that anyone knew, or that it was "so obvious" that they "must have been aware" of a "danger of misleading" investors, that lead-clad cables posed a material litigation risk for AT&T.  *Owens*, 789 F.3d at 532.  To the contrary, the Amended Complaint contains no allegations of the type that were present but still held to be insufficient in *Owens*, *Anadarko*, and *Pier 1*.  For example, there is no allegation that any Defendant was told the lead-clad cables were "toxic," were supposedly "leach[ing] lead particles into the surrounding environment," or that AT&T "workers routinely performed service on such cables in a manner that released lead particles into the air without proper abatement precautions."  ¶¶ 280, 332, 363, 386.

The Amended Complaint's reliance on reports that regulators are *now* investigating AT&T and other telecommunications companies in the wake of the *Journal*'s (disputed) reporting does not contribute to any inference of scienter, either.  The Amended Complaint acknowledges those investigations were not known until *after* the Class Period.  Even in cases where an investigation

begins and remains undisclosed during the class period, that does not mean any wrongdoing "must have occurred," or that defendants "must have known about [it] at the time statements issued." *See In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 863, 871 (S.D. Tex. 2016) (mere fact of ongoing investigation does not "establish scienter without facts showing that a specific person knew of any purported wrongdoing"). Plaintiffs cannot, as a matter of law, survive dismissal under an additionally heightened scienter standard where there are no allegations that any individual Defendant knew or should have known about a prediction no one is alleged to have made.

Plaintiffs try to paper over these flaws by pointing to (1) a grab bag of information Defendants are alleged to have known (none of it concerning material risks from lead-clad cables), and (2) generalized allegations that courts almost universally refuse to accept as probative of scienter. None can salvage the Amended Complaint.

### 1. The Amended Complaint's sparse allegations that some individual Defendants knew certain facts do not support any inference of scienter.

The Amended Complaint contains very few allegations specifying what any individual Defendant supposedly knew. Where the Amended Complaint does specify such alleged facts, some were already in the public domain and none give rise to the inference that any Defendant knew or disregarded an obvious risk that AT&T faced a material liability related to its lead-clad cables.

***Alleged signing of lead-paint disclosures in Defendants' home purchases.*** ¶¶ 6, 418-425. If anything, these grasping-at-straws allegations only highlight the Amended Complaint's insufficiency. Generalized knowledge, shared with many millions of Americans, that lead may present dangers in certain circumstances cannot support any inference—much less a strong inference—that Defendants were consciously indifferent to any alleged material risk created by

lead-clad cables.

***Allegations that investors raised concerns about "exports of lead-acid batteries" for recycling abroad.*** ¶¶ 166, 173. Even if the investors' alleged concerns had merit, the obvious fact that lead can be harmful if not handled properly in an entirely different context (recycling lead batteries in Mexico) does not permit an inference that any Defendant knew or should have known that AT&T was somehow mishandling lead-clad cables in the United States—much less that any Defendant knew about, concealed, or recklessly disregarded a reasonably likely risk of material liability related to AT&T's lead-clad cables.

***Allegations that Stankey knew that AT&T used lead-clad cables.*** ¶ 416. Mere knowledge of the existence and use of lead-clad cables (which AT&T disclosed to regulators in public filings, s*ee* ¶¶ 118, 164-165, 175, 182, 196) does not strongly—or even fairly—suggest that Stankey actually knew of and intentionally concealed, or recklessly disregarded, any purported obvious risk of material liability arising from lead-clad cables.

***Allegations that Stankey knew about the public Lake Tahoe litigation in 2021, late in the Class Period.*** ¶ 219. Circumstantial allegations of awareness of a single, cable-related lawsuit over the course of the century in which such cables have been in use, is a far cry from alleged awareness of a "red flag" that AT&T faced material liability. In that suit, AT&T publicly disputed that the cables "were a source of pollution." ¶ 221; *see Owens*, 789 F.3d at 540 (noting the public nature of an alleged "red flag" "negates the inference that defendants acted with scienter"). Given the sheer size of AT&T and its commensurate volume of litigation, any awareness of an isolated lawsuit, ¶ 220, cannot supply a "correspondingly greater" inference that Defendant Stankey (or any other Defendant) believed or ignored an obvious danger that lead-clad cables presented a

material liability for AT&T.[5]

*Allegations that individual Defendants knew of copper wireline retirement activities.*
That some individual Defendants oversaw a cost-reduction initiative encompassing "all aspects" of AT&T's global operations, ¶¶ 426-27, or were aware of the retirement of some copper cables (¶¶ 279, 290, 293, 304-06) does not suggest any Defendant knew anything beyond just that—savings could be (and were) realized from copper reclamation and other activities.  The Amended Complaint's cost-reduction allegations do not provide any particularized facts about any individual Defendant's knowledge of the lead-clad cables, much less facts indicating a Defendant was aware of any material problem posed by those cables.

