**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE AT&T INC. SECURITIES LITIGATION | Case No. 3:24-cv-01196-N |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

Introduction .................................................................................................................. 1

Argument .................................................................................................................... 1

    I.    Plaintiffs' Opposition demonstrates they have not pleaded and cannot plead particularized facts raising a strong inference of scienter. ...................................... 1

        A.    Plaintiffs' theory of motive rests on allegations Plaintiffs concede are absent. ............................................................................................ 2

        B.    Plaintiffs' sparse allegations that some individual Defendants allegedly knew certain facts do not support *any* inference of scienter. ................................................................................................ 2

        C.    Plaintiffs still cannot plead scienter for any unattributed statement. .......... 8

        D.    Plaintiffs' other circumstantial scienter allegations do not compensate for the Amended Complaint's deficiencies. ........................... 9

    II.    Plaintiffs' Opposition shows that the Amended Complaint fails to plead any false or misleading statement. ................................................................................. 10

    III.    Plaintiffs do not dispute the scheme-liability claims must be dismissed. ............. 14

    IV.    Plaintiffs do not dispute that claims based on statements made before July 28, 2018 must be dismissed under the five-year statute of repose ........................ 14

    V.    Plaintiffs fail to identify any allegation of loss causation as to the bonds. ........... 14

    VI.    Dismissal with prejudice is appropriate. ............................................................... 15

## TABLE OF AUTHORITIES

**CASES**

*Alas. Elec. Pension Fund v. Flotek Indus., Inc.*,
915 F.3d 975 (5th Cir. 2019) ........................................................................................9

*Berger v. Beletic*,
248 F. Supp. 2d 597 (N.D. Tex. 2003) ..........................................................................4

*Callinan v. Lexicon Pharms., Inc.*,
479 F. Supp. 3d 379 (S.D. Tex. 2020) ........................................................................15

*Doshi v. Gen. Cable Corp.*,
386 F. Supp. 3d 815 (E.D. Ky. 2019) ...........................................................................8

*Edgar v. Anadarko Petroleum Corp.*,
2019 WL 1167786 (S.D. Tex. Mar. 13, 2019)..............................................................7

*Employees' Ret. Sys. v. Whole Foods Mkt., Inc.*,
905 F.3d 892 (5th Cir. 2018) ......................................................................................13

*Heinze v. Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020) ......................................................................................10

*In re Anadarko Petroleum Corp. Class Action Litig.*,
957 F. Supp. 2d 806 (S.D. Tex. 2013) ........................................................................13

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018)...........................................................................1

*In re BP p.l.c. Sec. Litig.*,
922 F. Supp. 2d 600 (S.D. Tex. 2013) ..........................................................................8

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022) .......................................................................11

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) ..........................................................................3

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
424 F. Supp. 2d 880 (N.D. Tex. 2005) ..........................................................................6

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
245 F. Supp. 3d 870 (S.D. Tex. 2017) ..........................................................................9

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
307 F. Supp. 3d 583 (S.D. Tex. 2018) ...............................................................6, 8, 11, 13

ii

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ..........................................................................................6

*Jacobowitz v. Range Res. Corp.*,
    596 F. Supp. 3d 659 (N.D. Tex. 2022) ...........................................................................13

*Linenweber v. Sw. Airlines Co.*,
    693 F. Supp. 3d 661 (N.D. Tex. 2023) ...........................................................................13

*Lipow v. Net1 UEPS Techs., Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015)............................................................................11

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ........................................................................................12

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024).......................................................................................................10

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
    876 F.3d 541 (4th Cir. 2017) ..........................................................................................6

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ..........................................................................................8

*Markman v. Whole Foods Mkt., Inc.*,
    2016 WL 10567194 (W.D. Tex. Aug. 19, 2016)..............................................................3

*Mayo v. Halliburton Co.*,
    2010 WL 4366908 (S.D. Tex. Oct. 26, 2010)................................................................14

*Morris v. City of Fort Worth*,
    2020 WL 870228 (N.D. Tex. Feb. 21, 2020)..................................................................14

*Naglich v. Applied Optoelectronics*,
    436 F. Supp. 3d 954 (S.D. Tex. 2020) ...........................................................................12

*Nathenson v. Zonagen Inc.*,
    267 F.3d 400 (5th Cir. 2001) ..........................................................................................2

