**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| IN RE AT&T INC. SECURITIES LITIGATION | Case No. No. 3:24-cv-01196-N |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE THE THIRD AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................1

BACKGROUND .......................................................................................................................3

      A.     The Initial Complaint Was Not Filed By Plaintiffs .................................................3

      B.     Plaintiffs Filed the FAC with Consent After Being Appointed Lead
              Plaintiffs ...............................................................................................................3

      C.     The SAC Was Properly Filed with Leave of Court ................................................5

      D.     Plaintiffs Promptly Exercised Their Right to Amend Once as a Matter of
              Course to Interpose New Facts Learned After the SAC Was Filed.........................6

ARGUMENT.............................................................................................................................8

I.     THE TAC IS PROPERLY BEFORE THE COURT ..........................................................9

      A.     Plaintiffs Properly Exercised Their Right to File the TAC As of Course ...............9

             1.     The Right to Amend Under Rule 15(a)(1) Is Not Extinguished by
                    Filing an Amendment With Leave or Consent Under Rule 15(a)(2).........10

             2.     The Right to Amend Under Rule 15(a)(1) Is Not Limited to the
                    First Motion to Dismiss .............................................................................14

      B.     Leave If Necessary Should Be Granted ................................................................17

             1.     Every Relevant Factor Weighs in Favor of Granting Leave......................18

              2.     The Pleading Requirements Applicable to Plaintiffs' Claims
                    Provide Additional Reason to Grant Leave ...............................................23

II.    THE COURT SHOULD STAY THE DEADLINE FOR SERVICE OF THE TAC
      AND SUMMONS...........................................................................................................24

CONCLUSION........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrieta v. Yellow Transp., Inc.*,
  2007 WL 2051115 (N.D. Tex. July 13, 2007) ........................................................................22

*Augustus v. Bd. of Pub. Instruction*,
  306 F.2d 862 (5th Cir. 1962) ...............................................................................................8

*Azkour v. Bowery Residents' Comm., Inc.*,
  2017 WL 4221456 (S.D.N.Y. Sept. 22, 2017)........................................................................17

*Bryant v. La. Cmty. & Tech. Coll. Sys.*,
  2024 WL 4453290 (M.D. La. Oct. 9, 2024) ...........................................................................16

*Canales v. Sheahan*,
  2016 WL 489896 (W.D.N.Y. Feb. 9, 2016) ...........................................................................15

*In re Capstead Mortg. Corp. Sec. Litig.*,
  2003 WL 22221320 (N.D. Tex. Sept. 19, 2003)......................................................................13

*Carlton v. United States*,
  576 U.S. 1044 (2015).........................................................................................................14

*Carson v. Polley*,
  689 F.2d 562 (5th Cir. 1982) ...............................................................................................21

*Casares v. Agri-Placements Int'l, Inc.*,
  12 F. Supp. 3d 956 (S.D. Tex. 2014) ....................................................................................16

*Copeland v. D & J Constr. LLC*,
  2015 WL 512590 (N.D. Tex. Feb. 6, 2015)............................................................................11

*Donzi N.V. v. Glob. Fin. Servs. LLC*,
  2012 WL 2403504 (S.D. Tex. June 25, 2012) ........................................................................23

*Dragonas v. Macerich*,
  2021 WL 1139847 (D. Ariz. Mar. 25, 2021) .........................................................................15

*DT Apartment Grp., LP v. CWCapital, LLC*,
  2012 WL 4740488 (N.D. Tex. Oct. 3, 2012)..........................................................................22

*Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.3d 594 (5th Cir. 1981) ...............................................................................................23

*Elliott v. Foufas*,
    867 F.2d 877 (5th Cir. 1989) ................................................................................................13

*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................................20, 23

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................................................23

*Escort Inc. v. Uniden Am. Corp.*,
    2019 WL 4246605 (N.D. Tex. Sept. 6, 2019)......................................................................18

*F.D.I.C. v. Niblo*,
    821 F. Supp. 441 (N.D. Tex. 1993) ......................................................................................9

*Felder v. City of Dallas*,
    2024 WL 758936 (N.D. Tex. Jan. 22, 2024) ......................................................................13

*Hall v. City of Houston*,
    2022 WL 3031306 (5th Cir. Aug. 1, 2022)..........................................................................10

*Hamilton v. Bell*,
    2021 WL 6690274 (N.D. Tex. Dec. 21, 2021) ...............................................................12, 16

*Hart v. Bayer Corp.*,
    199 F.3d 239 (5th Cir. 2000) ..............................................................................................23

*Hegwood v. Ross Stores, Inc.*,
    2006 WL 8437334 (N.D. Tex. June 26, 2006) ...............................................................19, 20

*Horton v. Cockrell*,
    70 F.3d 397 (5th Cir. 1995) ................................................................................................14

*Iron Oak Techs., LLC v. Dell, Inc.*,
    2018 WL 1631396 (W.D. Apr. 4, 2018)..............................................................................10

*Janvey v. Alguire*,
    2010 WL 11614579 (N.D. Tex. Jan. 29, 2010) ...................................................................18

*Janvey v. Alguire*,
    2015 WL 898380 (N.D. Tex. Mar. 2, 2015) .........................................................................9

*John v. City of San Antonio*,
    2007 WL 9706474 (W.D. Tex. July 24, 2007) ....................................................................24

*Joshua v. Foreman*,
    2018 WL 10562046 (S.D. Tex. Nov. 29, 2018) ..................................................................20

*Lamont v. Assaf*,
2023 WL 3511561 (N.D. Tex. Apr. 25, 2023) ..................................................................10

*Lee v. AXA Fin., Inc.*,
2019 WL 2552202 (E.D. Tenn. June 20, 2019)..................................................................15

*Levitan v. Patti*,
2011 WL 1299947 (N.D. Fla. Feb. 8, 2011)......................................................................15

*Lowrey v. Tex. A&M Univ. Sys.*,
117 F.3d 242 (5th Cir. 1997) ............................................................................................23

*M.D. v. Perry*,
294 F.R.D. 7 (S.D. Tex. 2013)..........................................................................................21

*Malone v. Blue Cross and Blue Shield of Tex., Inc.*,
2019 WL 4192286 (N.D. Tex. Sept. 3, 2019)...................................................................11

*Martinez v. Robinhood Crypto LLC*,
2022 WL 18932814 (C.D. Cal. Nov. 16, 2022).................................................................15

*Matrix Cap. Mgmt. Fund, L.P. v. BearingPoint, Inc.*,
576 F.3d 172 (4th Cir. 2009) ............................................................................................21

*McElvy v. Sw. Correctional, LLC*,
2020 WL 13882825 (N.D. Tex. Jan. 9, 2020) ..................................................................22

*Merisier v. Johnson Cnty.*,
2020 WL 13856958 (N.D. Tex. May 26, 2020) ................................................................12

*Metzloff v. Royal Trucking Co.*,
473 F. Supp. 3d 700 (E.D. Tex. 2020)..............................................................................11

*Molina v. Caliber Home Loans Inc.*,
2016 WL 11472751 (N.D. Tex. Dec. 8, 2016) ...................................................................9

*N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*,
898 F.3d 461 (5th Cir. 2018) ............................................................................................18

*Pavelic & Leflore v. Marvel Ent. Grp.*,
493 U.S. 120 (1989)..........................................................................................................10

*Pfeiffer v. Ajamie PLLC*,
2020 WL 13420830 (S.D. Tex. Jan. 27, 2020) .................................................................10

*Ramirez v. Cnty. of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015) .....................................................................................11, 13