In sum, the Amended Complaint's allegations about Defendants' knowledge all suffer the same core defect—they improperly assume, instead of alleging with particularity, that it was obvious that AT&T faced a concrete risk of material liability.  But knowledge that lead generally can pose risks, that AT&T used lead-clad cables, or of a few isolated lawsuits "does not necessarily equate to knowledge of" a reasonably likely risk of material liability attributable to those cables. *See Pier 1*, 935 F.3d at 431-34.  These allegations fall far short of the elevated standard for pleading scienter.

      **2.**      **The Amended Complaint's remaining circumstantial allegations do not contribute to any inference of scienter.**

As a fallback, the Amended Complaint contains other circumstantial allegations that courts have uniformly refused to countenance as probative of scienter.  *First*, Plaintiffs ask the Court to infer that Defendants had the requisite knowledge from the sole fact that they held executive

---

[5]    Even if any individual Defendant were to have known the particulars of two related lawsuits filed by landowners in Texas in 2016, those suits are similarly insufficient to plead that Defendants knew or had reason to know of any imminent risk of material liability.  Those lawsuits were also disputed, dismissed before trial (with four out of the seven plaintiffs voluntarily dismissing their claims with no settlement), and not material to AT&T.  ¶¶ 198-207; *see also Cook et al v. AT&T Corp.*, 4:16-cv-00542 (S.D. Tex. Feb. 26, 2020), ECF No. 103.

positions. *See* ¶ 496; *see also, e.g.*, ¶¶ 137, 142, 410, 414-415, 417. But the Fifth Circuit has made clear that a "pleading of scienter may not rest on the inference that defendants must have been aware of the misrepresentation based on their positions within the company." *Abrams*, 292 F.3d at 432.[6] ***Next***, Plaintiffs' reliance (at ¶¶ 456-61) on a "rare" "core operations" exception to this rule is misplaced. AT&T is orders of magnitude larger than other companies as to which courts have refused to apply the exception. *See, e.g.*, *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 603 (N.D. Tex. 2021) (quoting *Neiman*, 854 F.3d at 749-50) (exception did not apply to company with 1,400 to 1,700 employees); *Neiman*, 854 F.3d at 750 (same for company with over 60 employees). And it is not the sort of "one-trick pony" or "one product company" as to which the exception could apply if it were exponentially smaller. *Ala. Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 986 n.4 (5th Cir. 2019) (exception applies where "the company's continued existence depends on, or the company would be completely transformed by, the success of a product or business line"). ***Third***, the Amended Complaint's allegations that some Defendants signed SOX certifications, ¶¶ 462-465, cannot, "without more . . . support a strong scienter inference." *See, e.g.*, *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 509 (S.D. Tex. 2017); *Pier 1*, 935 F.3d at 434 (rejecting SOX certificates as probative of scienter) (quotation marks omitted).

### D. Even reviewed holistically, the allegations do not raise any strong or compelling inference of scienter.

None of the Amended Complaint's allegations, individually or collectively, come close to creating the requisite strong inference of scienter. That is particularly so given the Amended

---

[6]    *See also, e.g.*, *Diodes*, 810 F.3d at 958 (same); *Neiman*, 854 F.3d at 749 (same); *Shaw Grp.*, 537 F.3d at 535 (allegations of defendants' role in a business insufficient to establish scienter); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 251 (5th Cir. 2003) ("general allegation that [a defendant] was a 'hands-on' CEO and therefore must have been aware of the accounts receivable situation" insufficient).

Complaint's other allegations that (1) lead-clad cables have been used for over a century, ¶¶ 115, 117; (2) their use was not hidden from regulators or the public, ¶¶ 118, 164, 175; (3) others at AT&T participated in the industry's ongoing efforts to prudently manage these cables as one issue among countless others affecting its operations, ¶¶ 145-58; and (4) isolated environmental suits or employee issues did not spawn an onslaught of material liability during the Class Period, ¶¶ 133-38, 142-43, 199-200, 214.