*Neiman v. Bulmahn*,
    854 F.3d 741 (5th Cir. 2017) ..........................................................................................4

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
    58 F.4th 195 (5th Cir. 2023) .....................................................................................6, 13

*Ong ex rel. Ong v. Sears, Roebuck & Co.*,
    459 F. Supp. 2d 729 (N.D. Ill. 2006) .............................................................................15

iii

*Ramirez v. Exxon Mobil Corp.*,
     334 F. Supp. 3d 832 (N.D. Tex. 2018) ....................................................................10

*Rosenzweig v. Azurix Corp.*,
     332 F.3d 854 (5th Cir. 2003) ...............................................................................3, 6

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
     365 F.3d 353 (5th Cir. 2004) ...................................................................................9

*Spitzberg v. Houston Am. Energy Corp.*,
     758 F.3d 676 (5th Cir. 2014) .................................................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
     551 U.S. 308 (2007)............................................................................................1, 8

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
     325 F. Supp. 3d 728 (N.D. Tex. 2018) ....................................................................2

*Yoshikawa v. Exxon Mobil Corp.*,
     2022 WL 4677621 (N.D. Tex. Sept. 29, 2022)................................................4, 8, 9

*Zaluski v. United Am. Healthcare Corp.*,
     527 F.3d 564 (6th Cir. 2008) ...........................................................................11, 12

**STATUTES**

15 U.S.C. § 78u-4(b)(2) .............................................................................................4

iv

## INTRODUCTION

Plaintiffs concede that they fail to allege (because they cannot) that any individual Defendant believed (or even believes today) that lead-clad cables presented AT&T with a risk of material liability.  Opp. at 20-21.  Consequently, Plaintiffs are left to disavow that core allegation by attempting to patch together a securities-fraud claim by alleging that Defendants should have disclosed (1) the number of cables remaining that were lead-clad and (2) the "well-known" fact that lead may be harmful in certain circumstances, *despite* no individual Defendant believing these facts would cause AT&T to incur any material losses.

However their Amended Complaint is construed, Plaintiffs have failed to state a securities-fraud claim, and Plaintiffs' Amended Complaint should be dismissed with prejudice because Plaintiffs' Opposition confirms that further amendment would be futile.

## ARGUMENT

## I.    Plaintiffs' Opposition demonstrates they have not pleaded and cannot plead particularized facts raising a strong inference of scienter.

Plaintiffs' Opposition confirms that they have not pleaded a strong inference of scienter and that amendment would be futile.  Plaintiffs posit that they met their burden by alleging merely that Defendants knew lead-clad cables existed, and that lead can be harmful if mishandled in certain circumstances.  *See id.* at 21-24.  But assuming those allegations are true, they are not enough to sustain Plaintiffs' claims.  This "is not an environmental regulatory proceeding or an environmental tort suit[;] [r]ather, it is a federal securities class action," so Plaintiffs must plead a strong inference of scienter.  *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 363 (S.D.N.Y. 2018).  Scienter is "a mental state embracing *intent* to *deceive, manipulate, or defraud*." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (emphasis added).  In confirming they do not plead facts raising a strong inference that any individual Defendant

1

believed lead-clad cables created any material liability, Plaintiffs have failed to plead "the necessary strong inference of scienter" the PSLRA requires. *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 411 (5th Cir. 2001) (strong inference must "arise from '*facts*' stated in the complaint 'with *particularity*'") (emphasis added).

### A.    Plaintiffs' theory of motive rests on allegations Plaintiffs concede are absent.

Plaintiffs' suggestion that Defendants were "motivated to avoid an unusually large liability," Opp. at 27 & n.7, falls flat given their concession that they do not plead that any Defendant "believed AT&T would incur material losses from lead cables in the future." *Id.* at 20. It makes no sense to say Defendants had a motive to lie to hide an alleged liability they did not believe existed.  That alone precludes "a finding of motive based on a desire to avoid negative consequences." *See Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 742 (N.D. Tex. 2018) (similar alleged motive inadequate absent "particularized allegations" that "Defendants were aware of, but chose to hide, facts fundamentally destructive to the value of [the company]"), *aff'd*, 935 F.3d 424 (5th Cir. 2019).

Plaintiffs' conclusory allegation that individual Defendants were motivated by their compensation is similarly defective. *See* Opp. at 28.  There can be no inference that Defendants were "motivated to hide" any "substantial exposure to liabilities from lead cables," or to conceal a "massive nationwide environmental liability," absent any allegation they believed such material liability existed. *See* ¶¶ 441-442.