*Reinforced Earth Co. v. T&B Structural Sys.*,
2013 WL 10989994 (N.D. Tex. Jan. 30, 2013) ........................................................14

*Reitz v. City of Abilene*,
2018 WL 5634931 (N.D. Tex. Oct. 31, 2018) ....................................................10, 20

*Russell v. City of Bellevue*,
2021 WL 1517921 (N.D. Ohio Apr. 16, 2021).........................................................16

*Salvatore v. Smith*,
2024 WL 4757771 (M.D. La. Nov. 12, 2024) ..........................................................16

*Savignac v. Jones Day*,
341 F.R.D. 120 (D.D.C. 2022)..................................................................................16

*Simon v. GM Fin.*,
2025 WL 2689917 (N.D. Tex. Sept. 19, 2025).........................................................12

*Smith v. EMC Corp.*,
393 F.3d 590 (5th Cir. 2004) ....................................................................................21

*Srinivasan v. NCH Corp.*,
2023 WL 5350570 (N.D. Tex. Aug. 21, 2023).........................................................11

*Stripling v. Jordan Prod. Co.*,
234 F.3d 863 (5th Cir. 2000) ..............................................................................18, 22

*TMA Leasing, Inc. v. Vacuum Truck Sales & Serv., LLC*,
2016 WL 8261723 (M.D. La. Jan. 6, 2016).............................................................18

*Tomlinson v. Dallas Area Rapid Transit*,
2021 WL 5908991 (N.D. Tex. Dec. 14, 2021) ........................................................12

*Travis v. City of Grand Prairie*,
2015 WL 13002069 (N.D. Tex. Aug. 6, 2015)........................................................20

*Trimble v. La. State Univ. Sys.*,
2022 WL 22858935 (M.D. La. July 14, 2022) ........................................................11

*Tucker v. Navarro Cnty. Sheriff*,
1997 WL 279840 (N.D. Tex. May 21, 1997) ..........................................................21

*Umaña v. United States*,
2025 WL 35879 (W.D.N.C. Jan. 6, 2025) ...............................................................14

*United States ex rel. Mathews v. HealthSouth Corp.*,
332 F.3d 293 (5th Cir. 2003) ..............................................................................17, 18

*United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*,
 2023 WL 3294141 (N.D. Tex. May 5, 2023) ....................................................................8, 9

*Walden v. Raimondo*,
 2024 WL 625231 (M.D. Ga. Feb. 14, 2024)...........................................................................15

*Xi v. Bes Kessler Park Fund X11 LLC*,
 2024 WL 5240153 (N.D. Tex. Dec. 16, 2024) ..................................................................12, 13

*Xi v. BES Kessler Park Fund X11 LLC*,
 2024 WL 5240155 (N.D. Tex. Dec. 27, 2024) .......................................................................13

**Statutes**

Private Securities Litigation Reform Act of 1995 ................................................................21, 23

**Rules**

17 C.R.F. § 240.10b-5.......................................................................................... *passim*

Fed. R. Civ. P. 4(m) .......................................................................................................24

Fed. R. Civ. P. 9............................................................................................................23

Fed. R. Civ. P. 12............................................................................................. *passim*

Fed. R. Civ. P. 15(a) ......................................................................................... *passim*

**Other Authorities**

6 Wright & Miller's Federal Practice & Procedure § 1480 (3d ed. 1998) .........................16, 17, 22

3 Moore's Federal Practice § 15.10 (3d ed. 1997)..........................................................16

Plaintiffs respectfully submit this memorandum in opposition to the Motion to Strike (the "MTS") filed by Defendants on October 9, 2025. [Dkt. 97.]

## INTRODUCTION

Between August 28, 2025, and October 6, 2025, Plaintiffs, through continued investigation, learned damaging new facts providing powerful evidence of Defendants' scienter and supporting scheme claims against several actors within AT&T who were complicit in the fraud. After conducting extensive research to ensure that doing so was procedurally proper, on October 6, 2025, Plaintiffs exercised their one-time right to amend under Rule 15(a)(1) and filed the Third Amended Complaint [Dkt.96] ("TAC") to interpose these new facts. Defendants' reflexive MTS, filed three days later, is a desperate attempt to prevent the Court, at all costs, from considering these new facts, takes great liberties with applicable law to seek such relief, and should be summarily denied.

On June 16, 2025, this Court issued an Order in which it held Plaintiffs failed to state a claim for securities fraud in their First Amended Complaint ("FAC") primarily on the ground that the inference of scienter was "slightly" less compelling than the nonculpable inference. [Dkt. 90.] With the Court's leave, Plaintiffs filed a Second Amended Complaint ("SAC"), which added new facts to cure the defects, on July 16, 2025 [Dkt. 91] and, several days later, the Court approved a briefing schedule for Defendants' forthcoming motion to dismiss. [Dkt. 94.] The motion, filed September 15, 2025 (the "MTD"), argued, among other things, that the SAC continued to lack (1) any direct evidence of scienter; and (2) any facts supporting scheme claims.

Over a month after the SAC was filed, Plaintiffs began to learn new facts further supporting their claims. By September 9, 2025, Plaintiffs had a good faith basis to amend and contacted Defendants immediately, in real time, to discuss their intent to do so and potentially avoid burdening the Court with an unnecessary Rule 12(b) motion. Defendants balked and decided to move ahead with the MTD anyway. Plaintiffs continued to gather additional facts in direct response to the

arguments raised therein and, on October 6, 2025, filed the TAC under Rule 15(a)(1).

Rule 15(a)(1) provides that a party may amend its pleading "once as a matter of course," *i.e.*, without leave of court, "21 days after service of a motion under Rule 12(b)." Defendants do not argue that Plaintiffs failed to file the TAC within 21 days of their MTD. Instead, they claim Plaintiffs somehow lost the right to do so because they had amended twice before. They emphasize that "a plaintiff may amend her complaint only 'once as a matter of course'" and "once means once." But Plaintiffs have ***never once amended as matter of course*** and Defendants do not claim otherwise. The previous amendments were made with consent or leave under Rule 15(a)(2). Defendants' argument—which reads words into Rule 15(a)(1) that do not exist—has been repeatedly raised and rejected by courts in this Circuit and elsewhere, including the Ninth Circuit. In fact, the same Judge they rely on for the "once means once" soundbite repeated throughout the MTS has issued other decisions using the same language which directly hold that a party may exercise the right to amend under Rule 15(a)(1) if all prior amendments were made under Rule 15(a)(2).

As its text suggests, Rule 15(a)(1) is designed to afford a plaintiff one opportunity to cure identified defects and, thus, promote judicial economy. Relevant advisory committee notes provide that Rule 15(a)(1), as currently structured, forces "the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion," and, thus, "expedite determination of issues that otherwise might be raised seriatim." The TAC serves this very goal. Plaintiffs amended to fortify their claims with additional allegations to dispel any doubt that they state viable claims. Rather than confront these meritorious allegations of fraud, Defendants ask this Court to disregard them and pass on another pleading that Plaintiffs decided to cure in response to their arguments.

In addition, Defendants ignore that the Court may grant leave under Rule 15(a)(2) to permit the filing of such an amendment, whether properly lodged under Rule 15(a)(1) or not, consistent

- 2 -

with longstanding Fifth Circuit precedent. As explained below, all relevant factors under Rule 15(a)(2) firmly support granting leave, which provides an alternative basis for the Court to sustain the filing of the TAC. Indeed, the need to liberally grant leave is amplified in cases like this one, where the plaintiff must develop sufficient facts to meet heightened pleading requirements. Thus, there is no sound basis in law or logic to deprive Plaintiffs from interposing new facts so their claims can be tested on the merits, while the MTD remains pending and the Court may consider them as part of its evaluation of the pleadings.