If anything, these allegations compel the *non-fraudulent* inference that Defendants did *not* believe AT&T faced material liability from its lead-clad cables during or after the Class Period. After all, the fact that the *Journal* articles—and the Amended Complaint's allegations, ¶¶ 241-242—focus on the telecom industry generally also contradicts any inference of scienter. *See Coates v. Heartland Wireless Commc'ns Inc.*, 100 F. Supp. 2d 417, 426 n.8 (N.D. Tex. 2000) ("uniform conduct in an entire industry would dispel a strong inference to defraud by one member of that industry"). Because any alleged fraudulent inference is not nearly as compelling as a non-fraudulent inference, the Amended Complaint must be dismissed for failing to adequately plead scienter as to any individual Defendant.

## II. The Amended Complaint must be dismissed for failure to plead falsity.

Independently, the Amended Complaint falls woefully short of alleging falsity and must be dismissed for that reason, too. Plaintiffs' theory of falsity is, at bottom, based on omissions, not affirmative misrepresentations—*i.e.*, that various disparate statements Defendants made during the Class Period were misleading not because they contained untrue statements of fact, but because they supposedly failed to include information about AT&T's future, hypothetical lead-clad cable liability. *See, e.g.*, ¶¶ 280, 332, 363, 386. The PSLRA requires Plaintiffs to specify "each statement alleged to have been misleading" and the "reason or reasons why the statement is misleading" without an omitted fact. 15 U.S.C. § 78u-4(b)(1). And because Plaintiffs' allegations

19

are all "made on information and belief," "the complaint shall state with particularity all facts on which that belief is formed." *Id.* To determine whether a statement is adequately alleged to be misleading, a court must examine it from the objective "perspective of a reasonable investor." *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 186 (2015). Crucially, this assessment must focus on the time the alleged statements were made, as "fraud cannot be proved by hindsight." *Southland*, 365 F.3d at 383.

The Amended Complaint does not come close to meeting these requirements. For one thing, Plaintiffs' theory of falsity rests on the omission of an *opinion*, not a material *fact* as required for a securities-fraud claim. For another thing, the Amended Complaint does not specify with requisite particularity that any statement of fact was false or misleading.

### A.    The Amended Complaint's core allegation that Defendants omitted *opinions* fails as a matter of law.

Plaintiffs' securities-fraud claim falters out of the gate because it asserts the Defendants' misstatements were misleading for omitting *opinions*. The Amended Complaint's byzantine allegations boil down to an accusation that Defendants should have warned investors that the lead-clad cables "*would* create costly scrutiny, liability, and reputational harm" in the future. ¶ 280 (emphasis added); *see, e.g.,* ¶¶ 332, 363, 386. This disputed conclusion is not a *fact*—"'a thing done or existing' or 'an actual happening' " that "expresses certainty about a thing"—but rather an *opinion* ("a belief, a view, or a sentiment which the mind forms of persons or things"). *Omnicare*, 575 U.S. at 183 (internal quotations omitted). There is no securities-fraud claim for omitting an opinion. As the Supreme Court recently held, Rule 10b-5(b) "requires identifying affirmative assertions (*i.e.*, 'statements made') before determining if other *facts* are needed to make those statements 'not misleading.' " *Macquarie*, 601 U.S. at 263 (emphasis added) (internal citations omitted); *see also* 17 C.F.R. § 240.10b-5(b) (requiring "a material *fact* necessary in order to make

the statements made . . . not misleading") (emphasis added).

The Amended Complaint's laundry list of hypothetical future "legislative actions, regulatory enforcement, investigative efforts, removal, remediation, litigation, and/or related penalties," ¶¶ 280, 332, 363, 365, represent predictions, which are opinions, not facts that are knowable or objectively verifiable. To the extent that the Amended Complaint speculates that material liability from lead-clad cables will present itself in the future, *see, e.g.*, ¶ 280, nothing in the securities laws required Defendants to disclose such a speculative opinion. 17 C.F.R. § 240.10b-5(b); *Heinze*, 971 F.3d at 482 (the law does not require defendants to disclose "speculative predictions").[7]

### B. The Amended Complaint fails to allege with the requisite particularity why any challenged statement was materially misleading for failing to disclose a material *fact*.

The Amended Complaint also fails to allege with particularity that any of the challenged statements were false or materially misleading for failing to disclose a material *fact*. Plaintiffs' theory of falsity appears to be that "issue[s]" stemming from lead-clad cables were "so severe and so pervasive that *any* statement regarding [AT&T] that does not disclose th[ose] issue[s] is misleading." *See In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 895 (N.D. Tex. 2005). But "[t]here simply is too attenuated a relationship between" hypothetical threats of future liability from lead-clad cables and the "otherwise truthful statements"—and the Amended Complaint makes "no attempt to bridge this analytical gap." *Id.*

Moreover, the Amended Complaint suffers from impermissible "puzzle pleading"—*i.e.*, listing many representations and contending they are all misleading for the same list of reasons.