Because Plaintiffs' Opposition confirms that they have not pleaded any cognizable motive, the inference of scienter must be "correspondingly greater." *See* Mot. at 12.

### B.    Plaintiffs' sparse allegations that some individual Defendants allegedly knew certain facts do not support *any* inference of scienter.

Plaintiffs attempt to distract from the Amended Complaint's flawed theory of scienter by

2

focusing on certain Defendants' purported failure to disclose "existing facts." Opp. at 20-21. But the limited "existing facts" any individual Defendant allegedly knew but failed to disclose do not come close to showing an "extreme departure" that presents an "obvious" danger of misleading investors as is required to allege intentional fraud or severe recklessness. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003). As Plaintiffs agree, Opp. at 25, the scienter inquiry focuses on what the individual Defendants knew—not the "collective knowledge" of all AT&T employees. Acknowledging that pleading knowledge merely of some conceivable risk would not meet their burden, Plaintiffs insist they allege that "Defendants knew AT&T faced a *more than theoretical risk* that it could incur considerable expenses defending or correcting its actions" in connection with the lead-clad cables, including "facts [that] give rise to an *obvious risk of adverse action* and, hence, losses on a grand scale," *id.* at 24 (emphasis added), but these bare conclusions are unsupported and cannot supply the strong inference of scienter the PSLRA requires.

Crediting these bare assertions—supported only by allegations of after-the-fact investigations—would upend foundational principles of the securities laws. It is well-settled that mere allegations of investigations are not, as a matter of law, sufficient to allege scienter. *See Markman v. Whole Foods Mkt., Inc.*, 2016 WL 10567194, at \*11 (W.D. Tex. Aug. 19, 2016) (finding "no specific factual allegations from which to draw an inference that any particular defendant knew of or recklessly disregarded [alleged] falsity" of statements, despite allegations of *ongoing* investigations by multiple agencies). Plaintiffs ignore that the existence of government investigations does not mean wrongdoing "must have occurred," or that Defendants "must have known about [it] at the time statements issued"—and that is doubly true for investigations that did not begin until *after* the Class Period. *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 863, 871 (S.D. Tex. 2016) ("that an SEC investigation is ongoing [does not] establish scienter

3

without facts showing that a specific person knew of any purported wrongdoing").

Many of the supposed allegations the Opposition claims support individual Defendants' knowledge of omitted facts do not appear anywhere in the Amended Complaint.  For example, Plaintiffs *assert* in their brief that the individual Defendants "received regular reports documenting the lack of appropriate training," Opp. at 23, but that is not *alleged* in the Amended Complaint. Instead, a single sentence of the Amended Complaint alleges that unspecified "AT&T executives" received unspecified "EHS reports" containing unspecified "safety data metrics."  ¶ 137.  That is a far cry from the requisite "corroborating details" of the reports' contents—and wholly fails to allege that any individual Defendant even received the alleged reports, much less reviewed them. *See Neiman v. Bulmahn*, 854 F.3d 741, 748-49 (5th Cir. 2017); *Yoshikawa v. Exxon Mobil Corp.*, 2022 WL 4677621, at *6 (N.D. Tex. Sept. 29, 2022) ("*Exxon I*").

Looking past Plaintiffs' rhetoric to the Amended Complaint's actual allegations reveals only four alleged facts Plaintiffs contend any individual Defendant knew—none of which is sufficient to plausibly plead the strong inference of scienter required under the PSLRA.

*1.        Alleged Knowledge that AT&T's Legacy Copper Wireline Included Lead-Clad Cables.*  That any individual Defendant knew that AT&T owned or used lead-clad cables (a matter of public knowledge, ¶¶ 164, 175, 182, 416) does nothing to establish scienter.  *See Exxon I*, 2022 WL 4677621, at *4 ("legal" business practices supported by "legitimate reasons" not indicative of scienter absent additional allegations of wrongdoing).  Given that Defendants did not have a duty to disclose the mere existence of these cables (and Plaintiffs do not even allege such a duty existed), Plaintiffs cannot meet their burden to "state with particularity facts giving rise to a strong inference that [any Defendant] *acted with the required state of mind*."  15 U.S.C. § 78u-4(b)(2) (emphasis added).  The "failure to disclose information one is not obligated to disclose does not suggest bad

intent." *Berger v. Beletic*, 248 F. Supp. 2d 597, 606 (N.D. Tex. 2003).