In short, Defendants have brought a baseless motion to stymie this Court from addressing the new allegations in the TAC that conclusively show they are liable for securities fraud. The Court should not reward these tactics. Plaintiffs, and the Class they represent, should have their day in Court without further delay. The MTS should be denied in its entirety.

## BACKGROUND

### A.    The Initial Complaint Was Not Filed By Plaintiffs

This case began in the District of New Jersey on July 28, 2023. The initial complaint was filed by John Brazinsky, not Plaintiffs. [Dkt. 1] The initial complaint brought claims against AT&T and several current or former executives for violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder on behalf of all those who purchased or acquired AT&T securities between March 1, 2020, and July 26, 2023. [*Id.*]

### B.    Plaintiffs Filed the FAC with Consent After Being Appointed Lead Plaintiffs

On September 26, 2023, seven movants sought appointment as lead plaintiff, including Plaintiffs. [Dkt. 5, 9, 10, 11, 12, 13, 14.] While those motions were pending, the initial defendants filed a motion to transfer the case to this Court. [Dkt. 43.] Plaintiffs did not oppose. [Dkt. 45].

On April 16, 2024, Plaintiffs were appointed lead plaintiffs. [Dkt. 49.] On April 30, 2024, the initial defendants submitted a joint letter in which they expressly "stipulate[d]" that Plaintiffs

may file an amended complaint no later than sixty days after the lead plaintiff order or forty-five days after a ruling on motion to transfer, whichever was later.  [Dkt. 52.]  The court granted the motion to transfer on May 16, 2024.  [Dkt. 53.]  Post-transfer, the parties submitted a joint Rule 26(f) conference report in which they reiterated the schedule they stipulated to prior to transfer.  [Dkt. 62.]  On July 1, 2024, the Court entered an order in which it authorized Plaintiffs to file the amended complaint by July 8, 2024.  [Dkt. 63.]

Following an extensive prefiling investigation that included interviews with 16 former employees, Plaintiffs filed the FAC—their first pleading in the case—on July 8, 2024.  [Dkt. 65.]  As detailed therein, Plaintiffs confirmed that AT&T decided to actively discard vast amounts of old copper telephone cables that were covered in lead—a known toxin and environmental contaminant—by leaving them scattered across the country near high-traffic areas like schools and residential buildings as they were displaced by fiber optic cables.  The FAC brought claims against Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder for making false and misleading statements between July 28, 2018, and July 26, 2023 regarding: (1) the cost savings of transitioning from copper to fiber; (2) environmental stewardship; (3) employee health and safety; and (4) EHS risks.  FAC ¶¶ 279-395.

On September 4, 2024, Defendants filed a motion to dismiss, arguing that the FAC failed to adequately plead an actionable misstatement, scienter, or loss causation. [Dkt. 70.]  Defendants also argued that the FAC failed to allege a distinct claim for "scheme" liability under Rule 10b-5(a) & (c).  [*Id.*]  The motion was fully briefed by December 11, 2024.  [Dkt. 73, 79.]

On June 16, 2025, the Court entered a Memorandum Opinion and Order (the "MTD Order") granting Defendants' motion to dismiss.  [Dkt. 90.]  The Court ruled that Plaintiffs adequately alleged false and misleading statements with respect to most of the cost savings statements as well as

the representations in AT&T's Issue Briefs falsely assuring that it removed and recycled all regulated materials when cable plant is retired and, further, rejected Defendants' loss causation challenges. *Id.* 19-30 & n.3. However, the Court explained that it granted the motion because the facts pled failed to raise a strong inference of scienter. MTD Order at 11. Specifically, the Court held that (i) the statements in the Issue Briefs were not properly attributed to any specific party; (ii) the knowledge of nondefendant individuals within AT&T do not support an inference of scienter for the named parties; (iii) the individualized allegations failed to raise a strong inference of scienter; and (iv) the motive allegations were insufficient to carry the inference across the line. *Id.* at 11-19. On balance, the Court determined that the nonculpable inference was only "slightly" or "somewhat" more plausible than the culpable inference based on the facts alleged. *Id.* at 17, 19. Although no such claims were asserted at the time, the Court, at Defendants' request, also found that the FAC did not state a claim for "scheme" liability under Rule 10b-5(a) & (c). *Id.* at 30.

## C.    The SAC Was Properly Filed with Leave of Court

In the MTD Order, the Court dismissed the claims without prejudice and expressly granted Plaintiffs "leave to amend" within thirty days of the Order. MTD Order at 1, 31.

On July 16, 2025, Plaintiffs timely filed the SAC. [Dkt. 91.] The SAC added new averments of fact which (1) establish that AT&T's two CEOs—Stephenson and Stankey—were directly involved in the preparation, review, and approval of the annual CSR and associated Issue Briefs (SAC ¶¶ 72-81); (2) add further weight to the conclusion that the inference of scienter is at least as likely as the nonculpable inference (SAC ¶¶ 120-21, 155-56, 219, 222, 230, 285, 457, 466-68, 495); and (3) confirm that the risks hidden by Defendants' omissions of fact have continued to materialize through the present (SAC ¶¶ 275, 288-97, 430-31).

**D.** **Plaintiffs Promptly Exercised Their Right to Amend Once as a Matter of Course to Interpose New Facts Learned After the SAC Was Filed**

Mindful of their obligations to absent class members, Plaintiffs continued to investigate the claims after filing the SAC. D'Aloia Decl. ¶ 2. On Thursday, July 17, 2025, Defendants sought Plaintiffs consent to enter an extended briefing schedule for their forthcoming motion to dismiss, which provided for the filing of the motion on September 15, 2025, opposition papers by November 14, 2025, and reply papers by December 19, 2025. Ex. A. On Monday, July 21, 2025, Plaintiffs advised that they did not oppose the request. *Id.* At the time, Plaintiffs had learned no new facts bearing on the claims asserted beyond what was pled in the SAC. D'Aloia Decl. ¶ 3.

Plaintiffs first learned new information which could potentially serve as a basis to amend on August 28, 2025. D'Aloia Decl. ¶ 4. Plaintiffs corroborated the information through another source on September 9, 2025, which, together, provided a good faith basis to amend. *Id.* Plaintiffs proactively contacted Defendants the next day to discuss the matter. *Id.* ¶ 5. On a call the following day, Plaintiffs' counsel advised that they planned to exercise the right to amend under Rule 15(a)(1) in response to Defendants' forthcoming motion to dismiss, assuming Defendants planned to argue that the SAC continued to lack facts giving rise to a strong inference of scienter, and suggested entering a stipulated schedule for the filing of the TAC for the express purpose of (1) obviating the need for Defendants to file a motion to dismiss; and (2) avoid burdening the Court with unnecessary motion practice. *Id.* Thus, Defendants could have avoided filing their motion to dismiss until they had clarity on the operative pleading. They chose not to do so. In subsequent correspondence, Defendants indicated they were unwilling to entertain the proposal unless Plaintiffs shared a copy of the proposed complaint—which they knew was not ready—and accused Plaintiffs of deciding to "wait until the Friday before our Monday deadline" to discuss the issue. Ex. A. Plaintiffs' counsel made clear that "I brought this information to you in good faith as promptly as possible – indeed,

- 6 -

before the proposed amendment has even been finalized – and offered in my previous message to give you a high-level summary" of the present amendments. *Id.* Defendants balked at the suggestion and stated that they would move ahead with their motion anyway. *Id.*

On September 15, 2025, Defendants—with full knowledge that Plaintiffs planned to amend the SAC—filed the MTD to dismiss the SAC as pled. [Dkt. 95.] Defendants urged that the SAC suffered from the same flaws as the FAC, including, that it (1) continued to rely on impermissible group pleading and failed to provide any additional individualized allegations of scienter; and (2) and added no facts to salvage the claims for scheme liability under Rule 10b-5(a) & (c). [*Id.*]

From September 15, 2025, up through, and including, October 6, 2025, Plaintiffs continued to gather further facts in response to the arguments raised in the MTD. D'Aloia Decl. ¶¶ 6-7. After carefully considering the arguments raised therein, and weighing the new information uncovered since August 28, 2025, Plaintiffs decided to amend the SAC to cure the perceived deficiencies and dispel any doubt that they adequately plead claims for securities fraud. *Id* ¶ 8..