---

[7]    *See also, e.g.*, *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015) (failure to disclose possible risk of regulatory scrutiny and subsequent invalidation of contract not misleading because "defendants cannot be held liable for failing to disclose what would have been pure speculation"); *In re Eastman Kodak Co. Sec. Litig.*, 629 F. Supp. 3d 169, 187 (W.D.N.Y. 2022) (no duty to disclose "speculative" possibility of loss).

*See Alamosa*, 382 F. Supp. 2d at 856-57.  It is *Plaintiffs'* burden to address "with particularity" "the relationship between the statement and the omission."  *Magruder*, 359 F. Supp. 3d at 464.  So allegations that "repeat the same set of omitted facts for each statement, without explaining why the omission rendered the statement misleading or why Defendants had a duty to disclose the omitted fact" must be rejected.  *Id.*; *see also R2 Invs.*, 401 F.3d at 642 ("plaintiff must plead not only why the statement at issue is incomplete but why that incompleteness makes the statement misleading or untrue").  Plaintiffs failed to carry this heavy burden as to each category of statements the Amended Complaint sets out.

> **1.  The Amended Complaint's statements about AT&T's transition from its legacy copper wireline network to fiber fail to allege falsity.**

The first category of alleged misrepresentations, like the rest, do not mention lead-clad cables at all.  Instead, they concern AT&T's transition from its legacy wireline network to fiber.  The Amended Complaint does not plead falsity with particularity as to any of them.

*Statements opining on potential benefits from the transition.*  Many of the statements about the network transition are inactionable statements of opinion about the projected future cost savings from the planned retirement of infrastructure and other activities.[8]  As the Supreme Court has made clear, affirmative *statements of opinion* (as opposed to nondisclosures, which—as discussed above—are inactionable as a matter of law) may be actionable, but only in limited circumstances where Plaintiffs allege either (1) that Defendants "did not hold the belief [they] professed" or (2) "particular (and material) facts going to the basis for the [stated] opinion—facts about the inquiry the[y] did or did not conduct or the knowledge [they] did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the

---

[8]    *See, e.g.*, ¶¶ 279, 281, 283, 285, 289, 290, 297, 304, 310, 312, 313, 315, 318.

statement fairly and in context." *Omnicare*, 575 U.S. at 184-86 ("a sincere statement of pure opinion is not an untrue statement of material fact, regardless whether an investor can ultimately prove the belief wrong").

Plaintiffs do not allege that Defendants did not believe their opinions about projected future savings resulting from retiring portions of AT&T's wireline network. That means they must allege that Defendants omitted particular and material facts going to the basis of their opinions about future cost savings. Plaintiffs do not do this, either. They do not explain how certain facts Defendants allegedly omitted—such as the existence of lead-clad cables as part of AT&T's legacy wireline network, the fact that AT&T allegedly "abandoned [them] in place," or speculation about the potential liability attributable to them, *see, e.g.*, ¶ 280—made AT&T's cost-savings projections misleading or otherwise "conflict[ed] with what a reasonable investor would take" away from them. *Omnicare*, 575 U.S. at 196-97. This shortcoming is fatal to the Amended Complaint. *See Heinze*, 971 F.3d at 482 (falsity of financial projections not adequately pleaded where plaintiff did not dispute "the accuracy of the assumptions underlying [the] projections with any specificity" and instead claimed they were misleading for not disclosing "predictions about future oil prices").

Defendants' cost-savings projections are not actionable for another independent reason— they are forward-looking statements protected by the PSLRA's safe harbor. *See* 15 U.S.C. § 78u-5(c)(1). They are *per se* inactionable under the safe harbor's first prong, because they were both (1) "identified as forward-looking" and (2) "accompanied by meaningful cautionary statements" tailored to the telecommunications industry. *See Okla. Firefighters Pension and Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 210 (5th Cir. 2023); *see also Exxon I*, 2022 WL 4677621, at *10.[9]

---

[9]     Ex. B at App. 8 [2021 Form 10-K] ("[i]ncidents leading to damage to our reputation, and any resulting lawsuits, claims or other legal proceedings"); Ex. A at App. 3-4 [2020 Form 10-K] ("[t]he outcome of pending, threatened, or potential litigation"); Ex. D at App. 18 [2023 Q1 Form 10-Q] ("continued development and delivery of attractive and

The projections are also independently protected under the safe harbor's second prong, because Plaintiffs have not adequately alleged that Defendants made any "with actual knowledge . . . that [it] was false or misleading." *Six Flags*, 58 F.4th at 210, 214 (the "actual knowledge" standard for "a forward-looking statement" is even higher than the "severe recklessness" standard for scienter).