      **2.**      ***Alleged Knowledge that Lead can be Harmful.***  Even assuming each individual Defendant also knew generally that lead can be harmful in certain circumstances, Plaintiffs still have not alleged facts to support a strong inference that any individual made any of the challenged statements with the intent to deceive or severe recklessness.  Opp. at 22.

      For example, Plaintiffs do not explain how any individual Defendant's alleged knowledge that lead generally could be harmful to humans in certain circumstances (*e.g.*, if "absorbed into the body" "through inhalation or inadvertent ingestion," ¶ 82) supports or is even relevant to the use of lead in telecom cables high above the ground on telephone poles or buried underground or within conduit.  Plaintiffs simply fail to identify an "obvious risk of adverse action and, hence, losses on a grand scale" necessitating disclosure of additional facts to make the challenged statements not misleading.  *See* Opp. at 24; ¶ 262.

      Plaintiffs grasp at straws pointing to irrelevant allegations regarding (1) routine and required residential lead paint acknowledgments seen by millions of American home purchasers, and (2) *other* companies (there is no allegation AT&T was among them) sending vehicle and industrial batteries to Mexico for recycling around 2012.  Opp. at 22; ¶¶ 166-172, 418-425.  Plaintiffs wholly fail to connect the dots.  They don't even try to show, because they can't, that mere knowledge of the potential danger from lead in paint in homes or from battery recycling in Mexico in the early 2010s caused any individual to believe that AT&T's lead-clad telecom cables somehow created a future alleged material liability.  Knowledge that lead-clad cables *exist* cannot support a strong inference of scienter—and certainly does not support an inference that Defendants knowingly or recklessly failed to disclose a risk of material liability.  *See* Mot. at 13-14.

      **3.**      ***Stankey's, McElfresh's, and Desroches's Alleged Knowledge that Some Lead-***

5

***Clad Cable was Present.*** Plaintiffs allege these individual Defendants oversaw or spoke about a company-wide cost-reduction initiative that included copper cable reclamation and recycling. From there, Plaintiffs leap to the conclusion that these three individuals were "undoubtedly aware that AT&T left lead cables in place rather than recycle them to save money."[1] Opp. at 22, 24. Fifth Circuit "case law clearly forecloses this kind of 'positional scienter,'" as "scienter may not rest on the inference that defendants must have been aware" of an alleged fact "based on their positions within the company." *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 890 (N.D. Tex. 2005); *see also In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 632 (S.D. Tex. 2018) ("*Plains II*"), *aff'd*, 777 F. App'x 726 (5th Cir. 2019).

Most important, that allegation, even if taken as true, is irrelevant. Plaintiffs have not alleged that any of these three individuals learned through this initiative (or otherwise were aware) that any lead-clad cable presented a risk of material liability that could cause them to believe any challenged statement was materially misleading.

For example, the allegation that lead-clad cables may not have been included in certain copper reclamation activities, even if known to any individual Defendant, would not make any statement about AT&T's enterprise-wide copper reclamation efforts "obvious[ly]" misleading. *Rosenzweig*, 332 F.3d at 866. That is particularly true given that Plaintiffs do not allege that AT&T claimed it was including all copper cables in the program, and only a small share of copper cables are lead-clad. ¶ 262; *cf. Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) (refusing to "fuse[] an inference that [defendant] knew enough to realize that his

---

[1] That CW5, a local technician, claims to have been told by "area managers" that "the decision to retire lead cables in place was a 'CEO choice'" and a "cost saving" measure, ¶ 142, does not "connect" CW5's testimony to Defendants "in a persuasive way." *Compare* Opp. at 22 & n.6, *with Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 216 (5th Cir. 2023) (CW personally prepared reports for presentation to the board of directors and CEO). CW5's statements also "lack specificity about what [Defendants] may have known," *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008), and do not reflect the "convincing detail" necessary to credit them. *Six Flags*, 58 F.4th at 208.

characterization was technically incorrect with an inference that he intended it to deceive").