On October 6, 2025, Plaintiffs filed the TAC. [Dkt. 96.] The TAC adds an array of new facts that evince Defendants' scienter, including (i) a longstanding internal database of EHS documents prepared by John Malone that warned about the extent of lead cables remaining in AT&T's legacy network and their regulated status (¶¶173-78); (ii) detailed reports sent to Defendants specifying the amount of lead cables AT&T abandoned in place as it reclaimed copper for its salvage value (¶¶227-30); (iii) shocking admissions by Malone that lead cables were abandoned because senior executives "didn't want to spend the money to do the right thing" (¶¶233-35); (iv) a videorecorded groupwide kickoff event in January 2023 led, attended, or viewed by Defendants where a senior executive described lead cables as an "environmental hazard" (¶¶261-64); and (v) an order sent following a senior executive meeting with John Stankey soon after AT&T was

contacted by the *WSJ* for comment on its story which directed employees to leave lead cables in place (¶¶269-71). The TAC also asserts scheme claims against several actors within AT&T, including Melissa Arnoldi, Keith Korte, and John Malone, who, as detailed therein, helped prepare the Issue Briefs or were otherwise complicit in the fraud. *Id.* ¶¶ 89, 93, 261-64, 270, 562-69. Plaintiffs expressly pled that the TAC was being filed pursuant to Rule 15(a)(1)(b). *Id.* pmbl.

On October 9, 2025, Defendants advised that they planned to file the MTS on an emergency basis. Ex. B. As part of the meet and confer process, Plaintiffs offered to stay the deadline to respond to the TAC to avoid burdening the Court with emergency requests. *Id.* Defendants rejected the offer to fabricate a false emergency and filed the MTS as such anyway. [Dkt. 97.] The next day, Plaintiffs filed a Motion to Set Briefing Schedule on the MTS, which made clear that there was no need for expedited briefing because the purported "emergency" was entirely of Defendants' own making. [Dkt. 98.] In response, Defendants confirmed that they did not oppose briefing the MTS on a "normal schedule," and, thus, that there was no emergency requiring the Court's urgent attention. [Dkt. 99.] On October 15, 2025, the Court entered an order staying the deadline to file a response to the TAC, setting October 30, 2025, as the deadline to file an opposition to the MTS, and directing the parties to adhere to the existing briefing schedule for the MTD. [Dkt. 101.]

## ARGUMENT

Whether viewed under Rule 12(f) or the Court's inherent power, granting a motion to strike is a "drastic remedy" that should be used "sparingly." *United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*, 2023 WL 3294141, at \*2 (N.D. Tex. May 5, 2023) (Godbey, J.); *see also Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) ("[I]t is well-established that the action of striking a pleading" is a "drastic remedy" and "should be sparingly used").[1] "Both because striking . . . a pleading is a drastic remedy, and because it often is sought by the movant

---

[1] Unless otherwise noted, all internal citations and quotations are omitted in legal citations.

simply as a dilatory tactic," such motions are "viewed with disfavor and are infrequently granted." *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993); *accord Molina v. Caliber Home Loans Inc.*, 2016 WL 11472751, at *8 n.7 (N.D. Tex. Dec. 8, 2016) (Godbey, J.) ("Courts disfavor Rule 12(f) motions and grant them only rarely."); *Janvey v. Alguire*, 2015 WL 898380, at *5 (N.D. Tex. Mar. 2, 2015) (Godbey, J.) (motions to strike are "generally disfavored").  Defendants' MTS does not present one of the rare cases where the Court should depart from this practice.

## I.    THE TAC IS PROPERLY BEFORE THE COURT

The parties agree that Rule 15(a)(1) permits a party to amend "once as a matter of course," otherwise an amendment may only be made "with the opposing party's written consent or the court's leave" under Rule 15(a)(2). Fed. R. Civ. P. 15(a).  Nevertheless, Defendants maintain that the TAC should be stricken from the record because it was "improperly filed" in violation of Rule 15.  MTS 5.  As the movants, "it is Defendants' burden to establish what they describe as 'impermissible'" filings.  *Taylor*, 2023 WL 3294141, at *3.  They utterly fail to do so for two distinct reasons.

### A.    Plaintiffs Properly Exercised Their Right to File the TAC As of Course

As provided in Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  The opening sentence of the TAC makes clear that it was filed "pursuant to Fed. R. Civ. P. 15(a)(1)(B)."  TAC pmbl.

Defendants do not deny that the TAC requires a responsive pleading.  In fact, they asked the Court to stay the deadline for a "responsive pleading."  MTS 2.  Nor do they dispute that the TAC was filed within 21 days of service of their MTD.  Indeed, they concede that Plaintiffs "filed it within 21 days of Defendants' motion to dismiss."  MTS 5-6.  Instead, they argue that the right to amend under Rule 15(a)(1)(B) is unavailable because (1) Plaintiffs already amended twice before;

and (2) Plaintiffs failed to amend in response to Defendants' previous motion to dismiss.  MTS 5-9.

Neither of these strained interpretations has any merit.

**1.     The Right to Amend Under Rule 15(a)(1) Is Not Extinguished by Filing an Amendment With Leave or Consent Under Rule 15(a)(2)**

Defendants argue that Plaintiffs can no longer amend as a matter of course under Rule 15(a)(1) because they previously amended twice before.  MTS 5-7.  Thus, Defendants read Rule 15(a)(1) to require parties to amend *first* as a matter of course, before making any other amendments. That argument is readily refuted by the text of the Rule and substantial authority.

As an initial matter, Defendants' reading of Rule 15(a)(1) flouts its plain text.  As with a statute, the Federal Rules of Civil Procedure should be interpreted by giving words their "plain meaning."  *Pavelic & Leflore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989); *see also Lamont v. Assaf*, 2023 WL 3511561, at *2 (N.D. Tex. Apr. 25, 2023) (Horan, M.J.) (rejecting interpretation of Rule 12 inconsistent with "plain meaning" of words), *R&R adopted*, 2023 WL 3514441, at *1 (N.D. Tex. May 17, 2023).  Rule 15(a)(1) expressly permits a party to amend "once as a matter of course." Fed. R. Civ. P. 15(a)(1).  But "once" does not mean "first."  Rather, "once" means "one time and no more" or "at any one time : under any circumstances."  *Once*, Merriam-Webster's Collegiate Dictionary at 809 (10th ed. 1993); *see also Once*, Dictionary.com, http://www.dictionary.com/browse/once (last accessed October 30, 2025) ("a single time," "at any time; ever").