**Statements updating the market on how much of the legacy network had been retired.**[10] The Amended Complaint does not explain how statements reporting on the progress of the transition, or referring to the undisputed fact that some copper was "reclaim[ed]" or "remov[ed]," ¶ 305, were made false or misleading because they were not accompanied by unspecified facts about AT&T's lead-clad cables. Defendants' discussion reporting the square miles of cables that had been "decommissioned," ¶¶ 293, 304, never suggested that AT&T was removing all cables or that it would not leave some cables in place. The Amended Complaint likewise does not contend the facts Defendants reported were incorrect or miscalculated and instead asserts Defendants failed to disclose a speculative opinion (not allegedly held by anyone at AT&T) that AT&T was exposed to "costly scrutiny, liability, and reputational harm." ¶¶ 294, 307. This is not an actionable theory of falsity as to these statements. *See supra* § II.A.; *see also Exxon I*, 2022 WL 4677621, at *17 (defendants have "no duty to cast [the] business in a pejorative . . . light").

**Statements reporting cost savings from the transition.** Similarly, the Amended Complaint does not allege with any particularity that statements reporting costs saved during the transition were false or misleading.[11] For example, Plaintiffs do not dispute that AT&T had achieved "$5

---

profitable wireless, and broadband offerings and devices"); Ex. E at App. 25 [12/12/19 Transcript]; Ex. F at App. 28 [4/22/20 Q1 Results Call]; Ex. G at App. 31 [5/24/21 Transcript]; Ex. H at App. 34 [11/17/21 Transcript]; Ex. I at App. 37 [9/12/22 Transcript]; Ex. J at App. 40 [3/11/22 Transcript]; Ex. K at App. 43 [1/4/2023 Transcript]; Ex. L at App. 46 [3/8/23 Transcript]; Ex. M at App. 49 [5/22/23 Transcript].

10    *See* ¶¶ 283, 289-293, 299, 301-302, 304, 306, 308, 312-313, 318, 323-324, 326-327.

11    *See* ¶¶ 287, 293, 295, 297, 299, 304-306, 317, 320-321, 323-324, 326-327.

billion of the $6 billion cost takeout target" by the first quarter of 2023, or that "1/4 [of the costs] came out of our network."  ¶¶ 304, 321.  Instead, the Amended Complaint conclusorily reiterates that these statements were allegedly misleading because they were not accompanied by a prediction of potential lead-clad-cable liability.  *See, e.g.*, ¶ 307.

But that begs the question—it does not explain *why* the statements were misleading without the omitted predictions and facts.  *See Linenweber v. Sw. Airlines Co.*, 693 F. Supp. 3d 661, 677-78 (N.D. Tex. 2023) (where plaintiffs did not dispute that the airline "correctly described its costs," cost statements describing costs were not misleading even though they omitted certain things because plaintiffs did not allege those things were "significant enough that investors expect[ed] them to be summarized"); *see also Markman v. Whole Foods Mkt., Inc.*, 2016 WL 10567194, at *7-8 (W.D. Tex. Aug. 19, 2016) (statements regarding Whole Foods' efforts to reduce prices were not misleading where defendants omitted it was "overcharg[ing] customers based on inaccurate food-weight labels" because "the complaint [was] devoid of any allegation that Whole Foods was *not* actually working to reduce its prices").

### 2.    The Amended Complaint's statements about AT&T's environmental practices fail to allege falsity.

None of the generalized statements summarizing AT&T's environmental policies, practices, and goals is sufficiently alleged to be misleading.  There are no specific allegations explaining why the allegedly omitted facts were both material and necessary to make the challenged statements not misleading, and many of the challenged statements are immaterial as a matter of law.