The Amended Complaint is devoid of any allegation that any individual Defendant knew about an alleged risk that lead-clad copper cables subjected AT&T to material additional costs that would make the Company's discussion of its savings from the copper transition misleading.  Nor do Plaintiffs allege that the existence of lead-clad cables materially conflicted with the Company's broad discussions of its efforts concerning environmental stewardship, waste handling regulations, and employee health and safety.  Nor that any individual Defendant had special expertise in the regulatory rules and guidance applicable to lead such that it could fairly be inferred that any individual Defendant would have identified any alleged tension between their statements and those regulatory rules and guidance.  *See Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, at *13-17 (S.D. Tex. Mar. 13, 2019) (rejecting "attenuated chain of inferences" that defendants must have learned about unsafe practices and understood they were illegal, so as to show they recklessly disregarded an "obvious" danger of misleading investors with their statements), *aff'd*, 788 F. App'x 268 (5th Cir. 2019).  Instead, as Plaintiffs concede, the individual Defendants were not aware of any alleged material liability posed by the lead-clad cables.  *See* Opp. at 20.

     *4.*      ***Stankey's Alleged Awareness of the Existence of a Single Lawsuit.***  Plaintiffs allege that "it is reasonable to infer" that a non-party environmental group's "concerns [related to the Lake Tahoe Action] were communicated to" Stankey "by no later than April 2021"—nearly three years into the Class Period.  ¶ 219; Opp. at 23.  Plaintiffs do not say what in particular Stankey is alleged to have learned.  Even if true that Stankey was made aware of this non-party's unspecified "concerns" regarding cables at Lake Tahoe, such knowledge would not support that Stankey believed AT&T faced a material liability from lead-clad cables requiring disclosure, or otherwise acted with the requisite strong inference of scienter, in making any of the subsequent

alleged misrepresentations. *See Exxon I*, 2022 WL 4677621, at \*5 (refusing to infer from vague allegations of site visits and communications with executives that defendant was "necessarily advised" of "all the issues Plaintiffs allege," absent facts "detailing" those interactions). Regardless, "[b]eing made aware of a very specific problem," "yet assuring investors as to [issues affecting the company] overall," does not provide "the 'multiple red flags' that evidence" severe recklessness. *Doshi v. Gen. Cable Corp.*, 386 F. Supp. 3d 815, 835 n.8 (E.D. Ky. 2019).

Whether viewed individually or collectively, Plaintiffs' allegations do not support an inference of scienter that is nearly as compelling as the non-fraudulent inference: that Defendants had no reason to believe that the lead-clad cables presented anything beyond an immaterial risk that AT&T was managing in the ordinary course. *See Tellabs*, 551 U.S. at 324.

### C.     Plaintiffs still cannot plead scienter for any unattributed statement.

Plaintiffs all but concede they did not sufficiently plead scienter for any statement in the Issue Briefs because they did not attribute those statements to any individual Defendant. *See* Opp. at 25-26; *see also In re BP p.l.c. Sec. Litig.*, 922 F. Supp. 2d 600, 630 (S.D. Tex. 2013) ("allowing Plaintiffs too much latitude in showing a connection between a particular statement and a particular individual would greatly increase the chance of [a company] being held liable for a statement that no responsible executive understood or believed to be misleading or inaccurate") (citing *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 707 (7th Cir. 2008)).

Plaintiffs attempt to address this deficiency by attaching more than 160 pages of exhibits to their Opposition. *See* Pl. App. at 146-311; Mot. at 9.  But these exhibits merely demonstrate that leave to amend to add allegations of the facts in these exhibits would be futile.  Each exhibit's collection of materials—including a letter from either Stankey or Stephenson, and other content that references the Issue Briefs on AT&T's website (Opp. at 25)—is not enough to attribute those Issue Briefs to Stankey or Stephenson as required by binding precedent. *Plains II*, 307 F. Supp.

3d at 627-28 (officers did not "approve" statements on company's website, where officers signed SEC filings that referred investors to website for information about company's policies), *aff'd*, 777 F. App'x 726, 731-32 (5th Cir. 2019); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("[T]he PSLRA requires the plaintiffs to 'distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud.").

### D.    Plaintiffs' other circumstantial scienter allegations do not compensate for the Amended Complaint's deficiencies.

Plaintiffs' remaining grab-bag of scienter allegations are no substitute for the particularized allegations the PSLRA requires.  Lacking "specific allegations that any Defendant knew of the falsity of any of the statements," Plaintiffs double down on the irrelevant core operations doctrine. *Alas. Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 985 (5th Cir. 2019); Opp. at 28-29. AT&T's "size alone" renders this doctrine "inapplicable." *Exxon I*, 2022 WL 4677621, at *4; *see also Flotek*, 915 F.3d at 985 ("we have never found special circumstances permitting an inference of scienter . . . when the company was large").