Thus, courts throughout this Circuit have consistently interpreted "once" to mean that a party cannot exercise the right to amend ***as a matter of course*** more than once.  *See Hall v. City of Houston*, 2022 WL 3031306, at *3 (5th Cir. Aug. 1, 2022) (party cannot file second amendment as a matter of course when "he had already amended his complaint 'once as a matter of course'"); *accord Pfeiffer v. Ajamie PLLC*, 2020 WL 13420830, at *2 (S.D. Tex. Jan. 27, 2020); *Reitz v. City of Abilene*, 2018 WL 5634931, at *1-2 (N.D. Tex. Oct. 31, 2018) (Frost, M.J.); *Iron Oak Techs., LLC v.*

*Dell, Inc.*, 2018 WL 1631396, at *1 (W.D. Apr. 4, 2018). Indeed, this Court refused to allow an amendment for this very reason. *See Copeland v. D & J Constr. LLC*, 2015 WL 512590, at *4 n.4 (N.D. Tex. Feb. 6, 2015) (Godbey, J.) (refusing to permit party to file amendment without leave under Rule 15(a)(1) when "he had already amended once as a matter of course").

Consistent with this plain meaning, courts regularly hold that a party may exercise the one-time right to amend under Rule 15(a)(1) when all previous amendments are made with consent or leave under Rule 15(a)(2). *See, e.g.*, *Srinivasan v. NCH Corp.*, 2023 WL 5350570, at *1 (N.D. Tex. Aug. 21, 2023) ("Rule 15(a)(1) applies" when previous amendments filed with leave of court); *Trimble v. La. State Univ. Sys.*, 2022 WL 22858935, at *2 (M.D. La. July 14, 2022) (second amended complaint filed within 21 days of motion to dismiss was "properly filed as a matter of course under Rule 15(a)(1)"); *Metzloff v. Royal Trucking Co.*, 473 F. Supp. 3d 700, 703 n.1 (E.D. Tex. 2020) (second amended complaint filed in response to motion to dismiss was "allowed" under Rule 15(a)(1)); *cf. Malone v. Blue Cross and Blue Shield of Tex., Inc.*, 2019 WL 4192286 (N.D. Tex. Sept. 3, 2019) (considering second amended complaint filed as a matter of course).

In fact, the tortured reading of Rule 15(a)(1) that Defendants advance was expressly rejected by the Ninth Circuit in *Ramirez v. County of San Bernardino*, 806 F.3d 1002 (9th Cir. 2015). There, the district court ruled that the plaintiff waived the right to amend under Rule 15(a)(1) after it amended under Rule 15(a)(2). *Id.* at 1006. The Ninth Circuit reversed based on the "clear and unambiguous" text of Rule 15. *Id.* It held that Rule 15 provides two distinct pathways to amend and because "Rule 15 is organized substantively, not chronologically" and "does not prescribe any particular sequence for the exercise of its provisions," the right to amend under Rule 15(a)(1) was not "exhausted" when the previous amendment was filed pursuant to a stipulation between the parties, which satisfied the consent requirement of Rule 15(a)(2). *Id.* at 1007.

- 11 -

Undeterred, Defendants seize on a series of decisions by Magistrate Judge Horan which emphasize that, as used in Rule 15(a)(1), "once means once." MTS 6; *Simon v. GM Fin.*, 2025 WL 2689917, at *1 (N.D. Tex. Sept. 19, 2025) (Horan, M.J.); *Hamilton v. Bell*, 2021 WL 6690274, at *1 (N.D. Tex. Dec. 21, 2021) (Horan, M.J.), *R&R adopted*, 2022 WL 221228 (N.D. Tex. Jan. 25, 2022); *Tomlinson v. Dallas Area Rapid Transit*, 2021 WL 5908991, at *1 (N.D. Tex. Dec. 14, 2021) (Horan, M.J.); *Merisier v. Johnson Cnty.*, 2020 WL 13856958, at *1 (N.D. Tex. May 26, 2020) (Horan, M.J.). They then leap to the conclusion that this must mean that a party cannot amend as a matter of course if they have already filed any type of amendment.

Defendants could not be more mistaken; none of those cases support a contrary rule. For example, in *Simon*, Magistrate Judge Horan specifically noted that the plaintiff "amended her complaint" in state court prior to removal. 2025 WL 2689917, at *1. The state court docket cited in support thereof shows that the amended complaint was filed one day after the original complaint without leave of court. Ex. C. Several others expressly noted that the plaintiff already amended as a matter of course under Rule 15(a)(1). *See Tomlinson*, 2021 WL 5908991, at *1 ("[T]he Tomlinsons have already amended their complaint 'once as a matter of course.'"); *Merisier*, 2020 WL 13856958, at *1 ("Merisier already exercised her right to timely amend her complaint 'once as a matter of course.'"). And the final decision they cite addressed a request to amend in a case where the plaintiff had *never* previously amended. *See Hamilton*, 2021 WL 6690274, at *1

As Defendants are undoubtedly aware, Magistrate Judge Horan has issued other decisions—conveniently omitted from the MTS—that refute their very argument. In *Xi v. Bes Kessler Park Fund X11 LLC*, 2024 WL 5240153 (N.D. Tex. Dec. 16, 2024) (Horan, M.J.), defendant moved to strike a second amended complaint. Citing the general rule that "once means once," Magistrate Judge Horan ruled that the pleading "counted as [plaintiffs] one amendment as a matter of course

under Rule 15(a)(1)(B)" because the previous complaint was filed with leave of court and recommended denying the motion to strike. *Id.* at \*4. Judge Boyle agreed. *See Xi v. Bes Kessler Park Fund X11 LLC*, 2024 WL 5240155 (N.D. Tex. Dec. 27, 2024). Similarly, in *Felder v. City of Dallas*, No. 3:23-cv-437-N-BN (N.D. Tex.), the plaintiff filed an amended complaint in response to a court order and then filed two more amendments without leave or consent. On March 27, 2023, Magistrate Judge Horan entered an order which struck the third amendment but permitted the second amendment to stand because the first was made "to comply with a court order" so the second "counted" as the one amendment as right under Rule 15(a)(1). Ex. D at 2. Magistrate Judge Horan noted this in a report and recommendation addressing the sufficiency of those allegations, which this Court later accepted. *See Felder v. City of Dallas*, 2024 WL 758936, at \*1 (N.D. Tex. Jan. 22, 2024), *R&R adopted*, 2024 WL 758539 (N.D. Tex. Feb. 23, 2024) (Godbey, J.).

Tellingly, Defendants do not (and cannot) claim that Plaintiffs have previously exercised the right to amend under Rule 15(a)(1). Defendants expressly "stipulate[d]" to the filing of the FAC (Dkt. 52) and admit that the SAC was filed "with leave of court" (MTS 1). Above all else, both the FAC and SAC were filed outside the 21-day windows imposed by Rule 15(a)(1).

The remaining cases cited by Defendants (MTS 6-7) are inapposite. Unlike *In re Capstead Mortgage Corporation Securities Litigation*, 2003 WL 22221320, (N.D. Tex. Sept. 19, 2003), Plaintiffs do not argue that the FAC should not count as an amendment because it was "the first one filed by [them]." *Id.* at \*2. Rather, the FAC was properly filed under Rule 15(a)(2), well outside the 21-day window to amend as of right, because it was filed with Defendants' consent. *See Ramirez*, 806 F.3d at 1006-07 (a stipulated amendment is filed with "the opposing party's written consent" under Rule 15(a)(2)). Similarly, the Fifth Circuit's restrictive reading of Rule 15(a) in *Elliott v. Foufas*, 867 F.2d 877, 882-83 (5th Cir. 1989), was made long before the 2009 changes to Rule 15(a),

which broke it into two distinct subsections.  *See Umaña v. United States*, 2025 WL 35879, at \*3 (W.D.N.C. Jan. 6, 2025) (*Elliott* is "inapposite" because it construed "Rule 15 prior to its 2009 amendment that substantive rewrote subsection (a) and bifurcated it into its present two subparts"). In any event, the Fifth Circuit subsequently held that it is an abuse of discretion to deny a plaintiff the right to amend as a matter of course when previous amendments were made in response to court orders.  *See Horton v. Cockrell*, 70 F.3d 397, 402 (5th Cir. 1995).