*Statements on generalized commitments.*  The Amended Complaint challenges statements about AT&T's commitments and efforts to reduce and responsibly manage waste or otherwise

better steward the environment.[12]  These statements are "immaterial as a matter of law." *Magruder*, 359 F. Supp. 3d at 461.  They are precisely the kind of "generalized positive goals" that courts hold to be non-actionable.  *Plains*, 777 F. App'x at 731.[13]  AT&T takes its environmental commitments very seriously.  But even where generalized positive statements concern the essence of a company's brand or corporate identity, "that does not change" the fact that they are not actionable as a matter of law.  *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 902 (5th Cir. 2018).

***Generalized statements about AT&T's environmental initiatives.***  The Amended Complaint also challenges several high-level statements about AT&T's environmental initiatives, including that AT&T "incorporat[es] environmentally sustainable practices into [its] daily operations" and has groups dedicated to "work[ing] with [its] contracted . . . vendors to recover and recycle network infrastructure assets" such as "copper wire, fiber-optic cable and central office equipment."  ¶¶ 339-40, 354; *see also* ¶¶ 336, 342, 346, 359.  But Plaintiffs do not allege these statements are false.  *See Sw. Airlines Co.*, 693 F. Supp. 3d at 678 (no falsity based on omission where there was no dispute over truthfulness of statements regarding Southwest's "participation in a . . . program" or having employees with certain responsibilities over job hazards); *see also Markman*, 2016 WL 10567194, at *7-8 (no duty to disclose facts that do not affect truthfulness of statements).

While Plaintiffs assert that these statements were misleading because AT&T allegedly

---

[12]    *See* ¶¶ 329, 331, 333, 335-336, 341-343, 345, 347, 349, 351, 353, 357-358, 361, 364, 368, 372, 376, 380.  All statements but those in ¶ 333 and ¶ 353 are also non-actionable for the separate reason that they are unattributed statements from "Issue Briefs" found on AT&T's website.  *See supra* § I.A. at 9.

[13]    *See also, e.g., Jacobowitz*, 596 F. Supp. 3d at 683 (N.D. Tex. 2022) (statements that company aimed to comply with "all applicable laws and regulations" and listing "core values" including "performance, innovation integrity and transparency" were non-actionable); *Anadarko*, 2018 WL 3032573, at *5, *12 (same for statements that company was "committed to preventing and minimizing the impacts of [oil] spills" and "believe[d] that it is in material compliance with existing environmental and occupational health and safety regulations").

"abandoned in place" a small fraction of its copper cables, *see, e.g.*, ¶ 348, the Amended Complaint acknowledges that leaving cable in place is a proper method of retirement, ¶ 194, and none of the challenged statements themselves "suggest, much less affirmatively assert, that specific steps under [these] particular programs" applied to "every part or any particular part" of AT&T's "huge [wireline] network." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 621 (S.D. Tex. 2018) ("*Plains II*"). Plaintiffs do not even attempt to carry their burden of alleging *how* the purported omission of any material fact made the challenged statements misleading.

   ***Statements about copper reclamation, cable removal, and hazardous waste disposal.*** The same is true of summary statements of other general practices at AT&T, including that AT&T (1) "reclaim[s] . . . network resources such as copper telecommunications wire," (2) "remove[s] aerial cables and process[es] underground cables based on municipality-specific rules," and (3) properly disposes of "hazardous waste." ¶¶ 331, 350-51; *see also* ¶¶ 305, 337, 343, 347, 359. The Amended Complaint is void of any allegation that AT&T did not in fact reclaim copper wire, or remove cables pursuant to local guidelines, or dispose of hazardous waste, as these statements described, *see* ¶¶ 321, 330-31, 350, 359, 428. Nor does (or could) the Amended Complaint explain with the requisite particularity how these statements were misleading without other facts about lead-clad cables. ¶ 332. Plaintiffs fail to allege with particularity not only "why" any of these statements were "incomplete" but also "why that incompleteness makes the statement misleading or untrue." *R2 Invs.*, 401 F.3d at 642.

   3.   **The Amended Complaint's statements about AT&T's commitment to the health and safety of employees fail to allege falsity.**

   The challenged statements about employee health and safety fail for many of the same reasons discussed above. All are non-actionable because they are found in the unsigned AT&T "Issue Briefs." *See supra* § I.A. Moreover, the Amended Complaint lacks specific allegations

explaining *why* the omission of facts about lead-clad cables would render those statements materially misleading. In addition to non-actionable expressions of corporate commitment, ¶¶ 361, 364, 368, 372, 376, 380, Plaintiffs also challenge general statements (1) regarding AT&T's training policies as giving "the false impression that AT&T provided training to workers" to properly handle "hazardous materials" and (2) that "AT&T regularly reviewed performance by these workers to enhance its safety protocols and ensure that the practices complied with applicable occupational safety standards." ¶ 363; *see also* ¶¶ 362, 365-366, 369-370, 373-374, 377-378, 381-382. But Plaintiffs have not pleaded with particularity why any of these statements is false.