Likewise, Plaintiffs' allegations of what Defendants "must have known," based on Stankey and Stephenson's "professed . . . commitment to ESG goals," *see* ¶¶ 454-455; Opp. at 29, are unsupported and insufficient to meet their pleading burden as a matter of law.  For example, Stephenson's statement that "it's important that we as CEOs and companies have a vested interest in the health of our people," or Stankey's comment that "we're doing our part as a company to create sustainable solutions to issues that face our communities," ¶¶ 454-455, "fall far short of the *BP* CEO's alleged frequently repeated, specific, and definitive statements about specific aspects of the company's . . . progress in the area at issue." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 925 (S.D. Tex. 2017) ("*Plains I*") (distinguishing *In re BP p.l.c.*), *aff'd*, 777 F. App'x 726 (5th Cir. 2019); *see* Opp. at 29.

9

Finally, the SOX certifications add nothing because Plaintiffs fail to allege any "red flags" that Defendants should have noticed, much less "glaring" ones. *Compare* Opp. at 30, *with Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 854 (N.D. Tex. 2018) (scienter enhanced by SOX certifications where defendants received "in-depth briefings" or were "directly involved" in drafting report that contained objectively false "proxy cost" figure that was different from actual figure the corporation used internally).

Holistically, Plaintiffs' scienter theory is nothing more than supposition and innuendo. Crediting it would require concluding both that the entire industry independently committed the same "fraud," *see* Mot. at 19, and that the securities laws require corporate executives to speak speculatively about future events that they have not predicted (nor have actually occurred).

## II. Plaintiffs' Opposition shows that the Amended Complaint fails to plead any false or misleading statement.

Plaintiffs concede (as they must) that a defendant's omission of speculative predictions is not actionable as a matter of law. *See* Opp. at 9; *see also Heinze v. Tesco Corp.*, 971 F.3d 475, 482 (5th Cir. 2020). And Plaintiffs cannot dispute that a company need not disclose all information investors may find relevant, or even all material information. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024). Rather, disclosure is required "only when necessary 'to make statements made, in the light of the circumstances under which they were made, not *misleading*.'" *Id.* at 264 (emphasis added) (quoting Rule 10b-5).

Plaintiffs have not alleged that any of the challenged statements were false or misleading. Unable to show that Defendants had a duty to disclose a material risk created by the lead-clad cables during the Class Period, Plaintiffs cannot identify any actionable omission.

*1. Cost Savings and Risk Disclosures.* Plaintiffs confirm their theories of falsity for the statements concerning (1) the cost savings and benefits of transitioning to fiber, and (2)

10

AT&T's risk disclosures, turn on Plaintiffs' hindsight assessment that AT&T faced significant "expos[ure] . . . to a host of costly risks" at the time the statements were made. Opp. at 14; *see id.* at 17 (AT&T faced supposed "increased . . . danger that extensive losses would materialize").

Plaintiffs' half-hearted argument that the cost-savings and benefits-of-the-fiber-transition statements were misstatements (not omissions) is meritless. *See* Opp. at 15 (alleging Defendants purportedly "proclaimed that AT&T was 'reclaiming copper, removing copper.'") (citing ¶ 305). AT&T never claimed no copper cable remained, as the Amended Complaint acknowledges. *See, e.g.*, ¶ 290 ("it allows us to shut down *some* infrastructure over time" and "begin the work of starting to shed *some* of that footprint and *reduce* the number of square miles"), ¶ 304 ("We plan to *reduce* our copper footprint 50% by 2025."), ¶ 324 ("we still have a large, I'll call it, legacy footprint") (emphases added). Nor does an analyst's (accurate) understanding—that AT&T was "removing legacy *products*," such as "DSL," in favor of fiber—remotely support Plaintiffs' suggestion that AT&T communicated to investors that it was physically removing "all" copper cables. Opp. at 15 (citing ¶ 291) (emphasis added).