### 2.    The Right to Amend Under Rule 15(a)(1) Is Not Limited to the First Motion to Dismiss

As explained above, Defendants also argue that Plaintiffs lost the right to amend as a matter of course by failing to exercise it in response to Defendants' previous motion to dismiss directed at the FAC.  MTS 7-9.  Thus, Defendants read Rule 15(a)(1)(B) to require such an amendment no later than 21 days after the *first* motion to dismiss.  Indeed, they cite several out-of-Circuit decisions for that very point.  *Id.*  This tag-along argument fails for many of the same reasons.

By its terms, Rule 15(a)(1)(B), permits a party to amend as a matter of course no later than "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . whichever is earlier" if "the pleading is one"—not the first—"to which a responsive pleading is required."  But Defendants' proposed reading violates the cardinal rule that courts must resist reading words into the Federal Rules of Civil Procedure that do not appear on their face, especially those that create new exceptions.  *See Reinforced Earth Co. v. T&B Structural Sys.*, 2013 WL 10989994, at \*6 (N.D. Tex. Jan. 30, 2013) (Godbey, J.) ("The canon of construction holding that *expressio unius est exlusio alterius* . . . applies to the Federal Rules of Civil Procedure as well as to statutes."); *see also Carlton v. United States*, 576 U.S. 1044 (2015) ("Courts must apply the Federal Rules as they are written" and not read words into them that create a new "exception").

Further, it can hardly be said that courts outside this Circuit "resoundingly agree" with the

- 14 -

reading they advocate (MTS 7), as many—including those in the same district as those cited by Defendants—have permitted amendment in response to renewed motions under Rule 12(b). *See, e.g.*, *Walden v. Raimondo*, 2024 WL 625231, at *3 (M.D. Ga. Feb. 14, 2024) (plaintiff had "right" to file third amendment within 21 days of second 12(b) motion); *Martinez v. Robinhood Crypto LLC*, 2022 WL 18932814, at *1 (C.D. Cal. Nov. 16, 2022) (same for third amendment filed within 21 days of second 12(b) motion); *Dragonas v. Macerich*, 2021 WL 1139847, at *1-2 (D. Ariz. Mar. 25, 2021) (same for second amendment filed within 21 days of second 12(b) motion); *Lee v. AXA Fin., Inc.*, 2019 WL 2552202, at *1-2 (E.D. Tenn. June 20, 2019) (same for second amendment filed within 21 days of second 12(b) motion); *Levitan v. Patti*, 2011 WL 1299947 (N.D. Fla. Feb. 8, 2011) (same for fourth amendment filed within 21 days of second motion to dismiss), *R&R adopted*, 2011 WL 1215364 (N.D. Fla. Mar. 31, 2011).[2]  These cases align with the conclusion that "[n]othing in the plain text of the rule . . . pushes against the view that the right to amend once as a matter of course theoretically can be used anytime in a case, as long as circumstances satisfy the prerequisites of Rule 15(a)(1)(B)." *Canales v. Sheahan*, 2016 WL 489896, at *2 (W.D.N.Y. Feb. 9, 2016), *R&R adopted*, 2016 WL 1170457 (W.D.N.Y. Mar. 25, 2016).

   *Martinez*, 2022 WL 18932814, is particularly instructive.  There, the plaintiff first amended pursuant to a stipulation between the parties. *Id.* at *1.  He then filed a second amended complaint after the court granted him leave to do so in its initial dismissal order. *Id.*  The party then filed the third amended complaint within 21 days of the second motion to dismiss. *Id.*  But the third amended complaint was permitted to stand because the plaintiff was "yet to exhaust his Rule 15(a)(1) right to amend his pleading once as a matter of course." *Id.*  The same is true here.

   More fundamentally, no court within *this* Circuit has refused to permit a party to exercise the

---

[2] For the avoidance of doubt, the previous dismissal orders in *Levian* are attached as Exhibit E.

right to amend as a matter of course on the ground that it failed to do so in response to a previous 12(b) motion.[3]  Consistent with the clear text of Rule 15(a)(1)(B), courts in the Fifth Circuit have stated the exact opposite.  *See Casares v. Agri-Placements Int'l, Inc.*, 12 F. Supp. 3d 956, 980 (S.D. Tex. 2014) (party "had the opportunity to amend their Second Amended Complaint as a matter of course" in response to second motion to dismiss).  Indeed, one of the cases from this district that Defendants rely on in their MTS specifically held that the right to amend once as a matter of course had "not expired" after the entry of a previous dismissal order.  *Hamilton*, 2021 WL 6690274, at *1. Were the Court to hold otherwise, it would tread new ground in doing so.

The snippets cherry picked from civil practice treatises (MTS 8) do not support a contrary rule.  Both simply reinforce that the ability to amend as of right is limited to the 21-day period after service of a 12(b) motion.  6 Wright & Miller's Federal Practice & Procedure § 1480 (3d ed. 1998) ("Wright & Miller") (amendment under Rule 15(a)(1) must be made "within 21 days after service of a responsive pleading or after the service of a motion under Rule 12(b)" otherwise "this provision no longer applies"); 3 Moore's Federal Practice § 15.10 (3d ed. 1997) ("Moore's") (the "limited time" to amend as a matter of course is the "21 days" specified in Rule 15(a)(1)(B)).  None say the right is restricted to the *first* 12(b) motion.  Indeed, a later section of one of those treatises points out that "a party does not automatically lose the right to amend under Rule 15(a)(1) by first offering an amendment under Rule 15(a)(2)."  3 Moore's § 15.12.

Nor does this approach invite the parade of horribles insinuated by Defendants.  MTS 8-9. As their own authority confirms, "[o]nce means once."  In other words, "Plaintiff does not get a new 21-day window within which to freely amend his complaint each time a motion is filed."  *Russell v.*

---

[3] Two decisions in the Middle District of Louisiana cite *Savignac v. Jones Day*, 341 F.R.D. 120, 127 (D.D.C. 2022), a case relied on by Defendants, to support for the conclusion that a plaintiff cannot amend as of course more than 21 days after the first 12(b) motion in a "multi-defendant lawsuit" where additional 12(b) motions are filed thereafter in response to the same pleading.  *Salvatore v. Smith*, 2024 WL 4757771, at *3 (M.D. La. Nov. 12, 2024) (Bourgeois, M.J.); *Bryant v. La. Cmty. & Tech. Coll. Sys.*, 2024 WL 4453290, at *2 (M.D. La. Oct. 9, 2024) (Bourgeois, M.J.). Neither holds that a party loses the right because it failed to use it in response to a motion to dismiss a previous pleading.