If anything, the Amended Complaint concedes that AT&T trained its workers and that it monitored Environment, Health, and Safety activities. Plaintiffs' confidential witnesses, for example, stated that AT&T "is pretty adamant about safety briefings," that it has "lead safety protocols," and that it provides "yearly training for technicians" that involves at least "twenty courses." *See* ¶¶ 135-138. Moreover, a "Manager" in AT&T's Environment, Health, and Safety group "confirmed that AT&T executives [are] *sent* [*Environment, Health, and Safety*] *reports every week or month*" that contain relevant "safety data metrics." *See* ¶ 137 (emphasis added); *see also* ¶ 182 (AT&T conducted industrial hygiene surveys).

The thrust of Plaintiffs' allegations, then, is a "dispute [about] the effectiveness" of AT&T's policies or whether they were "properly implemented." *See, e.g.*, *Plains II*, 307 F. Supp. 3d at 629-30; *accord Bondali v. YUM! Brands, Inc.*, 620 F. App'x 483, 489-90 (6th Cir. 2015) ("Yum *did* take the actions it outlined in these statements . . . even if it did not do so as efficiently as the plaintiffs would have preferred."). But Plaintiffs' quibbling with the implementation of AT&T's policies is not a particularized allegation that AT&T's general statements concerning Environmental, Health & Safety matters were false or misleading. *Plains II*, 307 F. Supp. 3d at

629-30.

### 4.    The Amended Complaint's statements about AT&T's risk disclosures fail to allege falsity.

The last category of challenged statements are *warnings* AT&T made to investors, including that:

- its business changes "may not occur as scheduled or at the cost expected," ¶ 384;

- it "may fail to meet our financial goals and achieve anticipated benefits" from "transformation initiatives," ¶ 387;

- "[n]egative public opinion could result from [its] actual or alleged conduct," ¶ 390; and that

- it "may incur significant expenses defending . . . suits or government charges and may be required to pay amounts . . . that could materially adversely affect our operations or financial results." ¶ 393.

Essentially, Plaintiffs complain that AT&T warned investors about the very risk that Plaintiffs blame Defendants for not warning investors about.

Rather than provide any particularized reason why these specific warnings were materially misleading on their own, the Amended Complaint merely repeats the same boilerplate reasons it applies to all four distinct categories of statements. *See* ¶ 386. Those alleged reasons do not rely on any assessment of a material liability that anyone believed was reasonably likely during the Class Period.

Plaintiffs do cite investigations and litigation that were, or may be, instituted *after* the Class Period. *Id.*; *see also* ¶ 280. But these allegations cannot serve as a basis for alleging falsity. The Amended Complaint provides no facts indicating that any material litigation was pending or even imminent. And courts repeatedly have recognized that, "[a]s a general matter, federal securities laws do not require corporations to disclose the initiation of a government investigation." *Match*

*Grp.*, 529 F. Supp. 3d at 582, 594.[14]  If there is generally no duty to disclose the initiation of an investigation, there cannot be any duty to disclose the possibility of an investigation *before* it is initiated.

As with the rest of the alleged misrepresentations, the Amended Complaint does not adequately plead falsity as to the warnings AT&T *did* give its investors, because it fails to allege with particularity why the warnings were misleading absent a disclosure of fact—which Plaintiffs fail to allege is a material fact—regarding AT&T's lead-clad cables.

## III.    The Amended Complaint's scheme-liability claims must be dismissed for multiple reasons.

The Amended Complaint references a "scheme liability" claim under Rules 10b-5(a) and (c) only in passing while discussing its Rule 10b-5(b) misstatement claim.  ¶ 486.  "If Plaintiffs' scheme liability claim is distinct from their misstatement claim," however, "Federal Rule of Civil Procedure 10(b) required them to plead it separately."  *Sw. Airlines Co.*, 693 F. Supp. 3d at 687.  Moreover, where, as here, a scheme-liability claim is based solely on the same alleged misstatements as a Rule 10b-5(b) misstatement claim, and a plaintiff "fail[s] to meet the pleading standard for [that] misstatement claim," the scheme-liability claim must be dismissed too.  *Id.* at 688.