Plaintiffs' insistence that their claim is based on Defendants' alleged "fail[ure] to disclose an array of *existing facts*" does not help either. *See id.* at 2. Where the allegedly omitted facts relate at most to speculative potential consequences, the omission of those facts is not actionable. *See Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 572, 575 (6th Cir. 2008) (affirming dismissal because defendants had no duty to disclose "predictions" and "matters of opinion").[2]

Defendants' failure to foresee that the *Journal* would make sensationalized and disputed assertions against the telecom industry does not render the challenged statements materially

---

[2]    *See also, e.g.*, *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 169-70 (S.D.N.Y. 2015) (statements not misleading for failing to disclose alleged misconduct because alleged "amplified risk of regulatory scrutiny" was speculative) (collecting cases); *In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 187 (W.D.N.Y. 2022) (no duty to disclose grant of "spring-loaded" stock options because was speculative grants would cause loan termination).

misleading.  Distilled down, Plaintiffs ask the Court to conclude they have pleaded falsity with particularity based on Defendants' *accurate* statements because the *Journal* later made disputed assertions about lead-clad telecom cables.  And they ask the Court to do so even though Plaintiffs have not alleged with particularity that AT&T possessed information indicating that "massive" or "substantial" liabilities were on the "horizon."  ¶¶ 280, 442; Opp. at 17.  That some lawsuits have been filed in the wake of the *Journal*'s disputed reporting does not move the needle either.  *See* Pl. App. at 1-44, 56-145; Pl. Supp. App. at 1-162.  The filing of lawsuits of course does not itself mean any liability (let alone material liability) exists even now.  And none of these lawsuits were known to any Defendant during the Class Period (most post-date even the filing of the Amended Complaint, and even the Opposition), and thus Plaintiffs' voluminous appendix sheds no light on any Defendant's state of mind or whether the challenged statements were false or misleading *at the time the statements were made*.  *See Naglich v. Applied Optoelectronics*, 436 F. Supp. 3d 954, 973 (S.D. Tex. 2020) ("Since passage of the PSLRA, the Fifth Circuit has consistently held that predictive statements are only actionable if they are 'false when made.'") (collecting cases).

Allowing this case to proceed would require creating a new duty to predict a speculative potential for future liability.  *See Zaluski*, 527 F.3d at 575 (company "had no duty to disclose what it had not yet discovered or concluded").  This case is not *Lormand*, *see* Opp. at 17, where the court held that statements touting the past and future success of programs were adequately alleged to be misleading where the allegations included executives' private predictions in written correspondence of the programs' failure and "disastrous" consequences, and executives made the challenged statements "even as they received adverse financial information confirming their dire predictions."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 237 (5th Cir. 2009).[3]

---

[33]   Plaintiffs also fail to rebut that many of the challenged statements are opinions subject to *Omnicare*'s analytical framework or forward-looking statements protected by the PSLRA's safe harbor.  Mot. at 22-24.  Plaintiffs

**2.      *Environmental Stewardship and Employee Safety*.** Plaintiffs' Opposition confirms that statements concerning AT&T's commitment to, and general policies and practices for, promoting environmental stewardship and employee safety are neither false nor misleading.

To start, the "commitment" statements in both categories are inactionable statements of corporate optimism.[4]  That these general "topic[s]" were allegedly "critical to AT&T investors," Opp. at 13, does not make these statements actionable.  *See Employees' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 902 (5th Cir. 2018) (plaintiffs cannot "conflate" the "importance" of issues with "the materiality" of statements about those issues).  And Plaintiffs provide no support for their contention that these statements were "designed to quell investor concern."  Opp. at 13.

As for the other statements, reasonable investors do not interpret a company's description of its general programs or policies as an assurance or guarantee of their effectiveness.  *See*, *e.g.*, *Linenweber v. Sw. Airlines Co.*, 693 F. Supp. 3d 661, 678 (N.D. Tex. 2023) ("Investors know that the deployment of employees and development of policies and programs to mitigate safety and compliance issues is not a guarantee that problems will not arise.") (citing cases).  And AT&T's alleged failures "do not make the general statements describing [AT&T's] policies and priorities actionably misleading" in any event.  *Plains II*, 307 F. Supp. 3d at 620.