*City of Bellevue*, 2021 WL 1517921, at \*2 (N.D. Ohio Apr. 16, 2021). This **prevents** Rule 15(a)(1) from becoming "a source of abuse." 6 Wright & Miller § 1480. Similarly, Rule 15(a)(1) does not confer an unfettered right to amend that can be held in reserve until the Court is "unwilling to grant . . . any more opportunities to plead a cognizable claim." MTS 9. The right is limited to the "21-day window" after a 12(b) motion. *Azkour v. Bowery Residents' Comm., Inc.*, 2017 WL 4221456, at \*2 (S.D.N.Y. Sept. 22, 2017). Indeed, "many plaintiffs fail to amend their complaints" in that time and no longer have it once they receive an unfavorable ruling. *Id.*

If anything, the MTS promotes the type of waste and inefficiency Rule 15(a)(1) was designed to avoid. The advisory committee notes to the 2009 amendments provide that Rule 15(a)(1) was designed to force "the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion," and, thus, "reduce the number of issues to be decided" or "expedite determination of issues that otherwise might be raised seriatim." In the MTD, Defendants argue that the SAC continues to lack any direct evidence that Defendants knew about the abandoned lead cables at the heart of this case and, further, failed to bring a cognizable scheme claim under SEC Rule 10b-5(a)&(c). The TAC now provides a chorus of irrefutable direct evidence that Defendants knew about the abandoned cables and their risks and asserts new scheme claims against those within AT&T who were complicit in this fraud. Rather than confront these meritorious allegations of fraud, Defendants ask this Court to disregard them and pass on another pleading that Plaintiffs decided to cure in response to their arguments. By Defendants' logic, Plaintiffs would have to wait until a ruling on that motion until the Court could turn to the TAC, if at all.

### B.    Leave If Necessary Should Be Granted

Rule 15(a)(2) also allows a party to amend "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). If an amendment is improperly filed as a matter of course, courts may grant leave to authorize it. *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d

- 17 -

293, 295 (5th Cir. 2003) (citing 6 Wright & Miller § 1484). When doing so does not prejudice the opposing party, it is "more procedurally expedient to consider the complaint filed than to strike the amended complaint and then [later] grant leave to file another complaint that raise[s] the exact same issues." *Id.* at 296; *see also Janvey v. Alguire*, 2010 WL 11614579, at *1 n.1 (N.D. Tex. Jan. 29, 2010) (Godbey, J.) (adopting the *Mathews* approach). In addition, courts have broad discretion to grant leave *sua sponte* and regularly do so in such circumstances. *See TMA Leasing, Inc. v. Vacuum Truck Sales & Serv., LLC*, 2016 WL 8261723, at *1 (M.D. La. Jan. 6, 2016) ("The court need not decide . . . whether Plaintiff could amend as a matter of course pursuant to Rule 15(a)(1) because amendment is nevertheless proper pursuant to Rule 15(a)(2)."). While leave is unnecessary for all the reasons stated above (Point I.A), the TAC may alternatively be sustained under Rule 15(a)(2).[4]

### 1.    Every Relevant Factor Weighs in Favor of Granting Leave

Rule 15(a)(2) specifies that leave should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This standard "evinces a bias in favor of granting leave." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018). Thus, leave must be granted unless there is a "substantial reason" to deny it. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000); *see also Escort Inc. v. Uniden Am. Corp.*, 2019 WL 4246605, at *1 (N.D. Tex. Sept. 6, 2019) (Godbey, J.) (same). Such reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *N. Cypress*, 898 F.3d at 477. Here, none of these guiding factors presents a "substantial reason" to deny leave.

**No Undue Delay**. To assess whether there was undue delay, courts consider "(1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the

---

[4] Defendants ask this Court to order that Plaintiffs may only request leave to amend when they file their opposition to the MTD. But Rule 15(a)(2) imposes no limitation on *when* a party may seek leave and Defendants' transparent attempt to read such a requirement into it is wholly without merit.

amended complaint were known to the party when the original complaint was filed." *Hegwood v. Ross Stores, Inc.*, 2006 WL 8437334, at *2 (N.D. Tex. June 26, 2006) (Ramirez, M.J.) (quoting *In re Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996)). There is no undue delay when a party did not have "the information which forms the basis for the proposed amendment . . . at the time they filed their [previous] complaint" or otherwise "delayed the filing of the proposed amendment after obtaining that information." *Id.* at *3. Here, all the new CW allegations in the TAC were learned by Plaintiffs between August 28, 2025, and October 6, 2025, well after the SAC was filed on July 16, 2025. D'Aloia Decl. ¶¶ 4, 6-7. Accordingly, the TAC was not only timely filed but promptly so.

The meager attempts by Defendants to suggest otherwise in the "Background" section of the MTS are meritless. For example, Defendants protest that one of the newly named Defendants, John Malone, was mentioned "no fewer than 20 times" in the FAC and the SAC. MTS 4-5. However, Plaintiffs had no basis to assert scheme claims against him until learning new facts between August 28, 2025, and October 6, 2025, from CW17 (TAC ¶¶89, 93) and CW22 (TAC ¶¶173-75, 177-78, 233-35). Defendants also stress that CW17 and CW24 were referenced in the SAC. *Id.* But the only new information in the TAC from CW17 confirms that Arnoldi and Malone were involved in the preparation of the Issues Briefs (TAC ¶¶89, 93), which, again, was not needed until Plaintiffs secured new information from CW22 which supported scheme claims against them. In addition, the previous allegations concerning CW24 included in the SAC (SAC ¶220) were contained in an email filed on the public docket in the Lake Tahoe Action by AT&T. D'Aloia Decl. ¶7. Plaintiffs were unable to secure nonpublic testimony from CW24 until the period between August 28, 2025, and October 6, 2025. *Id.* ¶7. Notably, Defendants do not argue that any of the other, far more damning, facts added to the TAC were known by Plaintiffs when the SAC was filed.

- 19 -

**No Bad Faith or Dilatory Motive**.  For similar reasons, Defendants cannot claim that the amendments are the product of bad faith or dilatory motive.  *See Hegwood*, 2006 WL 8437334, at *3 (bad faith arises when the movant "presents a less favorable theory" only after a more aggressive one "fails" or "was aware of certain facts but failed to plead them in order to gain a tactical advantage").  The amendments are based on *new facts* acquired by Plaintiffs in the month before the TAC was filed.  D'Aloia Decl. ¶ 4, 6-7.  Further, the new facts *negate* the primary arguments raised by Defendants in their recent MTD.  Plaintiffs even contacted Defendants *one day* after confirming the information that provided the initial good faith basis to amend to provide notice of their intent to do so under Rule 15(a)(1).  *Id.* ¶ 4-5.  That is the antithesis of bad faith.  *See Travis v. City of Grand Prairie*, 2015 WL 13002069, at *7 (N.D. Tex. Aug. 6, 2015) (amendments are result of bad faith when they excise adverse facts, rather than add new ones to address defects).  Indeed, a pleading that "adds substantial factual allegations" after "pleading deficiencies" are identified cannot amount to bad faith.  *Joshua v. Foreman*, 2018 WL 10562046, at *3 (S.D. Tex. Nov. 29, 2018).

**No Repeated Failures to Cure**.  Plaintiffs have not repeatedly failed to cure identified deficiencies.  Plaintiffs filed the FAC following their appointment as Lead Plaintiffs, and the FAC was dismissed without prejudice on June 16, 2025.  [Dkt. 89.]  As directed by the Court, Plaintiffs filed the SAC thirty days later.  [Dkt. 90.]  Defendants recently moved to dismiss and the parties are now engaged in active briefing.  Thus, the Court has assessed the sufficiency of only *one* pleading.  In other words, there has been no "repeated failure to cure deficiencies by amendments previously allowed."  *Reitz*, 2018 WL 5634931, at *2 (attempt to amend in response to second 12(b) motion after doing so as a matter of course in response to first 12(b) motion did not amount to a repeated failure to cure); *see also Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (not accurate to claim lead plaintiff in securities class action had "three bites at the apple" when first

- 20 -

complaint it filed was not preceded by motion to dismiss and presented first substantive presentation of claims). Indeed, Plaintiffs are engaged in their *first* attempt to do so right now. As a result, Plaintiffs should be permitted to amend to include newly acquired facts that bear directly on the heart of this Action before the Court rules on the sufficiency of the pleaded facts in this case. *See Tucker v. Navarro Cnty. Sheriff*, 1997 WL 279840, at *2 (N.D. Tex. May 21, 1997) (granting plaintiff's motion for leave to amend complaint to "supplement his factual allegations," over defendants' objection that he "ha[d] already amended his complaint three times").