The Amended Complaint contains no allegations that would otherwise support any scheme-liability claim, which requires allegations that Defendants (1) committed a deceptive or manipulative act (2) with scienter (3) that affected the market for securities and (4) that caused plaintiffs' injuries.  *Exxon II*, 2023 WL 5489054, at *3.  Plaintiffs allege no deceptive conduct

---

[14]    *See also Markman*, 2016 WL 10567194, at *8 (statements regarding Whole Foods' efforts to reduce its prices not rendered misleading by failure to disclose that it was under investigation for overcharging customers); *Peak v. Zion Oil & Gas, Inc.*, 2020 WL 1047894, at *4 (N.D. Tex. Mar. 3, 2020) (defendant had no "duty to state it was or might be under investigation" where the investigation "had not [even] resulted in a subpoena").

beyond the disputed statements and omissions themselves.  So any scheme-liability claim thus must fail for the same reasons as the misstatement claims—the Amended Complaint fails to adequately allege that any Defendant acted with scienter or made any material misstatement or omission.

## IV.    Claims based on alleged misstatements made before July 28, 2018 must be dismissed under the five-year statute of repose.

Section 10(b) claims are subject to a strict 5-year period of repose.  28 U.S.C. § 1658(b); *see Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010) (explaining that this statute "give[s] defendants total repose after five years" and "is not subject to equitable tolling").  Aware of this, Plaintiffs begin their Class Period on July 28, 2018, a date that bears no connection to their claims other than that it is exactly five years before this suit was filed.  *See* ECF No. 1.  But the Amended Complaint's catalogue of alleged "Materially False and Misleading Statements" (¶¶ 278-395) improperly includes statements made before July 28, 2018, which are barred by repose.

The Amended Complaint concedes that AT&T's 2017 Annual Report and 2017 Form 10-K were each published in February 2018.  ¶¶ 384, 393.  And while the Amended Complaint clumsily describes one Issue Brief as having been published "[b]y no later than July 29, 2018," ¶ 361, a review of that document shows it was indisputably published on June 29, 2018, which falls outside the repose window.  Ex. N at App. 52.  All claims based on alleged misstatements made before July 28, 2018 must be dismissed.  *See In re BP p.l.c Sec. Litig.*, 341 F. Supp. 3d 698, 703-06 (S.D. Tex. Sept. 18, 2018) (agreeing that "the Exchange Act's statute of repose bars Plaintiffs' Exchange Act claims based on alleged misstatements made more than five years before the filing of the actions"); *Wolfe v. Bellos*, 2012 WL 652090, at *6 (N.D. Tex. Feb. 28, 2012) (holding that "claims based on false statements made on or before September 8, 2004 are all barred under the five-year statute of repose").

**V.    The Amended Complaint does not attempt to allege loss causation for any bond investment.**

Plaintiffs' briefing in support of their request to be appointed lead Plaintiff notes that "[t]he AT&T bonds that the NYC Funds purchased are absolutely included in the Class definition for th[e Original] Complaint," ECF No. 37 at 9, but the Amended Complaint includes no allegation whatsoever about those bonds.

Plaintiffs were required to "allege that when the 'relevant truth' about the fraud began to leak out or otherwise make its way into the marketplace, it caused the price of the [bonds] to depreciate and, thereby, proximately caused the plaintiff's economic harm." *Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014); *see Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (shareholder claim "legally insufficient" because of "failure to claim that [] share price fell significantly after the truth became known" or otherwise "provide[] defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation").  But there is no allegation that the price of any of the bonds dropped.  Assuming Plaintiffs still intend to plead a Section 10(b) claim for the bonds, the Amended Complaint fails to plead the essential element of loss causation as to the bond purchasers, and their claims should be dismissed.

**VI.    The Amended Complaint does not plead any claim for control-person liability under Section 20(a).**

Because the Amended Complaint fails to plead any primary-liability claim under Section 10(b), its claims for secondary liability under Section 20(a) must also be dismissed.  *Pier 1*, 935 F.3d at 429 ("If the § 10(b) claim is inadequate, then so is the § 20(a) claim.").

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request the Court to dismiss all of Plaintiffs' claims with prejudice.

32

Dated:  September 6, 2024   Respectfully submitted,


**BAKER BOTTS L.L.P.**


*/s/ Jessica Bateman Pulliam*
Jessica Bateman Pulliam
John B. Lawrence
Kirstie Wallace
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone:  (214) 953-6500
Facsimile:  (214) 661-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
kirstie.wallace@bakerbotts.com

James J. Beha II
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
jim.beha@bakerbotts.com

*Counsel for Defendants*