Finally, Plaintiffs' attempt to pigeonhole the employee-training statements into an exception for "representations [that] provide greater 'specificity,'" Opp. at 13, is misplaced.  AT&T *did* train "all" employees for likely job hazards (¶¶ 135-138); Plaintiffs merely allege some

---

do not allege that any portions of Defendants' statements allegedly describing "*existing* cost savings," Opp. at 16, or otherwise referring to "*present* facts," *id.* at 18, were themselves false.  Nor are there any allegations that any individual Defendant knew any information that "fundamentally conflict[ed]" (*id.* at 16) with his alleged statements, *see supra* § I.B—let alone knew facts that would get Plaintiffs past the safe harbor's "actual knowledge" prong.  *See Six Flags*, 58 F.4th at 210, 214 ("actual knowledge" is "a more demanding standard" than even severe recklessness).

4      *See In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 820 (S.D. Tex. 2013) (statements that company was "committed to managing and operating its assets in a manner that protects and conserves the environment" were not actionable); *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 682–83 (N.D. Tex. 2022) (statements that company was "committed to being a steward of the environment" were not actionable).

deficiencies in training as to one of those hazards.

### III.   Plaintiffs do not dispute the scheme-liability claims must be dismissed.

Plaintiffs' failure to even acknowledge Defendants' arguments for dismissal of their scheme-liability claims confirms that those claims must be dismissed with prejudice.[5]

### IV.   Plaintiffs do not dispute that claims based on statements made before July 28, 2018 must be dismissed under the five-year statute of repose.

Plaintiffs do not disagree that their claims based on any statement made before July 28, 2018 are barred by repose.  *See* Opp. at 18.  Plaintiffs offer no basis for their assertion that an Issue Brief that states it was "[u]pdated on: Jun 29, 2018" falls within the repose period.  The June 29, 2018 date—reflected at Defendants' Exhibit N—is consistent with both (a) Plaintiffs' own allegation that it was published "*no later than* July 29, 2018," ¶ 361 (emphasis added), and (b) the other allegations in the Amended Complaint that use the dates Issue Briefs were "updated" as the dates those statements were made.  *See*, *e.g.*, ¶¶ 335, 341, 345, 349, 357, 368, 372, 376, 380, 415.  The Amended Complaint also plainly alleges that AT&T's 2017 Form 10-K was "false and misleading when made," which was "[o]n February 20, 2018."  ¶¶ 384, 386.  All alleged misrepresentations made before July 28, 2018, must be dismissed.

### V.   Plaintiffs fail to identify any allegation of loss causation as to the bonds.

Plaintiffs' Opposition makes plain they have not pleaded loss causation as to their bond claims because they have not alleged a drop in price for any bonds.  *See Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 689 (5th Cir. 2014).  Plaintiffs' reliance on the *Ong* case is misplaced; the plaintiff there identified the specific amounts by which both the stock and bonds dropped.  *See* Opp. at 31; *Ong ex rel. Ong v. Sears, Roebuck & Co.*, 459 F. Supp. 2d 729, 750 (N.D. Ill. 2006).

---

[5]   *See Mayo v. Halliburton Co.*, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (dismissing breach of contract claim where plaintiff failed to brief defendants' argument addressing that claim); *Morris v. City of Fort Worth*, 2020 WL 870228, at *3 & n.3 (N.D. Tex. Feb. 21, 2020) (similar).

It is telling that Plaintiffs are left relying on an exhibit presented to the Court for the first time in their Opposition, and fail to identify any instance in which a court has taken judicial notice of bond prices (or any securities prices) asserted for the first time in a plaintiff's own opposition brief.

## VI.    Dismissal with prejudice is appropriate.

This Court should dismiss with prejudice because "plaintiffs have pleaded their best case," and "any additional attempts to amend would be futile." *Callinan v. Lexicon Pharms., Inc.*, 479 F. Supp. 3d 379, 442 (S.D. Tex. 2020), *aff'd*, 858 F. App'x 162, 163-64 (5th Cir. 2021). "[P]laintiffs have already filed an amended complaint that is [196] pages long, and have argued strenuously that" it "states claims for which relief may be granted." *Id.* And they "have failed either to submit a proposed second amended complaint or described any additional facts that could be alleged" but that could not have been included in the Amended Complaint. *Id.*

15

Dated:  December 11, 2024

Respectfully submitted,

**BAKER BOTTS L.L.P.**

*/s/ Jessica Bateman Pulliam*

Jessica Bateman Pulliam
John B. Lawrence
Kirstie Wallace
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone:  (214) 953-6500
Facsimile:  (214) 661-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com
kirstie.wallace@bakerbotts.com

James J. Beha II
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
jim.beha@bakerbotts.com

*Counsel for Defendants*

16