**No Prejudice**. Defendants cannot credibly claim any prejudice. "The touchstone inquiry . . . is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint." *M.D. v. Perry*, 294 F.R.D. 7, 65 (S.D. Tex. 2013) (quoting *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997)). "Generally courts do not find undue prejudice when there is an adequate opportunity to address the amended complaint and complete discovery when needed." *Id.*; *see also Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (defendant is prejudiced if it must "reopen discovery and prepare additional theories of the case"). As Defendants have previously noted [Dkt. 62], all discovery in this case has been stayed pursuant to the PSLRA. *See Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982) (reversing district court for not allowing third amended complaint when plaintiff discovered "new facts" after filing second amended complaint and no pre-trial order had been filed); *see also Matrix Cap. Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 195 (4th Cir. 2009) (no prejudice when "the amendment would occur while discovery is stayed pursuant to the PSLRA"). This is especially true for an amendment made within the time limitations provided by Rule 15(a)(1). "If the opponent has not served a responsive pleading and an amendment is made within the 21-day [Rule 12(b)] window, the opponent . . . probably has not relied to any appreciable extent on the contents of the original

pleading." 6 Wright & Miller § 1480. Rather, such amendments typically "reduce the number of issues to be decided and expedite . . . determination of the issues involved." *Id.*

For this reason, the only theoretical harm that Defendants sought to avoid by bringing their MTS on a purported "emergency" basis was (i) the need to file a responsive pleading to the TAC; and (ii) providing Defendants an extension of time to respond to the pending MTD. Even putting to one side that neither qualifies as prejudice for Rule 15(a)(2), the Court has since stayed the deadline to file a response to the TAC and ordered the parties to adhere to the schedule for the MTD. [Dkt. 101.] In short, "there is no basis to find that defendants would be prejudiced by deciding the merits of this claim in the context of a motion under Rule 12(b)(6)." *DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 4740488, at *3 (N.D. Tex. Oct. 3, 2012).

**No Futility**. Lastly, the proposed amendment is not futile. The question for the Court "is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Stripling*, 234 F.3d at 873. In other words, a district court must assess the complaint, as amended, under Rule 12(b)(6). *Id.* As such, "[t]his court has frequently noted that 'the court's almost unvarying practice when futility is raised is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion . . . where the procedural safeguards are surer.'" *DT Apartment Grp.*, 2012 WL 4740488, at *2; *see also Arrieta v. Yellow Transp., Inc.*, 2007 WL 2051115, at *2 (N.D. Tex. July 13, 2007) (courts "infrequently consider[] the merits of new causes of action in the context of Rule 15(a)" and "prefer[] instead to do so in the context of a Rule 12(b)(6) or Rule 56 motion"). Indeed, this Court has held that "Rule 15 does not require a Rule 12(b)(6) analysis as a predicate to granting leave" and the court may do so when the court "would benefit from more detailed briefing by both parties in a Rule 12(b) motion." *McElvy v. Sw. Correctional, LLC*, 2020 WL 13882825, at *1 (N.D. Tex. Jan. 9, 2020) (Godbey, J.).

- 22 -

The Court should do so here, as the MTD is still pending with briefing ongoing.  Indeed, Plaintiffs have represented that they are fully prepared to argue why the allegations in the TAC "would be futile" and *chose* to move ahead with the SAC knowing full well that Plaintiffs planned to amend.

*      *      *

Because no factors support—much less provide a substantial reason—to deny leave, the Court may alternatively grant leave to permit the filing of the TAC.

### 2.    The Pleading Requirements Applicable to Plaintiffs' Claims Provide Additional Reason to Grant Leave

The purpose of Rule 15(a) is to afford a plaintiff the "opportunity to test his claim on the merits." *Lowrey*, 117 F.3d at 245; *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.3d 594, 597 (5th Cir. 1981) ("policy" of Rule 15(a) is "to permit liberal amendments to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading").  Accordingly, the Fifth Circuit has instructed that courts should not deprive the plaintiff of the right to develop sufficient factual support for claims that must satisfy heightened pleading requirements, like Rule 9(b), "unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."  *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000); *see also Donzi N.V. v. Glob. Fin. Servs. LLC*, 2012 WL 2403504, at *2 (S.D. Tex. June 25, 2012) (granting leave to file sixth amendment since plaintiffs should have "an opportunity to amend their complaints to meet Rule 9(b)'s pleading requirement").  This is especially true in cases subject to the demanding pleading requirements of the PSLRA.  *See In re Enron Corp. Sec., Derivative & ERISA Litig*., 258 F. Supp. 2d 576, 625 (S.D. Tex. 2003) (the amendment process "in a class action governed by the PSLRA is distinguishable from that in an ordinary single-suit action"); *see also Eminence Cap.*, 316 F.3d at 1052 (freely giving leave to amend "is especially important in the context of the PSLRA").

In light of this Circuit's explicit "bias in favor of granting leave to amend," and the fact that a district court must possess a "substantial reason" to deny leave, Plaintiffs respectfully request that the Court grant leave to permit the filing of the TAC, while the additional facts can be considered as part of the Court's evaluation of the operative pleading and Defendants' pending MTD. *See, e.g.*, *John v. City of San Antonio*, 2007 WL 9706474, at *9-20 (W.D. Tex. July 24, 2007) (granting motion to amend filed in response to motion to dismiss and considering new claims and allegations in amended complaint in connection with pending motion to dismiss).

## II.   THE COURT SHOULD STAY THE DEADLINE FOR SERVICE OF THE TAC AND SUMMONS

The TAC names three new parties as defendants: Melissa Arnoldi, Keith Korte, and John Malone.  Defendants' counsel do not purport to file the MTS on their behalf because "those individuals have not yet been served with process."  MTS 2 n.1.  Plaintiffs understand from the Clerk of the Court that it will not issue a summons for the newly added Defendants absent an order from the Court authorizing the filing of the TAC.  However, that may not take place until after the 90 days within which Plaintiffs must serve the summons.  *See* Fed. R. Civ. P. 4(m).  Rule 4(m) provides that "the court must extend the time for service for an appropriate period" if "the plaintiff shows good cause" for not serving a defendant within the 90-day period.  *Id.*  Accordingly, Plaintiffs respectfully request that the Court stay the deadline pending a decision on the MTS to ensure that they are not prejudiced by the Clerk's decision not to issue a summons during that time.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should deny Defendants' MTS in its entirety, formally authorize the filing of the TAC, and direct the Clerk of the Court to issue the summons for the newly added Defendants.

- 25 -

Dated:  October 30, 2025

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Justin D. D'Aloia
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Plaintiffs and Lead Counsel for
the Class*

Respectfully submitted,

**THE BRISCOE LAW FIRM**

*/s/ Willie C. Brisco*
Willie C. Briscoe
12700 Park Central Drive, Suite 520
Dallas, Texas  75251
Telephone: (972) 521-6868
Facsimile: (281) 254-7789
wbriscoe@thebriscoelawfirm.com

*Local Counsel for Plaintiffs*